UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:20-CV-00518-FDW-DSC

MARJORIE ACEVEDO,

    Plaintiff,

v.

TEUPEN NORTH AMERICA, INC.,

    Defendant.

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS**

## The Bottom Line

Both parties' claims in this case focus on and relate to the events leading up, surrounding, and occurring immediately after Defendant Teupen North America, Inc. ("Teupen") demoted Plaintiff Marjorie Acevedo ("Acevedo") on December 30, 2019 and terminated her employment on January 3, 2020. While Acevedo claims those actions were discriminatory or retaliatory, Teupen will present evidence that the employment actions it took against Acevedo were related to her performance deficiencies and behavior.

Indeed, Acevedo knew her job security was in jeopardy before she was demoted. In the days prior to her demotion, she forwarded to her personal email account confidential information of Teupen because, in her own words, "I believed they evidenced Teupen's wrongdoing in its conduct toward me." Declaration of Marjorie Acevedo, Doc. No. 11-2 at ¶ 17. The day before she was demoted, Acevedo went further in preparing for a potential change in employment status, and, without authorization, removed from Teupen's Verizon account Teupen's iPhone that had been provided for use related to her employment.

These actions corroborate Teupen's claim not only that Acevedo had performance deficiencies, but also that Acevedo *knew* of those deficiencies and took steps to prepare for life post-Teupen, including filing this meritless lawsuit. After she was terminated, Acevedo failed to return multiple items of Teupen's property, including the iPhone and the laptop computer that had been issued to her.[1] Acevedo's actions—forwarding confidential information to her personal email account and refusing to return Teupen's property—are the basis for Teupen's compulsory counterclaims.

Because Teupen's counterclaims arise out of and relate to the same occurrences that are the subject matter of Acevedo's own claims, the counterclaims are compulsory under Federal Rule of Civil Procedure 13(a) and, therefore, this Court has subject matter jurisdiction for the claims. The Court should deny Acevedo's motion to dismiss the counterclaims accordingly.

### Factual Background

Acevedo began working for Teupen in May 2017 as an Accounting Administrator and was promoted to Accounting Manager in May 2018. (D.E. 8 at ¶¶ 1-2.) As a part of her job, Acevedo was placed in a position of trust and confidence and had access to Teupen's financial information and records, including bank account information and other information related to contracted services and vendors, including Verizon. (*Id.* at ¶¶ 3-4.) Teupen provided Acevedo with a company laptop computer and iPhone for use in connection with her employment. (*Id.* at ¶¶ 5, 46.) Teupen placed the iPhone on its corporate Verizon account and paid for the purchase cost of the device as well as the usage charges for services like talk, text, and mobile data.[2] (*Id.*

---

[1] While Acevedo eventually returned the laptop four months later, in May 2020, Acevedo still refuses to return the iPhone to Teupen.
[2] *See generally* Ex. 2 to Def.'s Memo. in Opp'n to Pl.'s Mot. for Sanctions.

at ¶ 5.) Acevedo had access to the Verizon account as a part of her job; she was responsible for managing the account and submitting Teupen's payments to Verizon for costs associated with its use of phone and data services. (*Id.* at ¶ 7.)

When Teupen first hired Acevedo, the parties executed an Employment Agreement. (*Id.* at ¶ 1.) Therein, the parties agreed that the property and records Teupen issued to Acevedo would remain Teupen's, and that Acevedo would immediately return all Teupen's property and records to Teupen upon the termination of her employment. (*Id.* at ¶ 48.) The parties also agreed that Acevedo would hold Teupen's "Confidential Information" in strict confidence and would not, under any circumstances, allow an unauthorized person or entity to access it. (*Id.* at ¶ 43.) They further agreed that, upon Teupen's demand, Acevedo would immediately return all such confidential information to Teupen and any devices on which such confidential information was stored. (*Id.* at ¶ 47.)

In Fall 2019, there were multiple deficiencies with Acevedo's performance, and Teupen discussed these issues with her at the time. By the end of December, Acevedo knew her employment status was in jeopardy. From about December 25 through about December 30, 2019, Acevedo forwarded several emails containing Teupen's confidential information to her personal email account without authorization. (*Id.* at ¶ 44.) These emails included internal personnel and payroll information, sensitive financial records, and invoices from vendors. On December 29, 2019, Acevedo also accessed Teupen's Verizon account and, without authorization, removed the iPhone that had been issued to her from Teupen's account, put the phone in her name, changed the billing contact for the iPhone to herself, and changed the account holder of the telephone number for the phone from Teupen to herself. (*Id.* at ¶¶ 8-11.)

3

On Monday, December 30, 2019, Teupen demoted Acevedo and removed her accounting responsibilities. (*Id.* at ¶ 12.) Andreas Liebl, Teupen's Operations Manager, informed Acevedo of these changes; when Acevedo refused to cooperate, she engaged in further misconduct. (*Id.*) Liebl then asked Acevedo to turn over her iPhone and to depart the facility. (*Id.* at ¶ 13.) But Acevedo refused to do so and left the premises with the iPhone in hand. (*Id.* at ¶¶ 13-14.)

In light of Acevedo's multiple instances of misconduct and her refusal to cooperate with the transition of her duties, Teupen terminated Acevedo's employment on January 3, 2020. (*Id.* at ¶ 15.) To date, Acevedo has refused to return the iPhone and the confidential information she wrongfully forwarded to her personal email address. (*Id.* at ¶¶ 19, 49.) Acevedo also wrongfully withheld the laptop computer until May 9, 2020. (*Id.* at ¶ 20.)

Acevedo then filed this action against Teupen, alleging claims of discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA"), and a state law claim of wrongful discharge. (D.E. 1.) Teupen has filed five counterclaims, which all relate to Acevedo's actions and misconduct surrounding her demotion and termination of her employment and her subsequent refusal to comply with the duties she owed and the promises she made to Teupen in connection with her employment. (*See generally* D.E. 8.) Specifically, Teupen alleges the following counterclaims:

- Count I: Employee Theft. This count pleads larceny of property, larceny by an employee, embezzlement by virtue of employment, and obtaining property by false pretenses under North Carolina's civil remedy for these criminal prohibitions, N.C. Gen. Stat. § 1-538.2. *See* N.C. Gen. Stat. §§ 14-72, 14-74, 14-90, 14-100. This count concerns Acevedo's theft of the iPhone. (D.E. 8 at ¶¶ 23-32.)

- Count II: Conversion. This count pleads conversion of the iPhone under North Carolina common law. (*Id.* at ¶¶ 33-35.)

- Count III: Constructive fraud. This count pleads constructive fraud under North Carolina common law, alleging that Acevedo breached her fiduciary duty to Teupen by falsely representing to Verizon that she had the legal capacity to transfer the iPhone from Teupen to Acevedo and that Teupen had agreed to release liability related to the phone. (*Id.* at ¶¶ 36-41.)

- Count IV: Breach of contract. This count alleges, under North Carolina common law, that Acevedo violated multiple provisions of her Employment Agreement with Teupen by

    (1) refusing to return the iPhone;

    (2) refusing to return the laptop until May 9, 2020;

    (3) refusing to return the confidential information stored on the iPhone and the laptop; and

    (4) refusing to return the unauthorized copies of the confidential information that she emailed to her personal email account. (*Id.* at ¶¶ 42-53.)

- Count V: Computer trespass. This count pleads several civil violations of North Carolina's computer crime statutes. N.C. Gen. Stat. § 14-453 et seq.; *see* § 1-539.2A. Teupen alleges that Acevedo used a computer to

    (1) execute a "scheme or artifice to defraud" Teupen and "obtain" Teupen's property by making false representations to Verizon regarding the iPhone, § 14-454(a)(1)–(2);

    (2) make "unauthorized cop[ies]" of Teupen's confidential information by forwarding emails to her personal email account, § 14-458(a)(5);

    (3) "den[y]" computer services to Teupen, an "authorized user," by refusing to return the laptop until May 9, 2020, § 14-456(a); and

    (4) "den[y]" computer services to Teupen, an "authorized user," by refusing to return the iPhone, § 14-456(a). (D.E. 8 at ¶¶ 54-62.)

## Legal Standard

"Rule 12(b)(1) provides for dismissal where the court lacks jurisdiction over the subject matter of the lawsuit." *Reid v. North Carolina*, 837 F. Supp. 2d 554, 558 (W.D.N.C. 2011). Teupen, as the party asserting federal jurisdiction over its counterclaims, bears the burden of proof by a preponderance of the evidence. *Mitchell v. Winston-Salem State Univ.*, No. 1:19CV130, 2020 WL 1516537, at *5 (M.D.N.C. Mar. 30, 2020).

The movant in a Rule 12(b)(1) motion may mount a facial attack or a factual attack on the nonmovant's assertion of subject matter jurisdiction. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). "In a facial challenge, a defendant asserts that the allegations, taken as true, are insufficient to establish subject-matter jurisdiction." *Mitchell*, 2020 WL 1516537, at *5. This mirrors the standard of a Rule 12(b)(6) motion. *Kerns*, 585 F.3d at 192; *see Bentivegna v. People's United Bank*, No. 14-CV-599 (ADS)(GRB), 2016 WL 3460374, at *6 (E.D.N.Y. June 21, 2016) ("In ruling on a Rule 12(b)(1) motion, the Court must accept all factual allegations in the pleading as true and draw all reasonable inferences in favor of the pleader."). "In that situation, . . . the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192. In a factual attack, the movant contends "that the jurisdictional allegations of the complaint are not true." *Id.* (cleaned up). There, "the presumption of truthfulness normally accorded a complaint's allegations does not apply," *id.*, and the court may "go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations," *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

Here, the parties agree that the basis for federal jurisdiction over Teupen's counterclaims is supplemental jurisdiction pursuant to 28 U.S.C. § 1367. That section provides that "in any civil

6
Case 3:20-cv-00518-FDW-DSC   Document 15   Filed 01/04/21   Page 6 of 15

action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III." § 1367(a). Supplemental jurisdiction exists if "[t]he state and federal claims . . . derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *see Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc.,* 145 F.3d 660, 662 (4th Cir. 1998) (noting that § 1367 codified the Supreme Court's holding in *Gibbs*).[3]

## Argument

I. **A factual attack on Teupen's assertion of jurisdiction fails because Acevedo's Rule 12(b)(1) motion improperly contests the merits of Teupen's counterclaims.**

Acevedo fails to specify whether her Rule 12(b)(1) motion brings a facial attack or a factual attack on Teupen's assertion of federal jurisdiction. The motion appears to blur the line between the two, first asserting that the "counterclaims fail to sufficiently allege facts that would make Defendant's claims 'compulsory,' and thus they should be dismissed for lack of supplemental jurisdiction" before inviting the Court to "consider[ ] . . . the factual circumstances and weight of Defendant's allegations." (D.E. 14 at 8.) But Acevedo cannot have it both ways; caselaw does not support such a hybrid challenge under Rule 12(b)(1). And the motion's substance indicates that Acevedo, in truth, brings a facial attack. The motion does not request an evidentiary hearing, which the Fourth Circuit found to be an essential part of a factual attack in *Adams*. 697 F.2d at 1219; *see Kerns*, 585 F.3d at 192 (emphasizing the evidentiary-hearing component of a factual challenge). And the only "evidence" outside the pleadings cited in the

---

[3] Acevedo does not argue that the Court should decline to exercise supplemental jurisdiction over Teupen's counterclaims pursuant to 28 U.S.C. § 1367(c). None of the situations contemplated by that section are present here.

motion is two self-serving declarations authored by Acevedo and her counsel.[4] (*See* D.E. 14 at 8.)

If the Court construes Acevedo's motion as mounting a factual challenge, it is critical to note that here, "the jurisdictional facts are intertwined with the facts central to the merits of the dispute." *Kerns*, 585 F.3d at 193 (citation omitted). The counterclaims' factual allegations that Acevedo attempts to rebut in her motion are the same ones that would establish supplemental jurisdiction. For example, Acevedo argues that she was not demoted or terminated for her misconduct. (*See* D.E. 14 at 8 ("In fact, at the time of Ms. Acevedo's termination on January 3, 2020, she was told in writing by Defendant that she was being terminated without cause." (emphases omitted)).) If these actions were taken because of her misconduct (and they were), however, then supplemental jurisdiction clearly exists here, as Acevedo's complaint asserts that Teupen's decision to terminate her employment was motivated by discriminatory animus, not by her misconduct. (*See* D.E. 1 at 8–9.)

This "intertwin[ing]" between the jurisdictional facts and the merits has three important consequences. First, Teupen's counterclaims are still entitled to a "presumption of truthfulness," even in the face of a factual attack on jurisdiction. *Kerns*, 585 F.3d at 193. Second, in this situation, "the court should resolve the relevant factual disputes only after appropriate discovery, unless the jurisdictional allegations are clearly immaterial or wholly unsubstantial and frivolous." *Id.* Teupen's jurisdictional allegations are not "clearly immaterial" because they were not "made solely for the purpose of obtaining jurisdiction." *Id.* (citation omitted). Rather, they are central to

---

[4] Acevedo's decision to state the allegations in her complaint as fact in her motion to dismiss is improper in both situations. (*See* D.E. 14 at 2–3.) As Acevedo has moved to dismiss Defendant's counterclaims, it is the allegations in the counterclaims—not the complaint—that may be entitled to an assumption of truth at this stage.

the substance of Teupen's counterclaims—Acevedo's actions connected to her employment with Teupen in the days leading up to, surrounding, and taken after her separation are critical issues in this case. And, as discussed more fully in Teupen's response in opposition to Acevedo's motion for sanctions, Teupen's counterclaims are neither "wholly unsubstantial" nor "frivolous," as Teupen has presented evidence in connection with that response that establishes solid factual bases for all its counterclaims.

Third, "when the jurisdictional facts and the facts central to [the merits of a] claim are inextricably intertwined, the trial court should ordinarily assume jurisdiction and proceed to the intertwined merits issues." *Id.* Federal courts consistently "refus[e] to treat indirect attacks on the merits as Rule 12(b)(1) motions." *Id.* (quoting *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981)). One important reason for this is judicial economy: "No purpose is served by indirectly arguing the merits in the context of federal jurisdiction." *Id.* (quoting *Williamson*, 645 F.2d at 415). Another is to provide "a greater level of protection to the [defendant] who in truth is facing a challenge to the validity of his claim: the [plaintiff] is forced to proceed under Rule 12(b)(6) or Rule 56, both of which place greater restrictions on the district court's discretion." *Id.* (quoting *Williamson*, 645 F.2d at 415).

Acevedo has not moved to dismiss Defendant's counterclaims under Rule 12(b)(6) or for summary judgment and has instead attempted to argue the merits in her Rule 12(b)(1) motion—and thereby strip Teupen of the "procedural safeguards" it deserves as the nonmovant in either of those types of motion. *Id.* Thus, there are no "merits" issues for the Court to "proceed" to pursuant to *Kerns*, and the Court should "assume jurisdiction" and deny Acevedo's Rule 12(b)(1) motion.

**II. Because Teupen will have to present the same evidence to both rebut Acevedo's claims and support its counterclaims, the counterclaims are compulsory under Rule 13.**

"The Fourth Circuit has held that, absent an independent basis of jurisdiction, a federal court has supplemental jurisdiction over a compulsory counterclaim but not a permissive counterclaim." *Ginwright v. Exeter Fin. Corp.*, No. CV TDC-16-0565, 2016 WL 5867443, at *2 (D. Md. Oct. 6, 2016) (citing *Painter v. Harvey*, 863 F.2d 329, 331 (4th Cir. 1988)); *see* Fed. R. Civ. P. 13(a)(1) (counterclaim is compulsory if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim"). Teupen's counterclaims are compulsory under Rule 13, and Acevedo's Rule 12(b)(1) motion must be denied.

To assess whether a counterclaim is compulsory, the Fourth Circuit has held that four factors are relevant:

> (1) whether the issues of fact and law in the claim and counterclaim are essentially the same; (2) whether res judicata would bar a subsequent suit on the counterclaim absent the compulsory counterclaim rule; (3) whether the same evidence would support or refute the claim and the counterclaim; and (4) whether there is a logical relationship between the claim and the counterclaim.

*Q Int'l Courier Inc. v. Smoak*, 441 F.3d 214, 219 (4th Cir. 2006). "A court need not answer all these questions in the affirmative for the counterclaim to be compulsory." *Painter*, 863 F.2d at 331. "Instead, these inquiries work less like a litmus test and more like a guideline." *Q Int'l Courier*, 441 F.3d at 219 (quotation marks omitted) (quoting *Painter*, 863 F.2d at 331). But the court has clarified that the third inquiry is the most important: "[W]here . . . the same evidence will support or refute both the claim and counterclaim, the counterclaim will almost always be compulsory." *Painter*, 863 F.2d at 331–332.

A. Counterclaims concerning the iPhone and Confidential Information

Teupen's counterclaims stemming from Acevedo's theft of the iPhone and failure to return Teupen's confidential information are compulsory because the same evidence will support or refute both these counterclaims and Acevedo's claims of discrimination. Specifically, Acevedo alleges that Teupen took adverse actions against her, including demoting her and terminating her employment, because of her national origin, or sex, or disability, or some combination of these. (D.E. 1 at 8–10.) Teupen asserts that it demoted Acevedo and terminated her employment because she engaged in misconduct. Acevedo was aware of this misconduct, and in the days before she was demoted, took steps to benefit herself post-Teupen: emailing confidential information related to Teupen to her personal email account in an attempt to support her claims in this lawsuit and to pilfer Teupen's iPhone by first removing the iPhone from Teupen's Verizon account and then by refusing to return the iPhone to Teupen when Leibl specifically requested that she do so on December 30, 2019. Employee misconduct is a legitimate, nondiscriminatory reason for taking adverse employment action under step two of the *McDonnell Douglas* framework. *See Miller v. Wal-Mart*, No. 1:13-CV-00046-MOC, 2015 WL 996608, at *6 (W.D.N.C. Mar. 6, 2015), *aff'd*, 606 F. App'x 99 (4th Cir. 2015) (per curiam). Necessarily, Teupen will introduce this evidence both to deny Acevedo's claims of discrimination and retaliation as well as to support its counterclaims for employee theft, conversion, constructive fraud, breach of contract, and computer trespass. (*See, e.g.*, Ex. 2 to Def.'s Resp. in Opp'n to Pl.'s Mot. for Sanctions.) This includes Acevedo's Employment Agreement, which serves as the basis for Teupen's breach of contract counterclaim.

Further, and critically, Acevedo concedes that her "claims will **probe her treatment over the last several months of her employment**, including her demotion and ultimate termination."

(D.E. 14 at 9 (emphasis added).) Acevedo cannot have it both ways: demand to "probe" several months' of her employment while demanding exclusion of evidence related to her own misconduct and other bad acts. Acevedo cannot put blinders on the jury to consider only actions that she claims help her case and exclude evidence that supports Teupen's claims of misconduct and provide vital context to the employment actions at issue.

"Repeatedly, courts have declined to dismiss state law counterclaims in an employment discrimination suit where the counterclaims go to an element of the plaintiff's discrimination suit." *Brooks v. Valley Day Sch.*, No. CIV.A. 14-5506, 2015 WL 4770759, at *4 (E.D. Pa. Aug. 12, 2015) (collecting cases). For example, in *Plebani v. Bucks County Rescue Emergency Medical Services*, the court found that the employer defendant's counterclaims for on-the-job misconduct were compulsory because of their close connection to the plaintiff's claims of discrimination:

> Here, defendant's counterclaims in conversion and unjust enrichment do appear logically connected to plaintiff's claims, and thus compulsory. Since the Squad appears to claim that plaintiff's alleged misconduct was its true reason for firing her, it will attempt to prove her alleged misconduct as a legitimate reason for her termination and an affirmative defense to her retaliation claim. The Squad's affirmative defense and its counterclaim will thus involve similar factual issues, namely whether Ms. Plebani in fact engaged in misconduct.

No. Civ.A.03–5816, 2004 WL 2244543, at *3 (E.D. Pa. Sept. 30, 2004); *see also, e.g.*, *Oxlaj v. Darby Rd. Pub. House & Rest., LLC*, No. CV 16-1180 (CCC), 2018 WL 1317865, at *2 (D.N.J. Mar. 14, 2018) ("Defendants' Counterclaim for fraud is tied to those proofs Defendants may offer to defend against Plaintiff's retaliation claim as set forth in Count IV of the Second Amended Complaint. Defendants' common law fraud claim, which addresses Defendants' alleged reasons for terminating Plaintiff, shares a common nucleus of operative fact with Plaintiff's retaliation claim under 29 U.S.C. §§ 215(a)(3), which forms, in part, the basis for this Court's original jurisdiction. The Court will accordingly assert supplemental jurisdiction over

12
Case 3:20-cv-00518-FDW-DSC   Document 15   Filed 01/04/21   Page 12 of 15

Defendants' Counterclaim." (record citations omitted)); *Amort v. NWFF, Inc.*, No. 6:11-CV-6396-AA, 2012 WL 3756330, at *3 (D. Or. Aug. 27, 2012) ("I find that defendants' counterclaims are substantially related to Plaintiff's Title VII claim and form part of the same case or controversy. The bases of the counterclaims relate to Plaintiff's employment and the alleged reasons for his termination and will undoubtedly serve as defenses to Plaintiff's federal retaliation claim. . . . Therefore, I find appropriate the exercise of supplemental jurisdiction over defendants' counterclaims."). *See generally Adams St. Joint Venture v. Harte*, 231 F. Supp. 2d 759 (N.D. Ill. 2002) (retaining supplemental jurisdiction where both parties' claims depended on an examination of the defendant's job performance).

This overlap in the evidence required to resolve Acevedo's claims and Teupen's counterclaims also demonstrates that other factors identified by the Fourth Circuit have been met. First, because the evidence is the same in both situations, several "issues of fact . . . in the claim and counterclaim are essentially the same." *Q Int'l Courier*, 441 F.3d at 219. Second, the claims and the counterclaims have a "logical relationship." *Id.*; *see Plebani*, 2004 WL 2244543, at *3. But again, the most important factor by far according to the Fourth Circuit—whether "the same evidence will support or refute both the claim and counterclaim"—conclusively favors Teupen here. *Painter*, 863 F.2d at 331–332.

B. Counterclaims Concerning the Laptop

Teupen's counterclaims stemming from Acevedo's refusal to return the laptop computer until May 9, 2020, are compulsory because they relate to Acevedo's actions surrounding her termination of employment. Acevedo also used the laptop to transmit Teupen's confidential information to her personal email address without authority: this occurred in part on December 29, 2019, a Sunday, during non-office hours. Acevedo changed the Verizon account information

this same day, most likely from Teupen's laptop. Acevedo's refusal to return the laptop immediately after her employment agreement was terminated supports Teupen's allegations regarding her behavior at the time of her demotion and separation. Critically, Acevedo claims she did not return the laptop immediately because, in part, she "did not feel comfortable returning to the office after [she] was terminated to drop off the laptop." Acevedo Declaration ¶ 13 (D.E. 11-2.) The nature of her claimed discomfort, and the reasons therefor, bear directly on her claims of discrimination and retaliation. It will take little more evidence to show that Acevedo wrongfully refused to return the laptop for four months after the termination of her employment. Thus, once again, "the same evidence will support or refute both the claim and counterclaim." *Painter*, 863 F.2d at 331–332.

## Conclusion

Because Teupen's counterclaims in this lawsuit are compulsory under Rule 13, the Court has supplemental jurisdiction over all of them. The motion to dismiss for lack of subject matter jurisdiction should therefore be denied.

Filed January 4, 2020.

Respectfully submitted,

*/s/ Kevin J. Dalton*
Kevin J. Dalton (NC Bar No. 24197)
David I. Klass (NC Bar No. 53342)
**FISHER & PHILLIPS LLP**
227 West Trade Street, Suite 2020
Charlotte, North Carolina 28202
Telephone: (704) 334-4565
Facsimile: (704) 334-9774
Email: kdalton@fisherphillips.com
Email: dklass@fisherphillips.com
*Attorneys for Defendant*

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:20-CV-00518-FDW-DSC

MARJORIE ACEVEDO,

       Acevedo,

  v.

TEUPEN NORTH AMERICA, INC.,

       Defendant.

### Certificate of Service

I hereby certify that on January 4, 2020, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send electronic notice to Acevedo's counsel, L. Michelle Gessner, at michelle@mgessnerlaw.com.

I certify pursuant to Rule 11 that this Memorandum complies with the Court's limitation of 4,500 words.

Served January 4, 2020.　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　*/s/ Kevin J. Dalton*
　　　　　　　　　　　　　　　　　　　　　　　Kevin J. Dalton
　　　　　　　　　　　　　　　　　　　　　　　Attorney for Defendant
　　　　　　　　　　　　　　　　　　　　　　　**FISHER & PHILLIPS LLP**