UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:20-CV-00518-FDW-DSC

MARJORIE ACEVEDO,

    Plaintiff,

v.

TEUPEN NORTH AMERICA, INC.,

    Defendant.

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS**

**I.    Bottom Line Up Front**

When Defendant Teupen North America, Inc. ("Teupen") terminated Plaintiff Marjorie Acevedo's ("Acevedo") employment effective January 3, 2020, it repeatedly demanded return of its iPhone and laptop computer. Acevedo refused to return Teupen's property, refused to further engage Teupen, and told Martin Borutta, Teupen's CEO, "I will not engage with you any further via email. We look forward to seeing you in Court." *See* Amended Counterclaims (D.E. 18) at ¶18; Plaintiff's Motion for Sanctions ("Motion") (D.E. 11-3) at 14. Teupen's Amended Counterclaims seek the return of its property, return of confidential information that Acevedo emailed to herself, and related damages.

Acevedo's Motion argues these counterclaims have no evidentiary support and were filed for the improper purpose of retaliating against her for filing this lawsuit under Federal Rule of Civil Procedure (FRCP) 11(b)(1) and 11(b)(3).[1] The crux of Acevedo's motion is that she owned the iPhone and Teupen's laptop was eventually returned over four months after her employment

---

[1] Acevedo does not argue that the counterclaims themselves are not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or establishing new law under Rule 11(b)(2).

terminated. Acevedo has submitted emails from Teupen, however, that fatally undermine her assertion that the counterclaims were filed in retaliation for filing the Complaint.

Acevedo offers little more than self-serving declarations—which include contested, misleading, and false statements—to support her assertion that Teupen's counterclaims are not factually supported. Indeed, these declarations contain mostly bald, uncorroborated assertions that Acevedo owned the iPhone and that the emails she forwarded to herself did not contain Teupen's confidential information. Critically, Acevedo does not dispute that Teupen's laptop was not returned for over four months. Acevedo offers only weak and false excuses.

The Court should deny Acevedo's Motion and award costs and fees to Teupen.

**II.** **Legal Standard**

FRCP 11(b) provides that an attorney who presents a pleading to the Court makes several certifications "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances." These include representing to the Court that the pleading "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," FRCP 11(b)(1), and that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." FRCP 11(b)(3). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." FRCP 11(c)(1).

"The party moving for sanctions bears the burden to demonstrate the specific conduct that violates Rule 11(b)." *Rivers v. United States*, No. 6:18-CV-00061, 2020 WL 6880967, at *2

(W.D. Va. Nov. 23, 2020). "In the Fourth Circuit, courts apply an "objective reasonableness" test to determine whether a pleading violated Rule 11(b) at the time the signer filed it." *Id.*

### III. Teupen's iPhone counterclaims are well-supported.

Teupen has asserted five counterclaims against Acevedo related to her misappropriation of Teupen's iPhone: employee theft under NCGS § 1-538.2 (Count I); conversion (Count II); constructive fraud (Count III); breach of Acevedo's employment agreement (Count IV); and computer trespass under NCGS §§ 14-453 through 14-458.

Acevedo's Motion alleges these claims either "(i) lack any evidentiary support, (ii) are without any damages, or (iii) are based on factual allegations disprovable by evidence in Defendant's own possession." D.E. 11 at 1. At its core, Acevedo's argument rests almost entirely upon her unsupported claim that she, not Teupen, owned the iPhone.

There is clear, uncontroverted evidence, however, that Teupen owned the iPhone. This is most readily shown in the invoices from Verizon related to the iPhone. Relevant invoices, and Teupen's payments of those invoices, are attached as **Exhibit 2** ("Invoices"). *See also* Declaration of Martin Borutta at ¶7, attached as **Exhibit 1.**

On or about June 5, 2018, Acevedo transferred her personal cell phone number to Teupen's Verizon account. *See* Invoices at 4 (showing a "Connected Device Line Access" charge, dated June 5, 2018, for Acevedo's phone number). The same invoice, for June 30, 2018, shows that new equipment—the iPhone—was charged to Teupen's account for this phone line. *Id.* (showing an "Equipment Charge" of $33.40 pursuant to "Device Payment Agreement 1309106930"). The invoice also shows that the iPhone would be paid in twenty-four installments of approximately $33.00 each. *See id.* (showing the first installment of $33.40). Along with the cost of the iPhone, insurance was added for an additional cost each month. *Id.* (showing a "Total Mobile Protection

3

– Asurion" charge of "$13.00 per month"). As noted in the December 31, 2019 invoice, which was the month Acevedo removed the iPhone from Teupen's Verizon account, Teupen had made 19 of 24 installment payments for the iPhone, paying a total of $600.01. *Id.* at 58.[2]

Teupen paid the iPhone equipment charges, insurance coverage, and all other costs of the line, including line access charges, taxes, and fees. Borutta Decl. ¶8. Acevedo did not pay any amount invoiced to Teupen related to her use of the company's iPhone. *Id.* at ¶9. By the time Acevedo surreptitiously removed the iPhone from Teupen's Verizon account, Teupen had paid more than $600.00 for the cost of the phone, and Acevedo had paid nothing. Teupen had also paid between $13.00 and $15.00 per month, every month, to insure its phone.

The lone "evidence" in support of Acevedo's Motion that she purportedly owned Teupen's iPhone is a self-serving, unsupported, and uncorroborated declaration that contains several misleading assertions. Acevedo claims that the iPhone—an iPhone 8 Plus—was offered as an "upgrade" to her personal phone—an iPhone 7 Plus—when she transferred service to Teupen's Verizon account. *See* D.E. 11-2 at ¶4. This statement is not credible. Acevedo admits her personal cell phone was serviced through AT&T. *Id.* at ¶2. Because AT&T and Verizon, however, use different technology for their cell phone networks—AT&T uses GSM and Verizon uses CDMA— it is very likely that Acevedo's iPhone 7 Plus would not have worked on Verizon's network and she would have been required to use a different phone.

Acevedo also claims that to "get" the upgrade, she had pay off the remaining balance on her iPhone 7 Plus. *Id.* This statement also is not credible. Acevedo likely had a contract with AT&T related to her lease or purchase of her iPhone 7 Plus. If she still owed money on that phone,

---

[2] Acevedo changed her phone number on or about September 12, 2018. *See id.* at 21-22 (October 31, 2018 invoice). Acevedo kept the same iPhone despite the number change. *Compare id.* at 3 with *id.* at 22 (showing the same Device Payment Agreement number for both lines).

she would have been responsible for paying it off in full unless AT&T released her from her obligations. This would have been true regardless of whether she transferred the phone number she used on the AT&T phone to Teupen's Verizon account or whether she then decided to provide the phone to Verizon for use as a credit.

Acevedo's declaration provides no other evidence that she allegedly owned the iPhone. Perhaps because it could not be subscribed to under oath, Acevedo asserts not in her declaration but in her memorandum in support of the Motion that *she* paid for Teupen's iPhone with the "trade-in" credit Verizon provided for Acevedo turning in the iPhone 7 Plus. *See* D.E. 12 at 10. These claims are false. As the Invoices show, while a "Trade-In Device Promo Credit" was applied on a monthly basis to the charges for the line, the credit was not applied by Verizon to the cost of the iPhone. E.g., Invoices at 3, 59. Rather, the Invoices show that only the "equipment charges" of approximately $33.00 per month reduced the balance owed on the iPhone, not the credit for the trade-in. *Id.* Accordingly, Acevedo did not "pay for" Teupen's iPhone by trading-in her old phone.[3]

There is clear evidence that Teupen, not Acevedo, owned the iPhone. Acevedo's arguments that Teupen's counterclaims lack evidentiary support because of the ownership issue fail.

Acevedo's remaining arguments regarding the iPhone counterclaims also fail. First, Acevedo argues that Teupen's conversion counterclaim (Count II) related to the telephone number associated with the iPhone lacks merit because North Carolina does not recognize conversion claims for intangible property. Teupen does not, however, allege conversion of the telephone number. Second, related to Count III, for constructive fraud, Acevedo argues that Teupen failed

---

[3] Even if the trade-in credit had been applied to the cost of the iPhone, common sense dictates that the credit for an old, used phone would not cover the entire cost of an "upgraded," brand-new phone.

to plead the arguments of actual fraud with specificity.  Acevedo applies the wrong legal standard, citing not the standard for constructive fraud but for actual fraud.  Under North Carolina law, "a *prima facie* showing of constructive fraud requires plaintiff to prove that they and defendants were in a 'relation of trust and confidence . . . [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff."  *Barger v. McCoy Hillard & Parks* 346 N.C. 650, 666, 488 S.E.2d 215, 224 (1997) (quoting *Rhodes v. Jones*, 232 N.C. 547, 549, 61 S.E.2d 725, 726 (1950)).  "[A] claim of constructive fraud does not require the same rigorous adherence to elements as actual fraud, and accordingly does not need to meet the Rule 9(b) pleading requirement." *Beam by & through Mayes v. Sunset Fin. Servs., Inc.*, No. 18 CVS 2925, 2019 WL 4182491, at *5 (N.C. Bus Ct. Sept. 3, 2019) (quotation marks omitted). Here, Acevedo does not deny that she was placed in a position of trust and confidence.  She does not deny that she used her access to Teupen's Verizon account to transfer the iPhone to herself.  Teupen's injury and damages are obvious: it lost its right to possess its property, for which it had paid over $600.  Acevedo's argument is meritless.

Finally, Acevedo argues that Count IV—for breach of Acevedo's employment agreement's return of property provision—is meritless because the iPhone is not a "book or record." The provision encompasses a broad range of Teupen's property that must be returned upon request:

> Employee acknowledges that all files, computer disks, records, lists, designs, specifications, books, products, plans **and other materials or property** owned or used by the Company in connection with the conduct of its business shall at all times remain the property of the Company, and that upon termination or expiration of this Agreement for any reason or upon the request of the Company, Employee will immediately surrender to the Company all such materials.

Am. Counterclaim at ¶48 (emphasis added). The content of the paragraph is not limited to books and records, but also includes "all . . . computer disks, . . . and property owned or used by the Company . . . ."  Because the iPhone is Teupen's property, it is "property" as defined under this

paragraph, and Acevedo breached the agreement by refusing to return the phone upon termination of employment and upon Teupen's request.[4]

## IV. Teupen's laptop counterclaims are well-supported.

Teupen has asserted two counterclaims against Acevedo related to her unauthorized use of its laptop during her employment and her refusal to return Teupen's laptop despite repeated demands. In Count IV, Teupen alleges that Acevedo breached her employment agreement by repeatedly refusing to return the laptop. Am. Counterclaim at ¶¶42-53. In Count V, Teupen alleges that Acevedo is liable under North Carolina's computer trespass statutes by accessing Teupen's computer without authorization during her employment and by denying Teupen use of its laptop after her employment termination. *Id.* at ¶¶54-62.

Acevedo's Motion argues these claims lack evidentiary support under Rule 11(b)(3). Rather than providing contrary evidence to refute the claims, however, Acevedo provides only excuses. Both of Teupen's claims related to the laptop have evidentiary support.

First, in Count IV, Teupen alleges that Acevedo breached her employment agreement by failing to return the laptop from January to May 2020. The same principles apply to Count IV as it relates to the laptop as to the iPhone. Indeed, it is not disputed that Acevedo withheld returning the laptop to Teupen until May 2020.

Second, in Count V of the Amended Counterclaims, Teupen asserts that Acevedo illegally accessed its computer for the purpose of making unauthorized copies of Teupen's property without authority. Am. Counterclaim ¶56. Rather than refute this claim, Acevedo confirms it, admitting in her declaration that she "forwarded certain emails to myself because I believed they evidenced

---

[4] Acevedo notes in passing in her memorandum that Count V, for computer trespass, includes a claim that Acevedo is liable for her failure to return the iPhone. *See* D.E. 12 at 13-14. Acevedo's argument, however, focuses entirely upon Teupen's laptop that she refused to return for four months.

7

Teupen's wrongdoing in its conduct toward me." D.E. 11-2, ¶17.[5] This constitutes a violation of NCGS § 14-458(a)(5), which prohibits users from making unauthorized copies of computer data.[6]

Acevedo also does not deny failing to return the laptop until May 9, 2020, over four months after her employment had been terminated, which relates both to Count IV's breach of contract claim and Count V's computer trespass claim. Acevedo's declaration states she did not return the laptop —because she "did not feel comfortable returning to the office" and she "was never given any instructions, packing materials, a FedEx or UPS slip, etc." D.E. 11-2, ¶13. Michelle Gessner ("Gessner"), Acevedo's counsel, states in her declaration she did not return the computer, although she had it since January 22, 2020, because Teupen's CEO did not provide a list of property for Acevedo to return; no attorney for Teupen contacted her about it; she was "hesitant to send the laptop directly to Teupen as [she] did not want to risk having it lost or damaged in the mail" (which is contrary to the excuse regarding not being provided delivery materials); and COVID (which would not have been an issue from Acevedo's termination on January 3, 2020 through mid-March 2020)—but does not dispute that the laptop was withheld from Teupen for four months after its CEO repeatedly demanded its return.

None of Acevedo's or Gessner's excuses hold up. CEO Borutta repeatedly sent demands to Acevedo's counsel for its return in early January 2020. Gessner never acknowledged to Borutta that she or Acevedo had the computer. Rather, Gessner indicated she would see Borutta "in Court." D.E. 11-3, at 14.

Acevedo and/or Gessner improperly continued to hold onto Teupen's undisputed property. Teupen's laptop should have been provided to Teupen by Acevedo, Acevedo's agent, a third-

---

[5] While Acevedo argues that she had authority to access Teupen's computer system and to forward the emails containing confidential information to herself, she presents no evidence to support that bald assertion.
[6] Teupen denies that the information Plaintiff took evidences wrongdoing.

party delivery service, the U.S. Postal Service, or via arrangements for one of Teupen's employees to meet Acevedo or her agent. That Gessner indicates she had Teupen's computer since January 22, 2020, and failed to return it is entirely inappropriate. Gessner should have immediately sent Borutta (with whom she had been in direct contact) an email on January 22 indicating her possession of the computer and arranging for its return. Instead, no information was provided about the computer's whereabouts until May 4, 2020.

On January 7, 2020, Gessner forwarded the email she had sent to Borutta to Shalanna Pirtle, a partner at Parker Poe, that contained a litigation hold letter for the Acevedo matter. *See* D.E. 11-3, ¶3 and at 10. Pirtle had represented Teupen in a prior matter where Gessner was opposing counsel. *Id.*[7] As Gessner admits, Pirtle responded on January 9, 2020, stating that Parker Poe did not represent Teupen regarding the Acevedo matter. D.E. 11-3, ¶3. There were no other written communications.

In an attempted cover for not alerting Teupen she had the laptop or taking steps to return it, Gessner contends she discussed the laptop with Pirtle in January 2020:

> Thereafter, I spoke with Ms. Pirtle directly to determine if she knew who would be representing Teupen, but she did not know. In this conversation, I mentioned to her that Ms. Acevedo had a laptop she needed to return to Teupen. Ms. Pirtle told me that she did not know who would be representing Teupen and that Teupen would contact me directly.

*Id.* at ¶4.[8] This purported conversation did not occur. Parker Poe has searched its telephone records. There is no record of Gessner calling Pirtle in January 2020 from Gessner's mobile phone or her office's telephone number. *See* Declaration of Shalanna Pirtle at ¶¶10-11, attached

---

[7] Notably, Gessner did not engage in communications with Pirtle to determine whether she represented Teupen **before** engaging in multiple direct communications with CEO Borutta.
[8] Furthermore, Gessner had been in direct email communication with CEO Borutta and notably never asked whether he was represented by counsel at Parker Poe or otherwise.

9

as **Exhibit 3**; Declaration of Greg Deese ¶4, attached as **Exhibit 4**.[9] Similarly, Pirtle's declaration indicates she did not speak with Gessner by telephone about Acevedo or a computer. *See* Pirtle Decl. ¶9, 13. In fact, Parker Poe has no record of Gessner speaking with any attorney at the firm from January 8 through 31, 2020. Deese Decl. ¶4. Gessner should be required to provide proof of the purported call or admit to the Court there is no evidence to support her declaration.

Further, the purported conversation is illogical. There was no reason to have any other communications following Pirtle's January 9 email, as Pirtle informed Gessner in writing that Parker Poe did not represent Teupen, the two of them had been engaging in strictly email communications, and Gessner purportedly did not take possession of the computer until January 22, thirteen days after the January 9 email. In fact, because Gessner was in direct communications with CEO Borutta, and, following Pirtle's January 9 email, Borutta demanded return of Teupen's property in emails on January 13 and 14, 2020. Gessner had no issues communicating with Borutta when making monetary settlement demands, yet intentionally refrained from communicating with Borutta regarding her possession of the computer and its return.

Acevedo's failure to return the laptop constitutes a denial of computer services to Teupen under NCGS § 14-456, which provides that it is illegal for any person to willfully and without authorization deny computer services to an authorized user of the computer.[10] By denying Teupen access to its laptop for over four months, Acevedo violated this statute.

---

[9] Even if this conversation had occurred, it would be irrelevant because Gessner admits that Parker Poe had previously stated it did not represent Teupen regarding Acevedo's claims, CEO Borutta had repeatedly demanded the return of Teupen's property in writing directly to Gessner, and neither Acevedo nor Gessner ever followed up with Teupen to confirm they had the laptop or arrange for its return.

[10] Acevedo's eventual return of the laptop does not affect the merit of Teupen's claims. Consider the example of a supplier who breaches a sales contract by refusing to deliver widgets to a purchaser, only to resume performance four months later by finally delivering them. The late performance would not vitiate the purchaser's right to sue for breach of contract, nor would it wipe away the damages the purchaser suffered from being deprived of the widgets during those four months.

Acevedo has admitted the essential facts on which Teupen's counterclaims are based—she failed to return the laptop to Teupen after her employment was terminated—and attempts to distract from that admission with a laundry list of excuses that do not impact the legal analysis. To move for sanctions against Teupen and its counsel for bringing those counterclaims, while specifically arguing that they lack evidentiary support, is acutely unwarranted and inappropriate.

V. **Teupen's claim related to Acevedo forwarding confidential information to her personal email account are well-supported.**

In Count IV of the Amended Counterclaims, Teupen asserts that Acevedo breached her employment agreement's confidential information provision by emailing confidential information and documents to her personal email account while employed with Teupen in December 2019. Acevedo's claim for sanctions here rests upon her bald assertion that the emails did not contain confidential information as defined in the employment agreement.

This argument is frivolous. "Confidential Information" is defined to include, among other things, all information pertaining to "personnel matters." Amended Counterclaims ¶43. In her own declaration, Acevedo admits that she "forwarded certain emails to myself because I believed they evidenced Teupen's wrongdoing in its conduct towards me." D.E. 11-2 at ¶17. In other words, she forwarded information regarding personnel matters to her personal email account. The emails also contain other types of confidential information as defined.

VI. **Teupen brought its compulsory counterclaims to vindicate its rights.**

Acevedo also asserts that Teupen's counterclaims "appear to have been filed for an improper purpose (in retaliation for Ms. Acevedo's federal wrongful termination lawsuit), meant to harass, intimidate and increase the costs of litigation for Ms. Acevedo." D.E. 12 at 9. This assertion is speculative, unsupported, meritless, and contradicted by Acevedo's own evidence.

Courts apply "an objective standard of reasonableness" to determine whether a pleading has been filed for an "improper purpose" under Rule 11(b)(1). *In re Kunstler*, 914 F.2d 505, 518 (4th Cir. 1990). Thus, the "court must ignore evidence of the injured party's subjective beliefs and look for more objective evidence of the signer's purpose," knowledge, or beliefs. *Id.* at 519. Gamesmanship, "[r]epeated filings, the outrageous nature of claims made, or a signer's experience in a particular area of law, under which baseless claims have been made, are all appropriate indicators of an improper purpose." *Id.* "Filing a lawsuit to 'vindicate rights' through the judicial process, on the other hand, is almost always objectively reasonable." *Rivers v. United States*, No. 6:18-CV-00061, 2020 WL 6880967, at *2 (W.D. Va. Nov. 23, 2020) (quoting *Kunstler*, 914 F.2d at 519). "If an attorney . . . filed a complaint to 'vindicate rights in court, and also for some other purpose,' that person should not be subject to Rule 11 sanctions 'so long as the added purpose is not undertaken in bad faith and is not so excessive as to eliminate' a 'central and sincere' desire to vindicate her rights." *Id.* (quoting *Kunstler*, 914 F.2d at 519).

Teupen's conduct during this lawsuit shows no indication of gamesmanship or repeated filings. As explained above, Teupen's counterclaims are not baseless, and Teupen possesses strong evidence that Acevedo is liable to Teupen. Additionally, nothing about Teupen's counterclaims is "outrageous," either in factual allegation or legal theory. Teupen's counterclaims are well-grounded, properly pleaded, and plausible on their faces. Accordingly, there is no objective reason to think Teupen brought these claims for an improper purpose.

Acevedo argues that the timing of Teupen's assertion of its counterclaims—"only after Ms. Acevedo's institution of a federal employment discrimination case"—provides evidence of an improper purpose. D.E. 12 at 1. Acevedo's submissions fatally undermine her retaliation claim and demonstrate Teupen's intent to vindicate its rights immediately upon Acevedo's separation

from employment. On January 14, 2020, Teupen, through CEO Borutta, emailed Acevedo's counsel requesting return of company property and documents. *See* D.E. 11-3, at 4 ("we are still missing documents and company property"); *see also* Borutta Decl. ¶10, Ex. A (letter from Borutta dated January 13, 2020 to counsel for Acevedo in which he states: "Ms. Acevedo has taken different property in her possession without my permission. We have to start legal action against Ms. Acevedo and report our property stolen if she does not return the companies [sic] property until 01/15/2020 noon."). Teupen repeated this request for return of company property on January 14, 2020. D.E. 11-3 at 14. ("Ms. Acevedo knows what to return . . . Ms. Acevedo also misused her administrator rights at Verizon and took over a company phone / number without my permission."). Teupen alerted Acevedo to its claims more than eight months before Acevedo filed this lawsuit.

Acevedo's argument also ignores that her lawsuit triggered a "use it or lose it" decision for Teupen. Before Acevedo filed her Complaint, Teupen had three years to decide whether to bring its claims. *See* N.C. Gen. Stat. § 1-52(1), (4), (9). Teupen's counterclaims all relate either to Acevedo's misconduct leading up to her separation from employment or her actions after her separation that violated her ongoing duties to Teupen. Teupen's counterclaims are all "compulsory under Federal Rule of Civil Procedure 13 and had to be brought as counterclaims in this lawsuit or would be forfeited." *Powrzanas v. Jones Util. & Contracting Co.*, — F. App'x —, 2020 WL 6375108, at *5 (11th Cir. 2020) (per curiam); *see* Fed. R. Civ. P. 13(a)(1)(A). A defendant's assertion of compulsory counterclaims in response to the filing of a lawsuit against it does not establish that those counterclaims were brought for an improper purpose under Rule 11(b)(1). *See Powrzanas*, 2020 WL 6375108, at *5 (affirming district court's ruling that "there

13
Case 3:20-cv-00518-FDW-DSC   Document 16   Filed 01/04/21   Page 13 of 15

was no evidence of bad faith or improper purpose for the counterclaims"). Acevedo's lawsuit forced Teupen to file the counterclaims when it did or else lose them forever.

Acevedo has not shown any objective basis that Teupen filed counterclaims for an improper purpose.

**VII.** <u>**Conclusion**</u>

Acevedo's motion for sanctions is unwarranted, unsupported, and worthy of deterrence. *See Hooker v. Wilkie*, No. 8:18-CV-2000-T-36JSS, 2019 WL 6842083, at *5 (M.D. Fla. Dec. 16, 2019) ([A] motion for sanctions itself can lead to sanctions.") Teupen requests that the Court deny the Motion and award Teupen its "reasonable expenses, including attorney's fees, incurred for the motion." FRCP 11(c)(2).

        Respectfully submitted,

        /s/ Kevin J. Dalton
        Kevin J. Dalton (NC Bar No. 24197)
        David I. Klass (NC Bar No. 53342)
        **FISHER & PHILLIPS LLP**
        227 West Trade Street, Suite 2020
        Charlotte, North Carolina 28202
        Telephone: (704) 334-4565
        Facsimile: (704) 334-9774
        Email: kdalton@fisherphillips.com
        Email: dklass@fisherphillips.com
        ATTORNEYS FOR DEFENDANT

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. 3:20-CV-00518-FDW-DSC**

| | |
|---|---|
| MARJORIE ACEVDEO, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| TEUPEN NORTH AMERICA, INC., | ) ) ) |
| Defendant. | ) ) |

**CERTIFICATE OF SERVICE**

I hereby certify that on January 4, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notice to Plaintiff's counsel, L. Michelle Gessner, at michelle@mgessnerlaw.com.

The undersigned certifies pursuant to Rule 11 that this Memorandum complies with the Court's limitation of 4,500 words.

Served January 4, 2021.                    Respectfully submitted,

                                           /s/ Kevin J. Dalton
                                           Kevin J. Dalton
                                           Attorney for Defendant
                                           **FISHER & PHILLIPS LLP**