UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:20-cv-518

MARJORIE ACEVEDO,

    Plaintiff,

v.

TEUPEN NORTH AMERICA, INC.

    Defendant.

REPLY TO DEFENDANT'S OPPOSITION OF PLAINTIFF'S MOTION FOR SANCTIONS PURSUANT TO RULE 11

### I. Introduction[1] and Bottom Line Upfront

Defendant's opposition provides further justification for granting Ms. Acevedo's Motion for Sanctions and skirts the issue of Defendant's intent in bringing the counterclaims.

Defendant fails to substantiate its claims with evidence to show they have any real connection with Ms. Acevedo's termination (such that they would be compulsory). Instead, Defendant's records indicate damages are virtually nonexistent, which may explain why, when given the chance after Ms. Acevedo's termination, Defendant did *not* require the return of property and instead paid her the month's salary she was due under contract.

---

[1] Supplemental declarations of Ms. Acevedo and Ms. Gessner, regarding Defendant's new allegations and produced records, are attached as exhibits to this reply, referenced as "Exhibit A - Acevedo Decl." and "Exhibit B - Gessner Decl.", respectively.

Defendant brings these claims long afterwards for an improper purpose: retaliation for Ms. Acevedo initiating this action.[2]  Rule 11(B)(1).  Accordingly, Ms. Acevedo reiterates her requests that her motion for sanctions against Defendant and its counsel be granted.

## II. Defendant's intent in bringing its counterclaims is improper in light of the surrounding circumstances.

To determine whether a filing was made for an improper purpose under Rule 11(B)(1), the Court should look for "objective evidence of the signer's purpose." *In re Kunstler*, 914 F.2d 505, 519 (4th Cir. 1990).  Defendant used the guise of supplemental jurisdiction to file a barrage of unrelated counterclaims against Ms. Acevedo (employee theft, conversion, constructive fraud, breach of contract and computer trespass).  Defendant's own actions and records dispel any notion that these claims were brought for a proper purpose.

### A. iPhone

Verizon records newly produced by Defendant indicate that Defendant did in fact know that Ms. Acevedo had traded in her own personal cell phone in the summer of 2018 for the company's benefit.  (ECF No. 16-2).  The records show a "Trade-In Device Promo Credit" beginning in June of 2018. (ECF 16-2, p. 4).  The credit appears to be applied over 24 monthly bills, with a total value of approximately $400.  *Id.*

As Defendant contends in its opposition, the records show the trade-in value did not cover the full price of the upgraded phone - amounting to about half the price (both were being paid in 24 monthly installments).  *Id.*  However, the same logic reveals the frivolousness of Defendant's iPhone claim.  For 1.5 years, Defendant paid for Ms. Acevedo's phone as part of her employment, which is not in dispute.  (ECF 8, ¶¶4-5).  Ms. Acevedo's (alleged) illegal taking of

---

[2] Ms. Acevedo recently filed a Charge of Discrimination with the EEOC against Defendant for bringing counterclaims in retaliation of Ms. Acevedo asserting her federal rights.  After proper administrative exhaustion, Ms. Acevedo intends to seek leave to amend her Complaint to add ADA and Title VII retaliation claims.

2

the iPhone 8, Defendant alleges, occurred in late December of 2019. (ECF 8, ¶¶8, 13). At that point, the iPhone 8 was approximately 18 months old - it was *used*. As anyone who has purchased a smartphone is aware, a phone inevitably loses its value after purchase due both to the advancement of technology and the phone no longer being new. Like Ms. Acevedo's trade-in where Defendant received a credit of $400 in exchange for an iPhone 7 Plus that Ms. Acevedo purchased for $860 just a year earlier, the iPhone 8 at that point would have been worth *at most* half the purchase price, or $400 (probably less). (ECF 8, ¶6 (iPhone 8 full price of $799.92); Acevedo Decl. ¶3). Also, the records reveal that money was still owed on the iPhone 8 purchase price, according to Defendant approximately $200. (*Id.*; ECF 16, p. 4). Defendant never reimbursed Ms. Acevedo for the $400 trade-in credit, so if Defendant did insist on the used iPhone being returned (worth approximately $400), Defendant would have owed at least $600: $400 to Ms. Acevedo *plus* the $200 still owed on the iPhone 8. (Acevedo Decl., ¶4). Defendant appears to have received a net benefit by the iPhone 8 going to Ms. Acevedo and her assuming the costs.

In addition to Defendant's newly-produced records, Defendant's awareness of the frivolousness of the current claims is made clear by Defendant's conduct following her termination. According to Defendant's termination letter of January 3, 2020, (which Defendant's CEO Borutta says he "personally drafted"), Ms. Acevedo would "receive remaining wages owed...on the following payday after February 3, 2020," based on a condition precedent: "after we receive[] the compan[y]'s assets you have still in your possession." (ECF 16-1, p. 6; ECF 17-2, p. 1). Defendant admits "that [Ms. Acevedo] was paid one month's salary after her termination." (ECF 7, ¶38). Although, in mid-January, Borutta made general demands about property needing to be returned, Defendant nonetheless paid Ms. Acevedo weeks later, in

3

Case 3:20-cv-00518-FDW-DSC    Document 18    Filed 01/11/21    Page 3 of 7

February. (ECF 16-1, p. 6; ECF 17-2, p. 1). In contrast, if Defendant *had* insisted the iPhone be returned, Defendant would have either needed to pay Ms. Acevedo at least $400 (the benefit Defendant received of her trade-in) or else Defendant would have exposed itself to conversion and/or unjust enrichment claims from Ms. Acevedo.

In November of 2020, almost a year later, Defendant attempted to bring claims for a used iPhone which [1] Defendant chose not to require before paying her the final month owed under contract; [2] Ms. Acevedo has her own legal claim to; and [3] was not related to Ms. Acevedo's termination (as explained more fully in Ms. Acevedo's concurrent Reply regarding her Motion to Dismiss). Defendant's intent can only be explained by a desire to retaliate against Ms. Acevedo for her subsequent action of bringing claims in federal court.

### B. Emails

Defendant does not provide any additional context of what "Confidential Information" was allegedly taken by Ms. Acevedo other than that relating to her own employment conditions. (ECF 16, p. 11). Despite Defendant's general assertions regarding confidential information, tellingly, Defendant has *not* brought any claims for misappropriation of trade secrets, which could have provided Defendant federal subject matter jurisdiction under the Defend Trade Secrets Act ("DTSA"). 18 U.S.C. §§ 1836; *see* 18 U.S.C. §1833(b) (the DTSA's whistleblower provision provides immunity, under both state and federal law, for the disclosure of a trade secret in confidence to an attorney for "the purpose of reporting or investigating a suspected violation of law," such as employment discrimination). Again, Defendant's purpose in asserting claims based on these emails appears to be for harassment and intimidation in retaliation for Ms. Acevedo asserting her federal rights.

4

Case 3:20-cv-00518-FDW-DSC   Document 18   Filed 01/11/21   Page 4 of 7

### C. Laptop

As explained above, Defendant had the opportunity after Ms. Acevedo's termination to specifically request the laptop and withhold Ms. Acevedo's final month of pay yet declined to do so. Despite Defendant not specifically insisting on the laptop, it was returned to Defendant, unused and unopened. (ECF 11-2, ¶¶11-14; ECF 11-3, ¶¶7-8, 13-14). Defendant undisputedly had the laptop for over five months before bringing legal claims against Ms. Acevedo. Again, with virtually no apparent damages, Defendant's intent behind the claims appears to be retaliation.

### D. Defendant's allegations against Plaintiff's counsel

Defendant's opposition goes to considerable lengths in an attempt to impugn the credibility of Ms. Acevedo's counsel before this Court. (ECF 16, pp. 9-10; ECF 16-3; ECF 16-4). Defendant's evidence is not conclusive, and the issue is a relatively trivial one (whether or not the laptop was specifically offered in January of 2020, before subsequently being returned). Nonetheless, the undersigned counsel has attached a supplemental declaration responding to Defendant's accusations. (Exhibit B - Gessner Decl.) With such a red herring issue, the lengths Defendant goes to on this point only further exhibits Defendant's retaliatory animus.

## III. Conclusion

The surrounding circumstances make clear that Defendant's true intent behind its counterclaims was not to seek legal remedy but to intimidate, harass, needlessly increase the cost of litigation for Ms. Acevedo, and falsely paint her as a criminal to the jury. Accordingly, Ms. Acevedo reiterates her requests that her motion for sanctions against Defendant and its counsel be granted.

Respectfully submitted this 11th day of January 2021.

                                           */s/ L. Michelle Gessner*
                                           L. Michelle Gessner, NC State Bar No. 26590
                                           GESSNERLAW, PLLC
                                           Post Office Box 78161
                                           Charlotte, North Carolina 28271
                                           Telephone: (704) 234-7442; Fax: (980) 206-0286
                                           E-Mail: michelle@mgessnerlaw.com
                                           *Attorney for Plaintiff*

## CERTIFICATE OF LENGTH

I certify that this brief was prepared using Microsoft Word and the relevant word count does not exceed 1,500.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 11, 2021

*/s/ L. Michelle Gessner*
L. Michelle Gessner, NC State Bar No. 26590
GESSNERLAW, PLLC
Post Office Box 78161
Charlotte, North Carolina 28271
Telephone: (704) 234-7442; Fax: (980) 206-0286
E-Mail: michelle@mgessnerlaw.com
*Attorney for Plaintiff*