UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:20-cv-00518-FDW-DSC

| | | |
|---|---|---|
| MARJURIE ACEVEDO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER |
| | ) | |
| TEUPEN NORTH AMERICA, INC., | ) | |
| | ) | |
| Defendant/Counterclaimant. | ) | |
| | ) | |
| | ) | |

THIS MATTER is before the Court on Teupen North America, Inc.'s ("Defendant") Motion for Entry of Default (Doc. No. 10), Marjurie Acevedo's ("Plaintiff") Motion to Dismiss (Doc. No. 13) for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and Plaintiff's Motion for Sanctions (Doc. No. 11). The Court has reviewed Defendant's Memorandum in Opposition of the Motion to Dismiss (Doc. Nos. 15), Defendant's Memorandum in Opposition of the Motion for Sanctions (Doc. No. 16), and Plaintiff's Replies (Doc. Nos. 17, 18). Accordingly, for the reasons detailed below, Defendant's Motion for Entry of Default is DENIED AS MOOT, Plaintiff's Motion to Dismiss is DENIED, and Plaintiff's Motion for Sanctions is DENIED.

## I.    BACKGROUND

Plaintiff filed the above-captioned matter against Defendant for discrimination and retaliation based on national origin and/or sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.§2000e, et seq. ("Title VII"), discrimination based on disability and/or perceived disability in violation of Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.,

1

as amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), and wrongful discharge in violation of public policy under N.C. Gen. Stat. § 143-422.1, et seq. (Doc. No. 1, p. 1).

Plaintiffs' claims arise out of alleged discrimination and retaliation she faced during her employment with Defendant spanning from March of 2017 to January of 2020. (Id. at ¶¶ 10, 37, 45). At the outset of her employment, Plaintiff signed an Employment Agreement that defined all her employment duties and obligations. (Id. at ¶ 11). According to the Complaint, Defendant would provide a company cellphone and laptop to certain employees to complete their job duties. At the beginning of her employment, Plaintiff traded in her personal cellphone to Verizon to receive monetary credit towards an upgraded cell phone that she would connect on Defendant's Verizon account to use for work. Plaintiff also received a company laptop.

According to the Complaint, the Employment Agreement also stipulated Plaintiff's employment could be terminated by Defendant with or without cause. (Id. at ¶ 12). Termination "with cause" is defined as including, without limitation, willful failure to perform reasonable employment duties, and any willful or material misconduct of the employee, including misconduct involving fraud or dishonesty in the performance of the employee's duties and obligations. (Id. at ¶ 13). If an employee is terminated "without cause," Defendant will provide a severance payment of one month's salary. (Id. at ¶ 14).

After Defendant terminated some employees in 2019, Martin Borruta ("Borruta"), Teupen's new CEO, began supervising Plaintiff with the assistance of his alleged friend Andy Liebl ("Liebl"), the newly hired Operations Manager. (Id. at ¶¶ 17, 18, 20). During this same period, Plaintiff served as interim Vice President of Finance. (Id. at ¶ 19). According to the

2

Complaint, Liebl repeatedly discriminated against Plaintiff based on her national origin (Hispanic) and her sex (female). (Id. at ¶ 21).

Plaintiff alleges she suffered discriminatory behavior from an additional employee, Geraldine Molyn ("Molyn"). (Id. at ¶ 26). Plaintiff reported Molyn to Liebl on numerous occasions for discriminatory comments and behavior, but Liebl allegedly refused to intervene, investigate, or discipline Molyn. (Id. at ¶ 27).

On December 30, 2019, Plaintiff was demoted from her position and contends she became emotionally distraught (Id. at ¶¶ 31, 35). Defendant placed Molyn into Plaintiff's previous position and office. (Id. at ¶¶ 31, 32). Plaintiff alleges that her demotion was aggressive and caused emotional damage that required a doctor visit. (Id. at ¶ 33). The Complaint asserts the doctor prescribed Plaintiff with anxiety medication and Plaintiff took medical leave from January 2-3, 2020. (Id. at ¶¶ 35, 36).

On January 3, 2020, Plaintiff received a termination letter via email signed by Liebel. (Id. at ¶ 37). The letter stated Plaintiff was being terminated "without cause" pursuant to the Employment Agreement. (Id. at ¶ 38). Because Plaintiff was terminated without cause, she received the severance payment of one month's salary in accordance with the Employment Agreement. (Id.). Plaintiff alleges her termination was in retaliation for repeatedly reporting the discrimination she suffered during the course of her employment with Defendant. (Id. at ¶ 37).

Plaintiff filed an EEOC charge against Defendant on January 16, 2020, and received a Notice of Right to Sue on August 17, 2020. (Id. at ¶ 7). Defendant asserts Plaintiff's demotion was not a result of discrimination or retaliation. Instead, her termination was a result of her own alleged misconduct. Specifically, Defendant's Answer to the Complaint asserts counterclaims that allege

3

Plaintiff fraudulently transferred her company cellphone from the Defendant's Verizon account into her name and her payment information in the timeframe between her demotion and termination. Defendant also contends Plaintiff did not return the cellphone or the company laptop to Defendant when requested, in violation of the Employment Agreement. Also, Plaintiff allegedly transferred confidential documents from the laptop to her personal email before termination as evidence of Defendant's conduct.

Plaintiff filed her Complaint on September 21, 2020, (Doc. No. 1), to which Defendant answered on October 14, 2020. (Doc. No. 4). Defendant then filed an Amended Answer and Counterclaim on November 3, 2020, alleging employee theft, conversion, constructive fraud, breach of contract, and computer trespass, (Doc. No. 7), and subsequently filed an Amended Counterclaim on November 20, 2020, (Doc. No. 8). Defendant filed a Motion for Entry of Default on December 8, 2020 (Doc. No. 10). On the same day that Defendant filed their motion for entry of default, Plaintiff filed a Motion for Extension of Time to respond to the Counterclaims, and the Court granted Plaintiff's motion the same day. (Doc. No. 9). In response to the counterclaims, Plaintiff filed a Motion for Sanctions and a Motion to Dismiss for lack of subject matter jurisdiction on December 18, 2020 (Doc. Nos. 11, 13) with supporting memorandums of law. (Doc. Nos. 12, 13). Defendant filed Memorandums in Opposition to both motions (Doc. Nos. 15, 16), to which Plaintiff replied (Doc. Nos. 17, 18). These motions are now ripe for review.

## II.     STANDARD OF REVIEW

Defendant has moved for entry of default for Plaintiff's failure to timely respond to the counterclaims contained in the Amended Answer and Counterclaims. Plaintiff has moved for sanctions against Defendant, arguing the counterclaims are asserted in violation of Rule 11 of the

4

Federal Rules of Civil Procedure, as well as motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing this Court lacks subject matter jurisdiction over the counterclaims.

## A. Entry of Default

Fed. R. Civ. P. 55(a) provides: "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." However,

> where a defendant appears and indicates a desire to contest an action, a court may exercise its discretion to refuse to enter default, in accordance with the policy of allowing cases to be tried on the merits. In the final analysis, default judgments are not favored in the law, and the entry of such a judgment is only appropriate where there has been a clear record of delay or contumacious conduct.

Wendt v. Pratt, 154 F.R.D. 229, 230 (D. Minn. 1994) (internal quotation marks and citations omitted) (cited in 10A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2682 (3d ed. 2006)).

## B. Subject Matter Jurisdiction

The party asserting the claim has the burden of proving that subject matter jurisdiction exists. See Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The existence of subject matter jurisdiction is a threshold issue the court must address before considering the merits of the case. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). When a party challenges subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, 945 F.2d at 768.

5

The movant may assert a facial attack or a factual attack on the nonmovant's assertion of subject matter jurisdiction. <u>Kerns v. United States</u>, 585 F.3d 187, 192 (4th Cir. 2009). "In a facial challenge, a defendant asserts that the allegations, taken as true, are insufficient to establish subject-matter jurisdiction" <u>Mitchell v. Winston-Salem State Univ.</u>, No. 1:19CV130, 2020 WL 1516537, at *5 (M.D.N.C. Mar. 30, 2020). This attack mirrors the standard of a Rule 12(b)(6) motion. <u>Kerns</u>, 585 F.3d at 192. The motion will be denied if sufficient facts are alleged to invoke subject matter jurisdiction. (<u>Id.</u>)

A factual attack argues that the allegations relied on to support exercising subject matter jurisdiction are false. (<u>Id.</u>). Therefore, the presumption of truthfulness is not afforded to the allegations. (<u>Id.</u>). The court may "go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations." <u>Adams v. Bain</u>, 697 F.2d 1213, 1219 (4th Cir. 1982). Allegations in a factual attack may regain the presumption of truth if "the jurisdictional facts are intertwined with the facts central to the merits of the dispute." <u>Kerns</u>, 585 F.3d at 193 (citations omitted). "A district court should assume jurisdiction and assess the merits of the claim when the relevant facts -- for jurisdictional and merits purposes -- are inextricably intertwined." (<u>Id.</u> at 195). "[T]he court should resolve the relevant factual disputes only after appropriate discovery, unless the jurisdictional allegations are clearly immaterial or wholly unsubstantial and frivolous." (<u>Id.</u> at 193).

**C. Rule 11 Sanctions**

Fed. R. Civ. P. Rule 11(a) requires every pleading, written motion, or other paper to be signed by either the party's attorney, if represented, or the party itself, if the party proceeds without representation. By signing a filing, a party certifies "that to the best of the [the party's] knowledge,

information, and belief, formed after an inquiry reasonable under the circumstances," the filing is not "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," and "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b) (1)-(2). The filing must also have a proper factual contention for each claim and any "denials of factual contentions are warranted on the evidence or . . . are reasonably based on belief or a lack of information." Fed. R. Civ. P. 11(b) (3)-(4).

"The party moving for sanctions bears the burden to demonstrate the specific conduct that violates Rule 11(b)." Rivers v. United States, No. 6:18-CV-00061, 2020 WL 6880967, at *2 (W.D. Va. Nov. 23, 2020). An attorney must conduct a reasonable investigation of the factual and legal basis for his claim before filing. Brubaker v. City of Richmond, 943 F.2d 1363, 1373 (4th Cir. 1991). To be reasonable, "the prefiling factual investigation must uncover some information to support the allegations in the complaint. A complaint containing allegations unsupported by any information obtained prior to filing violates the required prefiling factual investigation." (Id.) (citation omitted). When there is not a factual basis for a plaintiff's allegations,

> The complaint violates Rule 11's factual inquiry requirement. The prefiling investigation must also uncover some basis in law to support the claims in the complaint. A prefiling investigation of the law will not pass muster under Rule 11 where the complaint has "absolutely no chance of success under the existing precedent."

(Id.) (quoting Cleveland Demolition Co. v. Azcon Scrap Corp., 827 F.2d 984, 988 (4th Cir.1987). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has

been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).

## III. ANALYSIS

### A. Motion for Entry of Default

Defendant filed its Motion for Entry of Default against Plaintiff on December 8, 2020, (Doc. No. 10), arguing Plaintiff failed to respond timely to the Amended Counterclaims. (Doc. No. 8). However, Plaintiff concurrently filed a Motion for Extension of Time to Answer on December 8, 2020, (Doc. No. 9), which was then granted. Accordingly, Defendant's Motion is DENIED.

### B. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Plaintiff moves for the Court to dismiss Defendant's Amended Counterclaims[1] for lack of subject matter jurisdiction. (Doc. No. 11). Both parties agree that the basis for this Court's federal jurisdiction over the counterclaims is supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Plaintiff contends Defendant's counterclaims arise only under state law and are unrelated to Plaintiff's Title VII, ADA, and wrongful termination claims. (Id. at p. 2). Defendant argues all the counterclaims relate to Plaintiff's actions and misconduct surrounding her demotion, the termination of her employment, and her subsequent refusal to comply with the contractual duties and obligations involved in her employment with Defendant. (Doc. No. 15, p. 4). For the reasons that follow, this Court DENIES Plaintiff's Motion to Dismiss for Lack of Subject Matter Jurisdiction.

In analyzing whether a court has jurisdiction over a defendant's counterclaim, 28 U.S.C. §

---

[1] Defendant's Amended Counterclaims allege state law causes of action of employee theft, conversion, constructive fraud, breach of contract, and computer trespass.

8

1367(a) establishes that civil actions in which "the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Further, "[i]f the counterclaim is compulsory, it is within the ancillary jurisdiction of the court to entertain and no independent basis of federal jurisdiction is required." Painter v. Harvey, 863 F.2d 329, 331 (4th Cir. 1988). Thus, where neither diversity nor federal question jurisdiction exists over a defendant's counterclaims, "the designation of the counterclaim [as 'compulsory' or 'permissive'] is critical." Painter, 863 F.2d at 331. Finally, a compulsory counterclaim is one which "arises out of the transaction or occurrence that is the subject matter of the opposing party," whereas a permissive counterclaim does not. FED. R. CIV. P. 13(a)-(b). "If the counterclaim is permissive, however, it must have its own independent jurisdictional base." (Id.)

To determine whether a claim is "compulsory" or "permissive," the Fourth Circuit has suggested four inquiries:

> (1) Are the issues of fact and law raised in the claim and counterclaim largely the same? (2) Would res judicata bar a subsequent suit on the party's counterclaim, absent the compulsory counterclaim rule? (3) Will substantially the same evidence support or refute the claim as well as the counterclaim? And (4) Is there any logical relationship between the claim and counterclaim?

Id. (citing Sue & Sam Mfg. co. v. B-L-S Constr. Co., 538 F.2d 1048, 1051-53 (4th Cir. 1976)). Because these tests "are less a litmus, more a guideline," the Court is not required to answer all four inquiries in the affirmative for a counterclaim to be compulsory. Painter, 863 F.2d at 331. Thus, if a district court has valid jurisdiction over a federal claim, it has the discretion to exercise supplemental jurisdiction over additional state claims if they "derive from a common nucleus of

9

operative fact" such that the plaintiff "would ordinarily be expected to try them all in one judicial proceeding." United Mine Workers of America v. Gibbs, 383 U.S. 715, 725-26 (1966). Because supplemental jurisdiction "lies in considerations of judicial economy, convenience and fairness to litigants . . . if these are not present a federal court should hesitate to exercise jurisdiction over state claims." Id.

Courts have routinely recognized that counterclaims alleging state law causes of action, where facts at issue went to the employer's legitimate non-discriminatory reason for termination, are compulsory counterclaims that constitute part of the same transaction or occurrence that led to the employee's termination and a filing of Title VII claims. See Long v. Welch & Rushe, Inc., 28 F. Supp. 3d 446, 451-55 (D. Md. 2014) (determining that employer's counterclaims for conversion, trespass to chattels, and unjust enrichment were compulsory counterclaims that were part of the same transaction or occurrence that led to employee's termination and her filing of Title VII claims because they played a role in the decision of termination). Even when the legal and factual issues are not "largely the same," significant points of overlap in both claims may satisfy the requisites to exercise supplemental jurisdiction. See Harrison v. Grass, 304 F.Supp.2d 710, 714 (D.Md. 2004) ("In particular, questions as to whether [plaintiff] stole and why he was expelled are likely to bear importantly on both sets of claims.").

The parties disagree as to whether Plaintiff has asserted a facial attack or a factual attack on the exercise of subject matter jurisdiction of Defendant's counterclaims. In Plaintiff's Motion to Dismiss, (Doc. No. 13), she did not make a request for an evidentiary hearing, nor has she since provided enough evidence outside of the pleadings to make a determination under a factual attack at this early stage. Therefore, the Court recognizes Plaintiff's argument as a facial attack

and provides Defendant's counterclaims the presumption of truth for the forthcoming analysis.

**a. Issues of Fact and Law Raised in Plaintiff's Claims and Defendant's Counterclaims**

To determine whether a counterclaim is compulsory or permissive, the first inquiry is whether "the issues of fact and law raised in the claim and counterclaim [are] largely the same[.]" Painter, 863 F.2d at 331.

Turning now to the first inquiry, Plaintiff contends her claims strictly arise out of her discriminatory treatment during employment with Defendant, and out of her allegedly discriminatory and retaliatory termination. (Doc. No. 14, p. 8). In contrast, Defendant's counterclaims consist of employee theft[2], conversion[3], constructive fraud[4], breach of contract[5], and computer trespass[6]. (Doc. No. 8). Plaintiff further contends these counterclaims "rely on state law and court decisions wholly unrelated to [Plaintiff]'s wrongful termination claims." (Id. at p. 9). With respect to the legal issues involved, Plaintiff is correct that they address separate legal questions. Plaintiff's claims focus on the legal question of whether Defendant engaged in discriminatory conduct towards Plaintiff, and whether Defendant wrongfully terminated Plaintiff. In contrast, Defendant's claim focuses on the wrongful possession of a laptop, a cellphone, and documents located within these technologies. However, the inquiry does not stop at the presence

---

[2] Defendant's alleges Plaintiff refused to return a work cellphone provided by Defendant and transferred the cellphone onto an account under Plaintiff's name and information in anticipation of being terminated. (Doc. No. 8, p. 5).

[3] Defendant's alleges Plaintiff unlawfully converted Defendant's iPhone for Plaintiff's personal use prior to termination. (Id. at p. 6).

[4] Defendant alleges Plaintiff fraudulently represented her legal capacity to transfer Defendant's iPhone from Defendant's Verizon account onto Plaintiff's personal account, and Defendant's agreement to the transfer. (Id. at p. 6).

[5] Defendant contends Plaintiff violated her Employment Agreement by sending confidential information to her personal email account during her employment, as well as failing to return company property such as Defendant's laptop, iPhone, confidential information, and unauthorized copies made at the time of termination. (Id. at p.7-8).

[6] Defendant alleges that Plaintiff obtained access to Defendant's laptop and iPhone for the purpose of making unauthorized copies during employment and refused to return the technology containing confidential information to Defendant, the authorized user, at the time of termination and thereafter. (Id. at p. 9).

of differing legal issues.

Defendant argues the issues of fact are largely the same. (Doc. No. 15, p. 13). The counterclaims concerning the iPhone and the transfer of confidential information share common issue of facts with Plaintiff's claims. (Id. at p. 11-12). Specifically, they share issues of fact regarding Plaintiff's conduct with the cellphone and confidential information surrounding her demotion and termination. (Id.) Defendant further argues the counterclaims concerning the continued possession of the laptop relate directly to addressing the mental state and claimed discomfort felt by Plaintiff surrounding her termination. (Id. at p. 14). Thus, the counterclaims are compulsory since they bear directly on the issue of facts regarding Plaintiff's conduct, emotional state, and mental state that she would utilize to support her claims. (Id. passim) These same issues of fact would be utilized, in turn, by Defendant to defend their termination decision against Plaintiff's claims. (Id. at p. 11).

Courts have long recognized that employee misconduct generates a legitimate, non-discriminatory reason for termination. See generally Long v. Welch & Rushe, Inc., 28 F. Supp. passim; see also Plebani v. Bucks County Rescue Emerg. Med. Services, CIV.A.03-5816, 2004 WL 2244543 passim (E.D. Pa. Sept. 30, 2004) (determining that the employer's counterclaims alleging on-the-job misconduct shared similar factual issues with the employer's affirmative defense showing a legitimate reason for termination); Amort v. NWFF, Inc., 6:11-CV-6396-AA, 2012 WL 3756330, at *3 (D. Or. Aug. 27, 2012) ("The bases of the [employer's] counterclaims relate to [the] plaintiff's employment and the alleged reasons for his termination and will undoubtedly serve as defenses to plaintiff's federal retaliation claim.") Plaintiff's claims and Defendant's counterclaims may lack similar legal issues, but the issues of fact clearly intertwine.

12

Although Defendant's counterclaims related to continued misconduct *after* Plaintiff's termination do not aid in developing the record of a legitimate non-discriminatory reason for termination, Plaintiff's actions concerning the laptop begin *on the day* of Plaintiff's termination and share substantially similar issues of fact nonetheless. Therefore, Defendant's counterclaims related to conduct before Plaintiff's termination are compulsory, and the inquiry of Defendant's remaining counterclaims weighs in favor of finding them compulsory.

### b. Res Judicata

To establish whether a counterclaim is compulsory or permissive, the Court must determine whether "res judicata [would] bar a subsequent suit on the party's counterclaim, absent the compulsory claim rule[.]" Painter, 863 F.2d at 331. Res judicata will bar a subsequent suit when there is "(1) a final judgment on the merits in an earlier suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of the parties or their privies in the two suits." Nash Cty. Bd. of Ed. v. Biltmore Co., 640 F.2d 484, 486 (4th Cir. 1981).

In Painter, the Fourth Circuit recognized that simply because a counterclaim would not be barred by res judicata, it does not automatically qualify it to be labeled permissive. 863 F.2d at 333. Instead, when the suits share issues of fact, judicial economy can best be served by allowing factfinders to examine the entire context of the case for the sake of consistency. (Id.)

The Court recognizes that the doctrine of res judicata would not bar Defendant from bringing a subsequent suit on his counterclaims. However, when considering the Fourth Circuit's reasoning in Painter, this Court finds that judicial economy is best served by hearing the suits together. Accordingly, the second inquiry weighs in favor of Defendant's counterclaims being compulsory.

### c. Evidence to Support and Refute Plaintiff's Claims and Defendant's Counterclaims

The third factor in determining whether a counterclaim is compulsory or permissive analyzes whether "substantially the same evidence [will] support or refute the claim as well as the counterclaim[.]" Painter, 863 F.2d at 332. "Where . . . the same evidence will support or refute both the claim and counterclaim, the counterclaim will almost always be compulsory." (Id.) Further, the "same evidence test thus accomplishes the purposes of Fed. R. Civ. P. 13(a), because the very purpose of making certain types of counterclaims compulsory is to prevent the relitigation of the same set of facts." (Id. (internal quotations omitted)).

Here, Plaintiff contends her claims will "probe her treatment over the last several months, including her demotion and ultimate termination," while Defendant's counterclaims dispute ownership of property (Doc. No. 14, p. 9). In contrast, Defendant contends the evidence they will use to refute Plaintiff's claims, as well as to support their counterclaims, stems from the exact same employment time frame that Plaintiff seeks to "probe". (Doc. No. 15, p. 11-12). The Court agrees with Defendant and finds the evidence is substantially similar across the parties' claims. The evidence sought by both parties stems from the same employment time frame, both parties' conduct therein, and will likely include largely the same witnesses, employment documents, and records. Accordingly, the third inquiry weighs in favor of Defendant's counterclaims being compulsory.

### d. Logical Relationship Between Plaintiff's Claims and Defendant's Counterclaims

Lastly, before deciding whether a counterclaim is compulsory or permissive, the Court must also determine whether "there is any logical relationship between the claim and the counterclaim[.]" Painter, 863 F.2d at 331.

14

Plaintiff argues the fourth inquiry weighs in favor of dismissal because the only connection between Plaintiff's claims and Defendant's claims are the employer-employee relationship. (Doc. No. 14, p. 10). Plaintiff asserts Defendant's counterclaims related to conduct that was not alleged as a cause of Plaintiff's termination; therefore, they are unrelated to Plaintiff's wrongful termination claim. (Id.)

To support her argument, Plaintiff relies on this Court's determinations in Acker. Acker v. States Mortg., No. 3:20-CV-00247-FDW-DCK, *1 (W.D.N.C. Aug. 13, 2020). In Acker, the court found there to be no logical relationship between a plaintiff's FLSA claim and the defendant's counterclaims alleging defamation. (Id. at *6). The court reasoned that FLSA claims operate under a narrow focus related to wage rates and working hours; the defamation claim's *only* connection to the FLSA claim was the prior employment relationship. Therefore, no logical relationship was found between the claim and counterclaim. (Id.)

The case at bar is notably distinguishable. Here, Plaintiff's claims allege discrimination, retaliation, and wrongful termination by Defendant. As part of the burden shifting framework to determine liability on these claims, Defendant will need to develop a non-discriminatory reason for termination in defense of Plaintiff's wrongful termination claims. While Defendant may not have lodged a specific allegation stating Plaintiff's termination was a result of misconduct, these counterclaims allege misconduct and bear a direct connection to Defendant's anticipated defense. Unlike the counterclaims in Ackers, Defendant's counterclaims derive from conduct *during* Plaintiff's employment and *at the time* of termination. The connection between the claims and counterclaims goes far beyond the mere existence of employment.

For those reasons, the Court finds there to be a logical relationship between Plaintiff's

claims and Defendant's counterclaims. Thus, the fourth inquiry weighs in favor of Defendant's counterclaims being compulsory.

In conclusion, the Court finds that all four factors weigh in favor of Defendant's counterclaims being compulsory. Accordingly, the Court has jurisdiction over the counterclaims pursuant to 28 U.S.C. § 1367, and Plaintiff's Motion to Dismiss for Lack of Subject Matter Jurisdiction is DENIED.

### C. Motion for Sanctions

Pursuant to the "safe harbor" provision of Fed. R. Civ. P. Rule 11(c)(2), Plaintiff properly served a Motion for Sanctions and accompanying Memorandum of Law upon Defendant and his counsel on November 19, 2020. (Doc.  No.  12, p. 2). Defendant then filed his Amended Counterclaims (Doc.  No.  8) that allegedly contain noticeably the same charges and allegations. (Doc.  No.  12, p. 2).

Plaintiff now requests the Court sanction Defendant and his counsel for "presenting claims and legal contentions for an improper purpose (retaliation for a federal employment discrimination action), clearly meant to harass, cause unnecessary delay, and/or needlessly increase the cost of litigation for [Plaintiff]." (Doc. No. 12, p. 1-2). Plaintiff contends the counterclaims arise from purely harmless actions.[7] Further, Defendant's counterclaims allegedly lack any evidentiary support, are without any damages, or are based on factual allegations disprovable by evidence in Defendant's own possession. (Id. at p. 1).

This Court has carefully reviewed both parties' arguments related to the possession of the

---

[7] Plaintiff states these actions include "1) retaining possession of her own cell phone that had previously been on Defendant's plan; 2) delivering to her attorney a company laptop that Defendant had previously disabled prior to her termination; and 3) forwarding several non-confidential emails to herself prior to her termination, because they were evidence of Defendant's wrongdoing." (Doc.  No.  12, p. 3).

iPhone, laptop, and confidential information, and attached exhibits. While the timing of the counterclaims might provide circumstantial evidence of ill-intent, it is clear Plaintiff was put on notice of legal action by way of two letters from Defendant's CEO Borutta, on January 13 and 14, 2020, stating legal action would be taken if Plaintiff failed to return company property. (Doc. No. 16, p. 13). Eight months later, Plaintiff's subsequent lawsuit against Defendant required them to bring their compulsory claims or lose them pursuant to the Fed. R. Civ. P. Rule 13. (Id.)

Plaintiff has failed to show Defendant's counterclaims were brought for an improper purpose such as retaliation for Plaintiff's federal employment discrimination action, to harass, cause unnecessary delay, or needlessly increase the cost of litigation. Because Plaintiff has failed to meet her burden of proving Defendant's counterclaims violate Fed. R. Civ. P. Rule 11(b) in any recognized capacity, Plaintiff's Motion for Sanctions is DENIED.

## IV.    CONCLUSION

IT IS THEREFORE ORDERED, for the reasons stated above, Defendant's Motion for Entry of Default (Doc. No. 10) is DENIED, Plaintiff's Motion to Dismiss (Doc. No. 13) is DENIED, and Plaintiff's Motion for Sanctions (Doc. No. 11) is DENIED.

IT IS SO ORDERED.

Signed: February 22, 2021

Frank D. Whitney
United States District Judge

18