# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### Civil Action No. 3:20-cv-518

MARJORIE ACEVEDO,

      Plaintiff,

v.

TEUPEN NORTH AMERICA, INC.

      Defendant.

**FIRST AMENDED COMPLAINT**

## NATURE OF THE ACTION

1.      Plaintiff brings this action against Teupen North America, Inc. ("Defendant") for discrimination and retaliation based on national origin and/or sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.§2000e, et seq. ("Title VII").

2.      Plaintiff further brings this action against Defendant for discrimination based on disability and/or perceived disability in violation of Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., as amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADA").

3.      Plaintiff further brings this action against Defendant for wrongful discharge in violation of public policy under N.C. Gen. Stat. § 143-422.1, et seq.

4.      Plaintiff also brings this action against Defendant for violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), for failing to provide Plaintiff with a timely COBRA notice that complies with the law.

1

## JURISDICTION AND VENUE

5.      This action arises under federal statutes including Title VII and the ADA.  This Court has jurisdiction over this matter pursuant to 28 U.S.C.§ 1331, because the claims brought herein constitute a federal question under the laws of the United States.

6.      Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims because they arise out of the same nucleus of operative facts as the federal claims. All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness and convenience for the parties.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Plaintiff was hired to work in this District and Defendant conducts business in this District.

8.      Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 16, 2020 on the basis of her sex, national origin, disability, and Defendant's retaliation against her for complaining about said discrimination.  The EEOC issued a Notice of Right to Sue on August 17, 2020.  On or about December 31, 2020, Plaintiff filed a second EEOC Charge based on Defendant's retaliation in connection with this legal action; on or about January 28, 2021, the EEOC issued a Notice of Right to Sue in connection with Plaintiff's second EEOC Charge.

## THE PARTIES

9.      Plaintiff, Marjorie Acevedo ("Plaintiff" or "Acevedo"), is a Hispanic female and at all relevant times resided in Charlotte, North Carolina.

10.      Defendant, Teupen North America, Inc. ("Defendant" or "Teupen"), is a manufacturer of compact track lifts with headquarters in Charlotte, North Carolina, and is an

employer within the meaning of the relevant laws and statutes. Teupen's parent company resides in German.

**GENERAL ALLEGATIONS**

11.　　On March 24, 2017, Plaintiff entered into an employment agreement with Defendant ("Employment Agreement"). The Employment Agreement provides that Plaintiff was being hired as an Accounting Administrator at $43,000 per year, plus a possible 10% bonus and fringe benefits.

12.　　Plaintiff's obligations under the Employment Agreement include: performing duties as reasonably required; discharging her responsibilities and duties in compliance with the rules and regulations of Defendant and in accordance with the policies and directives of Defendant; and serving Defendant faithfully in the performance of her duties and devoting her time and best efforts to the job.

13.　　The Employment Agreement provides that it is for an indefinite term and could be terminated by Defendant with cause or without cause. It also could be terminated through Plaintiff's death or resignation.

14.　　A termination "with cause: is defined in the Employment Agreement as: " (i) a material breach by Employee of Employee's obligations as set forth in this Agreement (other than due to disability), which material breach is not remedied within seven (7) business days after receipt of written notice from the Company specifying such a breach; (ii) the conviction of Employee of a felony or a crime involving moral turpitude; (iii) willful failure of Employee to comply with reasonable instructions or directives of the Company; (iv) chronic absenteeism of Employee for reasons other than disability; (v) any willful or material misconduct of Employee, including, without limitation, misconduct involving fraud or dishonesty in the performance of

3

Employee's covenants, duties or obligations under this Agreement or conduct which is deemed, materially injurious to the Company; or (vi) Employee's illegal use of controlled substances.

15.	The Employment Agreement further provides that Plaintiff is terminated without cause, Defendant shall provide her with a severance payment of one month's salary.

16.	At all relevant times, Plaintiff was the only Hispanic employee who worked for Defendant.

17.	Between May of 2017 and July of 2019, Plaintiff had no performance or disciplinary issues and at all times received high accolades from her supervisors. In fact, on May 28, 2018, she was promoted to Accounting Manager with a pay increase from $45,000 to $60,000.

18.	In July of 2019, Defendant terminated several employees and several resigned as a result, including the Vice President of Finance and the President, who were two of Plaintiff's supervisors.

19.	After these terminations, Plaintiff was supervised, in part, by Martin Borutta ("Borutta"), the Chief Executive Officer at Defendant's parent company in Germany. Borutta is a white male and a German national.

20.	When the VP of Finance resigned, Plaintiff was only trained for 2 weeks and was the interim VP of Finance only until a new controller was hired.

21.	Thereafter, Borutta hired his personal friend, Andy Liebl ("Liebl"), as Operations Manager, who was Plaintiff's supervisor, especially when Borutta was in Germany or otherwise not in the office. Liebl is a white male and a German national.

4

22.     While working under Liebl, Plaintiff was subjected to repeated discrimination by Liebl based on Plaintiff's national origin and/or gender. Liebl singled out Plaintiff and treated her differently and harsher than co-workers who were non-Hispanic and male.

23.     Liebl consistently prevented Plaintiff from being able to efficiently perform her accounting duties.  He did not timely respond to emails and requests, he did not review and approve expenses, and he repeatedly failed to include Plaintiff on important communications and relevant information. Liebl did not treat any non-Hispanic employees this way.

24.     Plaintiff complained to Borutta on multiple occasions about Liebl's discriminatory treatment.  However, no investigation was conducted by Defendant and Liebl was not reprimanded or disciplined. Instead, Plaintiff was told to just "work it out" with Liebl.

25.     After complaining to Borutta about the discrimination, on December 19, 2019, Plaintiff received a Warning Notice from Liebl for failing to follow instructions regarding payment of a credit card.  The Warning Notice was unwarranted given the existing schedule of automatic payments for that account. Liebl, in retaliation, issued the Warning Notice in an effort to create a negative paper trail for Plaintiff.

26.     Defendant also allowed other employees to discriminate against Plaintiff based on her national origin.

27.     For instance, in September of 2019, Liebl hired his friend, Geraldine Molyn ("Molyn") as Parts Manager. Molyn is a white female. One day while Molyn and Plaintiff were discussing some accounting issues, Molyn blurted out, "I don't know how people like you get into positions like this." Plaintiff responded, "Excuse me?!" but Molyn walked away.

28.     Plaintiff complained to Liebl about the incident and Molyn's discriminatory comment, but Liebl said he didn't have time for "this shit" and refused to intervene or correct the

5

situation. Liebl totally disregarded Plaintiff's concerns and, on information and belief, no investigation was done nor was Molyn reprimanded or disciplined.

29.	Molyn thereafter sought to sabotage Plaintiff's work and refused to provide her with information she needed to do her job. For instance, Molyn would not code credit card charges nor provide credit card receipts, she would not review and approve employees' credit card charges in a timely manner, she would reprimand Plaintiff in front of other employees, and she would fail to respond to Plaintiff's emails and refuse to answer her questions, stating only "Why are you asking me questions?" Molyn would also tell Plaintiff that "she was paid enough" to do her own job. Molyn clearly had an issue with a Hispanic person being paid the salary Plaintiff was paid by Defendants.

30.	Plaintiff complained to Liebl about Molyn's discriminatory behavior and he set up a meeting with Plaintiff and Molyn, but allowed her to walk out without any resolution. Liebl said Plaintiff had to "figure it out" with Molyn.

31.	Plaintiff complained to Borutta about Molyn's discrimination but he chose to do nothing. He did not commence an investigation or reprimand Molyn in any way. Instead, Molyn was rewarded and promoted to Plaintiff's position.

32.	After she spoke up and complained about the ongoing discrimination by Liebl and Molyn, on or about December 30, 2019, Plaintiff was promptly stripped of her responsibilities and demoted.

33.	Both her position and her office were given to Molyn, despite Defendant's knowledge of Molyn's discriminatory conduct toward Plaintiff. Defendant also significantly reduced Plaintiff's salary.

34.     Liebl and Molyn were excessively aggressive and hostile in presenting the demotion to Plaintiff. Liebl essentially threw Plaintiff out of the office, even though she purportedly was not terminated, and told her not to talk to him or ask him any questions.

35.     Borutta did not respond to Plaintiff's texts or emails regarding her sudden demotion.

36.     Plaintiff was so distraught and emotionally broken that her husband took her to the doctor that same day. The doctor prescribed anxiety medication and put her out of work for two days. She referred Plaintiff to a psychiatrist and Plaintiff scheduled an appointment for two weeks later.

37.     Plaintiff informed Defendant that she would be taking medical leave on January 2 - 3, 2020 and could return to work on January 6, 2020.  Plaintiff provided a doctor's note regarding the same.

38.     On January 3, 2020, without warning and in further retaliation, Plaintiff received a letter of termination via email, signed by Liebl ("Termination Letter"). Exhibit B attached hereto.

39.     The Termination Letter specifically provides that Plaintiff was being terminated *without cause* pursuant to the without cause provision in the Employment Agreement. Defendant thereafter paid Plaintiff one month's salary since it terminated her *without cause* pursuant to the without cause provision in the Employment Agreement.

40.     After her termination, Plaintiff filed an EEOC charge and Defendant belatedly attempted to devise several post hoc rationalizations invented solely for the purpose of litigation.

41.     After Liebl was hired, he made it very clear that he had no regard for the laws governing Defendant in the United States. He regularly smoked in the building, despite North Carolina's ban on smoking in all enclosed workplaces and despite numerous complaints,

including by Plaintiff. He also allowed others to smoke in the building, particularly in the shop area. He regularly mixed his personal assets with Defendant's corporate assets, presumably to avoid tax consequences.

*Defendant's Failure to Give Plaintiff COBRA Notice*

42. As part of her employment with Defendant, Plaintiff was a participant/beneficiary in a health insurance plan sponsored and administered by Defendant.

43. Following the end of Plaintiff's employment (on or about January 3, 2020), Defendant failed to provide Plaintiff with proper notice of her continuation of coverage rights under COBRA.

44. Due to Defendant's failure to provide COBRA notice, Plaintiff sustained damages, including the loss of health insurance coverage.

*Defendant's Retaliation Following Plaintiff's Initiation of This Action*

45. On November 3, 2020, after Plaintiff initiated this action by way of Complaint for violations of the ADA and Title VII[1], Defendant brought five state law counterclaims against Plaintiff ("Defendant's Counterclaims")[2].

46. Defendant's Counterclaims allege legal violations based on facts that fall into three general categories; all of the alleged violations, however, lack evidentiary support, are without any real damages, and/or are based on spurious factual allegations disprovable by evidence in Defendant's own possession.

47. First, Defendant's Counterclaims allege Plaintiff unlawfully took her iPhone because Defendant paid monthly costs for it during some of Plaintiff's employment; however the iPhone was paid for (in part) by trading in Plaintiff's own personal cell phone, which Plaintiff

---

[1] ECF No. 1 (filed September 21, 2020).
[2] ECF No. 7; later amended on November 20, 2020, without substantial changes (ECF No. 8).

fully paid for <u>without reimbursement by Defendant</u>. Defendant now claims ownership over a used iPhone which [i] Plaintiff paid more than Defendant towards the overall purchase price and [ii] Plaintiff paid all costs/fees other than those paid for by Defendant as part of Plaintiff's employment.

48.      Second, Defendant's Counterclaims allege Plaintiff unlawfully took and accessed a work computer that was in Plaintiff's possession after being terminated remotely; however the computer was [i] never used after Plaintiff's termination, [ii] never specifically demanded by Defendant to be returned, and [iii] was voluntarily returned by Plaintiff to Defendant (through counsel) **over five (5) months prior** to Defendant's Counterclaims.

49.      Third, Defendant's Counterclaims allege Plaintiff took "Confidential Information" from Defendant based on emails sent from Plaintiff's work email to her personal email; however the emails evidenced ongoing discrimination and retaliation Plaintiff was experiencing (giving rise to this action) and did not contain any confidential or trade secret information.

50.      Defendant waited <u>over ten (10) months</u> after the alleged actions giving rise to Defendant's Counterclaims to bring suit, only initiating these claims after Plaintiff commenced legal action in federal court against Defendant for violations of federal employment discrimination laws.

51.      Upon information and belief, Defendant has not brought legal action similar to its current Counterclaims against other employees who did not engage in the protected activity of initiating a federal lawsuit for violations of the ADA and Title VII.

52.      Plaintiff therefore believes and avers that Defendant filed its Counterclaims against her in retaliation for her initiating a legal action in federal court under the ADA and Title VII.

**FIRST CLAIM FOR RELIEF**
**Discrimination and Retaliation on the Basis of National Origin and/or Sex**
**Violation of Title VII of the Civil Rights Act of 1964, as amended**

53.     The allegations contained in the foregoing paragraphs are incorporated by reference herein.

54.     At all times relevant to this action, Plaintiff was an "employee" covered by the protections of Title VII of the Civil Rights Act of 1964 within the meaning of 42 U.S.C. § 2000e(f).

55.     At all relevant times herein, Defendant employed at least 15 employees at all relevant times and is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

56.     In doing the acts alleged above and herein, Defendant discriminated against Plaintiff on the basis of national origin and/or sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, et seq.

57.     In doing the acts alleged herein, Defendant discriminated against Plaintiff on the basis of race. Those acts included, but were not limited to (1) limiting, segregating, or classifying Plaintiff in a way that adversely affected her opportunities or status as an employee because of her national origin and/or sex; (2) utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of her national origin and/or sex; (3) singling Plaintiff out and subjecting her to harsher treatment than her non-Hispanic and/or male coworkers; (4) demoting her, taking away her office and reducing her salary; (5) retaliating against Plaintiff for making charges against her employer and opposing unlawful practices; and (6) discharging Plaintiff based on her national origin and/or sex.

58.     Defendant terminated Plaintiff "without cause", such that Defendant will be unable to show it terminated her for a legitimate business reason.

59.     As a direct and proximate result of said conduct, Plaintiff has suffered lost past and future wages and job benefits and has suffered and will continue to suffer emotional pain, suffering, inconvenience, embarrassment, mental anguish, and other non-pecuniary losses in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
**Disability Discrimination and Retaliation**
**Violation of Americans with Disabilities Act of 1990, as Amended**
**42 U.S.C. § 12101, et seq.**

60.     The allegations contained in the foregoing paragraphs are incorporated by reference herein.

61.     At all relevant times, Defendant was an "employer" as defined by the ADA, 42 U.S.C §§ 12101, et seq.

62.     At all relevant times, Plaintiff was an "employee" as defined by the ADA, 42 U.S.C §§ 12101, et seq.

63.     In doing the acts alleged herein, Defendant violated the ADA.  Due to Plaintiff's actual or perceived disability, Defendant took adverse employment actions against Plaintiff and terminated her employment.  42 U.S.C. § 12112(a).

64.     Prior to and at the time that Defendant terminated Plaintiff's employment, Plaintiff was qualified for the positions she held.

65.     Defendant terminated Plaintiff "without cause", such that Defendant will be unable to show it terminated her for a legitimate business reason.

66.     Plaintiff has been damaged by Defendant's violation of the ADA inasmuch as Plaintiff has been unable to use her education and training and has suffered loss of past and future wages and benefits, loss of professional opportunities, emotional distress, and mental pain and anguish.

11

67.     Plaintiff is entitled to her attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 12205.

68.     Plaintiff is further entitled to any and all relief permitted under the ADA, 42 U.S.C. § 12117(a), including equitable relief.

**THIRD CLAIM FOR RELIEF**
**Wrongful Discharge in Violation of Public Policy –**
**N.C. Gen. Stat. § 143-422.1, et seq.**

69.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

70.     Defendant employed at least fifteen (15) employees at all relevant times.

71.     Defendant violated the public policy of North Carolina as set forth in N.C.G.S. § 143-422.1, et seq. by terminating Plaintiff because of Plaintiff's national origin and/or sex and/or disability and/or in retaliation for exercising protected rights against Defendant.

72.     Defendant violated the public policy by terminating Plaintiff after she exercised her rights and in good faith and opposed what she viewed as discriminatory and injurious conduct as set forth in the paragraphs above.

73.     Defendant expressly terminated Plaintiff "without cause," such that Defendant will be unable to show it terminated her for a legitimate business reason.

74.     As an actual, proximate, and foreseeable consequence of Defendant's conduct, Plaintiff has suffered lost income, emotional distress, anxiety, humiliation, expenses, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

75.     Defendant's actions were done maliciously, willfully or wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages in an amount to be determined at trial.

76.     Defendant's officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above.

## FOURTH CLAIM FOR RELIEF
### COBRA/ERISA Violations - Failure to Provide Notice
### 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4

77.     COBRA requires the sponsor of a group health plan normally employing at least twenty (20) employees on a typical business day during the preceding year to provide "each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event…to elect, within the election period, continuation coverage under the plan." 29 U.S.C. § 1161.

78.     COBRA requires the administrator of a group health plan to provide notice to any qualified beneficiary of their continuation of coverage rights under COBRA upon the occurrence of a qualifying event. 29 U.S.C. § 1166(a)(4).  The notice must be "[i]n accordance with the regulations prescribed by the Secretary [of Labor]." 29 U.S.C. § 1166(a).

79.     The Secretary of Labor requires certain important information be included in COBRA notice to each qualified beneficiary regarding the qualified beneficiary's rights to continuation coverage under a group health plan, set forth at 29 C.F.R. § 2590.606-4.

80.     A "qualifying event" includes the termination of employment (other than by reason of gross misconduct) that would result in the loss of coverage to a qualified beneficiary. 29 U.S.C. § 1163(2).

81.     COBRA notice after a qualifying event must be provided within certain time periods; a beneficiary must receive proper notice of the legal right to continue coverage no less than forty-four (44) days after a qualifying event.  29 U.S.C. § 1166; 29 C.F.R. § 2590.606-4.

82.     During and after Plaintiff's employment, Defendant provided a health insurance plan to employees which provided medical benefits to employees and their beneficiaries ("the Plan").

83.     Defendant was the Plan sponsor within the meaning of 29 U.S.C. §1002(16)(B) and the administrator of the Plan within the meaning of 29 U.S.C. § 1002(16)(A).

84.     The Plan was an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1) and a group health plan within the meaning of 29 U.S.C. § 1167(1).

85.     At all relevant times (including at the time of Plaintiff's termination), Defendant employed at least twenty (20) employees a typical business day during the preceding calendar year.

86.     At the time of Plaintiff's termination (on or about January 3, 2020), Plaintiff and others in her family (including her minor child) were beneficiaries of the Plan provided by Defendant.

87.     Plaintiff was not terminated for gross misconduct.

88.     Plaintiff's termination was a "qualifying event" under COBRA.

89.     Defendant failed to provide Plaintiff (and her related beneficiaries) with notice, required by COBRA, of the right to continue coverage within forty-four (44) days of her termination (or any time thereafter).

90.     As a result of Defendant's failure to provide COBRA notice, Plaintiff sustained damages, including the loss of health insurance coverage.

91.     Defendant's failure to send Plaintiff (and her related beneficiaries) a timely COBRA notice violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4.

92.     Defendant's violations were material and willful, in deliberate or reckless disregard of the rights of Plaintiff (and her related beneficiaries).

## PRAYER FOR RELIEF

Wherefore, Plaintiff Marjorie Acevedo respectfully requests that this Court enter judgment in her favor and grant her the following relief:

1.     An Order awarding Plaintiff damages for Defendant's violation of Title VII of the Civil Rights Act of 1964, including backpay, lost wages, employment benefits, and any other compensation denied or lost because of Defendant's violation of Title VII of the Civil Rights Act of 1964;

2.     An Order awarding Plaintiff damages for Defendant's violation of the ADA, including backpay, front pay, lost employment benefits, and any other compensation denied or lost because of Defendant's violation of the ADA;

3.     An Order awarding Plaintiff compensatory damages for emotional distress, pain and suffering, inconvenience, and/or mental anguish in an amount to be proven at trial;

4.     An Order awarding Plaintiff punitive damages under Title VII, the ADA, and N.C. Gen. Stat. § 1D-115 in an amount to be proven at trial;

5.     An Order awarding Plaintiff appropriate equitable relief for Defendant's failure to provide COBRA notice. 29 U.S.C. § 1132(a)(3);

6.     An Order awarding statutory penalties to Plaintiff in the amount of $110 per day for Plaintiff (and her related beneficiaries) for Defendant's failure to provide COBRA notice. 29 U.S.C. § 1132(c)(1); 29 C.F.R. § 2575.502c-1;

7.     An Order awarding Plaintiff the costs of this action;

8.     An Order awarding Plaintiff reasonable attorneys' fees;

9.      An Order awarding Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law; and

10.      An Order granting any other necessary or appropriate relief to which Plaintiff is entitled under the law.


## JURY TRIAL DEMAND

Plaintiff demands a trial by jury.

*/s/ L. Michelle Gessner*
L. Michelle Gessner, NC State Bar No. 26590
GESSNERLAW, PLLC
602 East Morehead Street
Charlotte, North Carolina 28202
Telephone: (704) 234-7442; Fax: (980) 206-0286
E-Mail: michelle@mgessnerlaw.com

*Attorney for Plaintiff*