.UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| MARJORIE ACEVEDO,<br><br>   Plaintiff,<br><br>  v.<br><br>TEUPEN NORTH AMERICA, INC.,<br><br>   Defendant. | Civil Action No. 3:20-CV-00518-FDW-<br>DSC |

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### Bottom Line Up Front

In the overnight hours between December 19 and 20, 2019, Marjorie Acevedo emailed Teupen North America, Inc.'s November 2019 financial statement to Teupen's CEO, Martin Borutta. Its profit and loss statement was off by over $100,000, a glaring error for a small company that Borutta spotted immediately. And the financial statement was late.

This was not the first performance deficiency that Acevedo had. They had been piling up for months, starting when Acevedo took over the job responsibilities of Sheri Geraghty, Teupen's former VP of Finance and Controlling, who resigned in July 2019. Acevedo had the email account of Teupen's service manager deleted when he was fired September 2019, impacting Teupen's ability to communicate with some of its customers. Acevedo also failed to find an alternative to Insperity, the professional employer organization (PEO) that Teupen used at the time, in November 2019. And in December 2019, Teupen faced significant potential legal liability and had to pay thousands in attorneys' fees because Acevedo had incorrectly processed a former employee's separation from employment, resulting in lapsed medical insurance coverage. Acevedo was in over her head.

1

When Borutta saw the incorrect financial statement the morning of December 20, he had had enough. He decided to demote Acevedo to her prior role before she assumed Geraghty's responsibilities. But December 20 was the Friday before Christmas, and it was the day of the company's Christmas party. So Borutta waited until after Christmas to relay the decision.

That occurred on December 30, Acevedo's first day back from vacation. Borutta was offsite taking a CDL course, and Borutta directed Andreas Liebl, Operations Manager, and Geraldine Molyn, Parts Manager, to relay the decision. Liebl presented Acevedo with Borutta's letter demoting her; Molyn was to take over her former job responsibilities. Acevedo then caused a scene, refused to provide Molyn with the passwords and other information necessary to facilitate the transition, and stormed out of the office. When Acevedo's reaction was reported to Borutta, Borutta decided to terminate Acevedo's employment. The termination was effective January 3, 2020.

Acevedo has now conjured out of thin air claims that Teupen discriminated against her because of her national origin, sex, and/or disability—because of which, or all, she is not clear—because whatever sticks will work. Acevedo has no facts, whatsoever, to support her claims of discrimination. Acevedo also claims she was retaliated against for engaging in protected activity. But she made no complaints of discrimination while employed, and her own emails confirm she did not believe she was being retaliated against for engaging in protected activity. Nor can Acevedo show that Teupen retaliated against her by filing counterclaims in this suit, as they are compulsory, stem mostly from Acevedo's misconduct after her employment ended, and have ample factual support. Finally, Acevedo's claim for failure to provide notice under COBRA fails because Teupen had no duty to provide such notice.

Acevedo's claims have no factual support. They should be dismissed in their entirety.

## Facts

### I.    Teupen and Acevedo

1.      Teupen sells and services track-mounted spider-style lifts, a type of aerial work platform, to customers in the United States.  (*See* Martin Borutta Dep. 77:24–78:03, **Exhibit A**; Martin Borutta Decl. ¶3, **Exhibit B**.) Teupen is a small company; in 2019 it had under twenty employees at any one time. (Borutta Decl. ¶¶4-5.)

2.      Teupen hired Marjorie Acevedo in May 2017 as an Accounting Administrator. (Marjorie Acevedo Dep. 51:15-18, 55:13-14, **Exhibit C**.) In May 2018, Acevedo was promoted to Accounting Manager and given a raise from $48,000 to $60,000 annually. (Borutta Decl. ¶7.)

3.      Acevedo identifies as Hispanic and female. (Acevedo Dep. 10:14-16.)

### I.    July 2019: Borutta Presses Reset

4.      Borutta became the CEO around July 2019. (Borutta Decl. ¶2.)  Borutta quickly determined that Teupen needed a significant course correction: sales were lagging, costs were too high, and the company was not operating efficiently. (*Id.* ¶8.)

5.      He cleared house: President Dave Kesser (white male), VP of Sales Ben Taft (white male), and Account Manager Tony Trainer (white male) were all separated from employment in early July 2019. Taft and Trainer were fired for performance reasons.[1] (*Id.* ¶9.)

6.      Sheri Geraghty, the VP of Finance (white female), and Acevedo's direct supervisor, resigned at the same time.  (*Id.*; Acevedo Dep. 55:17–17.)

7.      Being a very small company, many of Acevedo's colleagues were now gone.

8.      Borutta needed help to turn the company around.  (Borutta Decl. ¶10.) Acevedo volunteered to assume Geraghty's job responsibilities, but demanded a 40% raise, to $84,000.

---

[1] The circumstances of Kesser's separation is confidential pursuant to a private agreement.

3

(*Id.*) She insisted she could do the job. (*Id.*) Borutta agreed and gave her a 20% raise to $72,000; Acevedo was to report directly to CEO Borutta. (*Id.*; Acevedo Dep. 96:14-16, 101:3-10.)

9.      Borutta sought to fill the rest of the leadership void with people he could trust. (Borutta Decl. ¶11.) He hired Andreas Liebl later in July as Operations Manager and hired Geraldine Molyn in September 2019 as Parts Manager. (*Id.*) Borutta had worked with both of them at another company previously in South Carolina. (*Id.*) Liebl reported to Borutta and Molyn to Liebl; Acevedo continued to report directly to Borutta. (*Id.*; Acevedo Dep. 101:3-10.)

**III.     Acevedo fails to perform her new duties competently.**

10.     Following Acevedo's promotion, it very soon became clear that she could not adequately perform the additional duties she had recently assumed.

11.     For example, in September 2019, Borutta decided to fire Service Manager Ralph Baer (white male) for performance reasons. (Borutta Decl. ¶.) Baer had been responsible for new equipment quality control on Teupen lifts going out to customers. (*Id.*.) Acevedo improperly had Baer's Outlook email account deactivated and deleted following the termination. (*Id.*) All emails in the account, including all communications to and from Baer with customers regarding items such as repairs, warranties, and other important information, were gone. (*Id.*) The key contacts for some of Teupen's contacts were gone. (*Id.*) Furthermore, Teupen would not receive notice when customers subsequently sent emails to Baer's account. (*Id.*)

12.     In October 2019, Borutta directed Acevedo to find alternatives to Insperity, Teupen's payroll, benefits, and HR administrative provider, because Insperity was cost prohibitive. (*Id.* ¶13.) Acevedo failed to do so. (*Id.*) Borutta had to reassign the project to Molyn. (*Id.*)

13.     In late October 2019, Borutta became aware that Acevedo had incorrectly processed Taft's separation in July 2019. (*Id.* ¶14.) When Acevedo assumed Geraghty's

responsibilities, she became Teupen's contact for Insperity. (*Id.*) When Borutta fired Taft, on July 10, he instructed Acevedo to mail the termination letter to him in Florida, where he resided, by certified mail, to be effective upon receipt. (*Id.*) Rather than wait for Taft to first receive the letter, however, Acevedo contacted Insperity and informed it that Taft was separated effective July 10. (*Id.*) This caused Insperity to cancel Taft's medical insurance coverage that day. (*Id.* ¶15.) Taft did not receive the termination letter until July 15. (*Id.*) Sometime between July 12 and July 15, Taft's daughter had a medical emergency that required her to be hospitalized. (*Id.*) The medical expenses related to that incident were not covered by Teupen's medical insurance provider because of Acevedo's actions, and Insperity could not reinstate Taft's insurance coverage retroactively. (*Id.*) Taft hired an attorney and threatened to sue Teupen for the expenses stemming from his daughter's medical treatment. (*Id.*) As a result of Ms. Acevedo's mistake, Teupen faced significant potential legal liability and incurred thousands of dollars in legal costs. (*Id.*)[2]

14. And then, Acevedo sent a patently late financial statement to Borutta overnight between December 19 and 20, 2019. (*Id.* ¶17; *see also* **Exhibit D** (Acevedo's prepared financial statement, to be filed under seal).) The profit and loss statement was incorrect by more than $100,000 because Acevedo had forgotten to account for a machine. (Borutta Decl. ¶18; Ex. D; **Exhibit E** (corrected financial statement, to be filed under seal); Borutta Dep. 47:4-6.) For a small company like Teupen, this error was glaring, and Borutta noticed it immediately when he saw the document the morning of December 20. (Borutta Decl. ¶19.) For Borutta, this "was the final thing for [him] to understand that she's not able to perform her work duties as an accountant in

---

[2] Acevedo made several other mistakes during this time that cost the company a lot of money. (Borutta Dep. 46:24–47:1.) These included late payments to Teupen's creditors, one of which resulted in a tax lien in Ohio. (*Id.* 47:1-22.)

Case 3:20-cv-00518-FDW-DSC   Document 57   Filed 12/02/21   Page 5 of 22

the way she has to." (Borutta Dep. 47:4-9.) Borutta decided to demote Acevedo that morning, removing the additional responsibilities she assumed in July. (*Id.* 46:13, 57:13.)

15.     But December 20, 2019, a Friday, was Teupen's Christmas party, and Borutta did not want to demote her at the party and right before Christmas. (*Id.* 50:3-7.) He chose to wait until she returned to work on December 30. (Borutta Decl. ¶20.)

## IV.     Acevedo was unhappy in her new role and knew her job was not secure.

16.     Despite her new responsibilities and raise, Acevedo became unhappy working at Teupen in the second half of 2019. She did not like Liebl or Molyn, and they argued over small business tasks like credit card payment information. (*See* Acevedo Dep. 116:6-117:9, 117:18-118:22.) Liebl also smoked, which Acevedo did not like and led her to close her office door for much of each work day. (Acevedo Dep. 124:15-23, 125:15-21.)

17.     During the Christmas party, Acevedo came to Borutta and "told [him] she does not like to work together with Mr. Liebl and Ms. Molyn." (Borutta Dep. 41:20-22; Borutta Decl. ¶21.) Acevedo never claimed she was being discriminated or retaliated against. (Borutta Decl. ¶21.) Borutta told her they were her colleagues and she needed to find a way to work with them. (*Id.*)

18.     In the days following, while she out on vacation over Christmas, Acevedo forwarded a series of emails to her personal email account from her work email account containing Teupen's confidential information. (*Id.* ¶22; Acevedo Dep. 189:16-190:3, 190:25-191:21.) The emails show she was concerned about her job security, highlighting various disagreements she had with Liebl and Molyn. (Borutta Decl. ¶¶22-23.) Critically, in none of them does she claim she was being discriminated against on the basis of her national origin, sex, or alleged disability, nor does she claim she ever reported such discrimination to anyone or that she was being retaliated on that basis. (*See id.*) Rather, she believed that Liebl and Molyn's demeanor towards her was the

result of regular business disputes. In an email sent December 30, 2019, Acevedo wrote: "Andy's retaliation started since I informed Martin Borutta, CEO of Teupen North America, Inc his request to cash a personal check ($40,000) for the sale of his personal truck." (*See* Borutta Decl. ¶22, Ex. 6 at 1Teupen00089.) Acevedo similarly wrote in an email sent December 29, 2019: "On many occasions I must question [Molyn's] work and I feel she has retaliated against me for the questioning." (*Id.*, Ex. 6 at 1Teupen00082.)

19.     Acevedo also logged into Teupen's Verizon account on December 29, 2019 and, without authorization, changed the billing contact for the Company's iPhone issued to her and the Company's telephone number for the phone to herself. (*See id.* ¶24.)

**V.     Demotion and Termination**

20.     On Monday, December 30, 2019, Acevedo's first day back from vacation, Borutta had Liebl and Molyn present her with a letter informing her she was being demoted. (*Id.* ¶25.)

21.     Liebl told Acevedo to give Molyn Teupen's account passwords, consistent with the demotion letter's instruction, but Acevedo refused. (Acevedo Dep. 198:9-14, 203:25-204:4.) She left the office very upset. (*See* Acevedo Dep. 210:12-25.) Liebl reported what happened to Borutta. (Borutta Decl. ¶26.)

22.     Borutta decided then and there that enough was enough: he made the decision to terminate Acevedo's employment:

> After I got a report about the scene Ms. Acevedo made to Mr. Liebl and Ms. Molyn when she got her demotion paper and after I told her on December 20 that they have to work together as a team in future, and it looks like she refused to follow my orders. I took the decision to terminate, because if you don't follow what I tell you, I got to terminate. That's how it works.

(Borutta Dep. 59:12-19.) Borutta also based his decision "on the mistakes Ms. Acevedo made the month before, the money we lost from Ms. Acevedo and my personal opinion what I think about

7

her duties and how she's fulfilling her duties" and the fact that Acevedo "didn't want to accept my decision that she got go back to her old job because she didn't want to report to Geraldine Molyn." (*Id.* 155:9-17.)

23.    Later that day, Acevedo emailed Borutta a doctor's note excusing her absence through January 3, 2020; the note did not identify any medical condition or the reason for the absence.  (Borutta Decl. ¶29.)  When Teupen asked Acevedo in an interrogatory to "state the factual basis for your belief that [Teupen] had knowledge that you claim to have anxiety and/or depression or other alleged disability, Acevedo cited only the doctor's note, her email enclosing it, and her "demeanor and emotional state" on December 30, which she claims was "was observed by her colleagues." (**Exhibit F** at 4.)

24.    Teupen terminated Acevedo's employment on January 3, 2020. (Borutta Decl. ¶¶30, 33.)

25.    Acevedo had never complained to Borutta, or anyone else at Teupen, about discrimination regarding a protected class or retaliation due to protected activity. (*See id.* ¶31.)

## VI.    Acevedo refuses to return Teupen's property.

26.    The January 3 termination letter requested Acevedo return all Teupen property in her possession.  (*Id.* ¶33.)  Among other things, Acevedo failed to return Teupen's cellphone and laptop.  (*Id.*)

27.    In a series of communications in January 2020, Borutta demanded Teupen's property back from Acevedo's attorney.  (*Id.* ¶34; D.E. 16-1 at 3, 6; (D.E. 45-4 at 8, 10, 12.).)  Acevedo, through her attorney, refused.  (*Id.*)

28.    Acevedo finally returned the laptop to Teupen in early May 2020, depriving it of its use for four months.  (*Id.* ¶35.) Acevedo has not returned the phone. (*Id.*)  She did not return

or destroy the confidential information she took. (*Id.*) Borutta threatened legal action at that time. (D.E. 16-1 at 6.)

29.    In accordance with Acevedo's employment agreement, Teupen also paid Acevedo one month's salary upon her separation in exchange for entering a separation agreement and release; Acevedo failed to execute the release but kept the money, breaching the agreement. (Borutta Decl. ¶38.)

30.    Because Acevedo did not return Teupen's property, breached her employment agreement, and deprived Teupen of the use of its laptop for several months, Teupen filed counterclaims against Acevedo. (*Id.* ¶37.)

## Legal Standard

At summary judgment, the movant must demonstrate that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A factual dispute is "genuine" only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is "material" only if it may affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "When the moving party has carried its burden under Rule 56(c), . . . the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). While the Court views the facts in the light most favorable to the nonmovant, such inferences must "fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture." *Thompson Everett, Inc. v. Nat'l Cable Advert., L.P.,* 57 F.3d 1317, 1323 (4th Cir. 1995). "A plaintiff's own self-serving opinions, absent anything more" are insufficient to overcome summary judgment, *Mackey v. Shalala*, 360 F.3d 463, 469–70 (4th Cir. 2004), as are "[t]he plaintiff's own perceptions of his performance and

unsupported allegations," *El v. Tek Sys., Inc.*, 311 F. Supp. 2d 516, 521 (E.D. Va. 2002). "Mere speculation by the non-movant cannot create a genuine issue of material fact." *JKC Holding Co., LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

**Argument**

"Under the *McDonnell Douglas* framework, to survive a summary judgment motion the plaintiff must develop some evidence on which a juror could reasonably base a finding that discrimination motivated the challenged employment action." *Rowe v. N.C. Agr. & Technical State Univ.*, 630 F. Supp. 2d 601, 607 (M.D.N.C. 2009) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).[3]

## I. Title VII Retaliation Claims

Acevedo claims that Teupen retaliated against her for making complaints of sex and national origin discrimination, in violation of Title VII, when it demoted and then fired her. Acevedo's claims fail.

### A. Acevedo cannot establish a prima facie case of retaliation.

First, "the employee must . . . establish a prima facie case of retaliation." *Rome v. Dev. Alts., Inc.*, 587 F. App'x 38, 40 (4th Cir. 2014). Acevedo must prove: (1) she engaged in a protected activity; (2) an adverse employment action occurred; and (3) a sufficient causal connection existed between her protected activity and the adverse employment action. *Hopkins v. Balt. Gas & Elec. Co.*, 77 F.3d 745 (4th Cir. 1996).

#### 1. Acevedo did not engage in protected activity while employed.

To constitute "protected activity," a complaint must "put the employer on notice that [it] was based on . . . discrimination." *Shung-Lung Chao v. IBM Corp.*, No. 5:09-CV-77-BO, 2010

---

[3] Acevedo has no direct evidence of discrimination.

WL 2465234, at *4 (E.D.N.C. June 15, 2010). Mere "complaints of 'unfair treatment'" do not suffice. *Id.; see also Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 262–63 (1st Cir. 1999); *Barber v. CSX Distrib. Servs.*, 68 F.3d 694 (3d Cir. 1995); *Brown v. IBM Corp.*, No. CIV.A. 95-7566, 1996 WL 411650, at *4 (E.D. Pa. July 16, 1996).

While employed, Acevedo never made any complaints about discrimination of any kind, including any based on national origin, sex, or disability. Indeed, she admitted that while she told Borutta "that [she] needed to talk to him about the things that were going on in the office," she never told him "what those things were." (Acevedo Dep. 149:9-15.) This kills her retaliation claims at the outset.

2.    Teupen's filing of compulsory counterclaims does not constitute an "adverse action."

"It is a rare case when conduct occurring within the scope of litigation constitutes retaliation." *Haught v. Louis Berkman LLC, W. Va.*, No. CIV. 5:03-CV-109, 2006 WL 399426, at *5 (N.D. W. Va. Feb. 16, 2006). "Several courts have held that a counterclaim does not constitute an adverse employment decision." *Id.* The plaintiff must show "the lawsuit [wa]s filed with a retaliatory motive and lacking a reasonable basis in fact or law" for it to constitute an adverse action. *Darveau v. Detecon, Inc.*, 515 F.3d 334, 341 (4th Cir. 2008); *see also McNeal v. Montgomery Cty.*, 307 F. App'x 766, 776 (4th Cir. 2009).

The parties have already litigated these issues in this case—and the Court ruled against Acevedo as to both. She previously moved for Rule 11 sanctions against Teupen and its counsel, arguing, among other things, that Teupen's counterclaims "lack[ed] any evidentiary support" and that Teupen "and its counsel should be sanctioned for presenting claims and legal contentions for an improper purpose (retaliation for a federal employment discrimination action)." (D.E. 12 at 1–2.) In denying Acevedo's motion for sanctions, the Court explicitly held that Acevedo had "failed

to show [Teupen's] counterclaims were brought for an improper purpose ***such as retaliation*** for [Acevedo's] federal employment discrimination action." (D.E. 19, at 17 (emphasis added).) It also necessarily held that Acevedo had failed to show that Teupen's counterclaims lacked evidentiary support. *See* Fed. R. Civ. P. 11(b)(1) & (b)(3). These rulings are now the law of the case and should not be disturbed. *See In re B&P Baird Holdings, Inc.*, 759 F. App'x 468, 477 (6th Cir. 2019).

Evidence of a retaliatory motive is especially lacking here, as the Court has also held that all of Defendant's counterclaims are compulsory under Rule 13(a). (D.E. 19 at 16.) The Court has held that Acevedo's complaint "required [Teupen] to bring [its] compulsory claims or lose them pursuant to . . . Rule 13." (D.E. 19 at 17). This shows a lack of retaliatory motive. *See Powrzanas v. Jones Util. & Contracting Co.*, 834 F. App'x 500, 507 (11th Cir. 2020) (per curiam).

Further, Teupen sought to vindicate its rights related to its counterclaims long before Acevedo filed her lawsuit. Acevedo "was put on notice of legal action by way of two letters from . . . Borutta . . . stating legal action would be taken if [she] failed to return company property." (D.E. 19 at 17 (citing D.E. 16 at 13).) Acevedo filed her lawsuit several months later, in September 2020. (*See* D.E. 1.) This also shows a lack of retaliatory motive. There is no evidence otherwise.

      3.    <u>Acevedo cannot establish but-for causation.</u>

Here, Acevedo is limited to "traditional principles of but-for causation" and must prove that her employment "would not have been terminated but for her employer's retaliatory animus." *Foster v. Univ. of Md. E. Shore*, 787 F.3d 243, 249, 252 (4th Cir. 2015) (citation omitted). Because she never complained about alleged discrimination based on her national origin or sex, she cannot establish that her demotion or termination resulted from such a complaint. Because Teupen's counterclaims were compulsory, this also destroys a claim of but-for causation related to retaliation.

### B. Teupen's legitimate, nonretaliatory reason for demoting and firing Acevedo

At step two of *McDonnell Douglas*, the defendant must "produce a legitimate, nonretaliatory reason for" the adverse employment action. *Billingsley v. Fed. Home Loan Mortg. Corp.*, No. 1:18-CV-755, 2019 WL 5104748, at *5 (E.D. Va. Oct. 10, 2019). Acevedo was demoted because she repeatedly made mistakes and was ultimately fired when she refused to follow Borutta's instructions.

### C. Acevedo cannot show pretext.

At step three of *McDonnell Douglas*, "the plaintiff resumes the burden of persuading the factfinder that the employer's proffered explanation is merely a pretext for discrimination." *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 203 (4th Cir. 2016). To show that this was pretextual, "a plaintiff must establish both that the employer's reason was false and that retaliation was the real reason for the challenged conduct." *Foster*, 787 F.3d at 252 (cleaned up).

Acevedo can satisfy neither element. Teupen has put forth ample evidence that poor work performance and failure to follow instructions were the reasons Acevedo was demoted and fired, respectively. "[W]hen an employer gives a legitimate, non-discriminatory reason for discharging the plaintiff, "it is not [the Court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000); *Holder v. City of Raleigh*, 867 F.2d 823, 829 (4th Cir. 1989) ("A reason honestly described but poorly founded is not a pretext."). Acevedo can show no genuine factual dispute that she made multiple errors in her job and then failed to follow Borutta's instructions after her demotion. Acevedo thus has no evidence of pretext.

## II. Title VII Discrimination Claims

Acevedo asserts disparate-treatment claims of national origin and sex discrimination under

Title VII.

**A.    Acevedo cannot establish a prima facie case of discrimination.**

      1.    <u>Teupen fired many other employees who were not members of Acevedo's protected classes for similar misconduct.</u>

Acevedo cannot succeed on a theory of disparate treatment premised upon the enforcement of disciplinary measures. Here, she must show: "(1) that she is a member of the class protected by Title VII, (2) that the prohibited conduct in which she engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against her were more severe than those enforced against those other employees." *Hurst v. District of Columbia*, 681 F. App'x 186, 190 (4th Cir. 2017). "[T]o be a similarly situated comparator, the employee normally must share the same supervisor as [the] plaintiff." *Perry v. Mail Contractors of Am., Inc.*, No. 3:12-CV-405, 2013 WL 6119226, at *5 (W.D.N.C. Nov. 21, 2013).

Borutta fired Taft, Trainer, and Baer in the months before demoting and then firing Acevedo. All are white, non-Hispanic men.[4] Acevedo cannot show that Teupen "disciplined h[er] more severely than white [Non-Hispanic, male coworkers] who committed comparable offenses" because Acevedo received the same discipline as these other individuals. *Maull v. Div. of State Police*, 39 F. App'x 769, 773 (3d Cir. 2002). All were fired for poor performance, and Acevedo and Baer were fired for the additional reason of causing "damage[ ] to the company." (Borutta Dep. 105:22-24, Borutta Decl. ¶34.) Acevedo has no evidence that her misconduct was any less severe than that of these individuals.

      2.    <u>Acevedo's job performance did not meet her employer's legitimate expectations.</u>

Acevedo cannot succeed on any other disparate-treatment theory. She must show that (1)

---

[4] There is also no evidence that any of these individuals had a disability.

she is a member of a protected class, (2) she was subject to an adverse employment action, (3) she was performing the job at a level that met the employer's expectations, and (4) that the position remained open or was filled with a person outside the protected class. *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 607 (4th Cir. 1999).

Acevedo was not meeting Teupen's legitimate expectations. "Whether an employee is performing at a level that meets legitimate expectations is based on the employer's perception, and [the plaintiff's] own, unsubstantiated assertions to the contrary are insufficient to stave off summary judgment." *Morrall v. Gates*, 370 F. App'x 396, 398 (4th Cir. 2010).

Acevedo was demoted for poor work performance and fired for failing to follow instructions. Acevedo's "unprofessional behavior, poor performance, and her employer's raised concerns each constitute failure to meet the legitimate expectations of her employer." *Bellounis v. Middle-E. Broad. Network, Inc.*, No. 1:18-CV-00885, 2019 WL 5654307, at *4 (E.D. Va. Oct. 31, 2019). Thus, even when viewing the evidence in the light most favorable to Acevedo, "no reasonable jury would find that she was meeting [Teupen's] legitimate performance expectations." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 518 (4th Cir. 2006).

3.   Acevedo's sex discrimination claim fails because she was replaced with another female employee.

"[A]s a general rule, Title VII plaintiffs must show that they were replaced by someone outside their protected class in order to make out a prima facie case." *Miles v. Dell, Inc.*, 429 F.3d 480, 486 (4th Cir. 2005) (emphasis omitted). When Borutta demoted Acevedo, he assigned her former accounting duties to Molyn. (Borutta Decl. ¶¶25-26.) Molyn also assumed Acevedo's remaining duties after Acevedo's employment ended. (Borutta Decl. ¶32.) Molyn and Acevedo are both female.

15

### B. Teupen's legitimate, nondiscriminatory reason for demoting and firing Acevedo.

Teupen demoted Acevedo for poor work performance and fired her for refusing to follow Borutta's instructions.

### C. Acevedo cannot show pretext.

As discussed above, Acevedo has no evidence of pretext. She cannot show that the instances of her poor performance were somehow fabricated or false. Further, "[w]hen the hirer and firer are the same individual, there is a powerful inference relating to the 'ultimate question' that discrimination did not motivate the employer[.]" *Proud v. Stone,* 945 F. 2d 796, 798 (4th Cir. 1991); *see also Colenburg v. STARCON Int'l., Inc.,* 656 F. Supp. 2d 947, 961 (D. Minn. 2009) (applying inference to promotion). Here, Borutta both promoted and then demoted and fired Acevedo.

## III. ADA Discrimination Claim

Acevedo also claims that Teupen discriminated against her on the basis of disability (anxiety and depression), in violation of the ADA. Teupen incorporates its arguments in Sections I and II, *supra*, and makes additional ones specific to this claim below.

### A. Acevedo fails to establish a prima facie case of disability discrimination.

At step one of *McDonnell Douglas* in this context, Acevedo must show that (1) she "is within the ADA's protected class"; (2) she suffered an adverse employment action; (3) she was performing her job at a level that met her employer's "legitimate expectations" at the time of the adverse employment action; and (4) "the adverse employment action occurred under circumstances giving rise to a reasonable inference of unlawful discrimination." *Williams v. Brunswick Cty. Bd. of Educ.*, 725 F. Supp. 2d 538, 543 (E.D.N.C. 2010). Acevedo's claim fails on the first, third, and fourth elements.

1.     Acevedo was not disabled.

Acevedo must show she suffers from "a physical or mental impairment that substantially limits" a major life activity. 42 U.S.C. § 12102(1)(a). "In the context of the ability to work, the plaintiff must show that the impairment significantly restricted the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Boitnott v. Corning Inc.*, 669 F.3d 172, 175 (4th Cir. 2012) (cleaned up). Acevedo has made no such showing. "[T]here is nothing in this record indicating that h[er] impairment substantially limited the major life activities of sleeping, concentrating, or working," or anything else. *Maslanka v. Johnson & Johnson, Inc.*, 305 F. App'x 848, 852 (3d Cir. 2008).

2.     Acevedo's work performance did not meet Teupen's legitimate expectations.

Teupen incorporates its arguments in Section II.A.2, *supra*.

3.     Teupen's lack of knowledge regarding Acevedo's disability vitiates her ADA claim.

"To establish the fourth *prima facie* element of a wrongful discharge claim under the ADA, [Acevedo] must present some 'affirmative evidence that disability was a determining factor in the employer's decision.'" *Feldman v. Law Enf't Assocs. Corp.*, 955 F. Supp. 2d 528, 539 (E.D.N.C. 2013) (citation omitted). That is, she "must show that the employer knew of h[er] . . . disability at the time it took the adverse employment action." *Id.*; *see Huppenbauer v. May Dep't Stores Co.*, 99 F.3d 1130, 1996 WL 607087, at *7 (4th Cir. 1996) (table)). "An employer has notice of the employee's disability when the employee tells the employer that [s]he is disabled." *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir. 1999).

Acevedo never told anyone at Teupen of her claimed disability before she was fired. The

decisionmaker, Borutta, did not know Acevedo claimed to have any disability until after her employment ended and did not perceive her to be disabled at any time. (Borutta Decl. ¶ 29.) The doctor's note Acevedo provided on December 30 did not mention any impairment or medical condition at all. (*Id.*) "Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under the ADA." *Huppenbauer*, 1996 WL 607087, at *6 (quoting *Morisky v. Broward Cty.*, 80 F.3d 445, 448 (11th Cir. 1996)). *See also Brown v. Pension Bds.*, 488 F. Supp. 2d 395, 409–10 (S.D.N.Y. 2007) (employee did not provide notice by simply calling in sick and providing "vague" doctor's note). As for Acevedo's "demeanor" at work, "a general appearance of being sick" is not "sufficient to put an employer on notice of an employee's disability." *Stanley v. Lockheed Martin Corp.*, No. 6:11-CV-1649-ORL-36, 2013 WL 3974655, at *5 (M.D. Fla. Aug. 1, 2013).

4.   Acevedo has no evidence that disability factored into Borutta's decision to terminate her employment.

Acevedo has no "affirmative evidence that disability was a determining factor in the employer's decision." *Feldman*, 955 F. Supp. 2d at 540 (citation omitted). Acevedo may argue that the timing of the termination of her employment—several days after she sent the doctor's note email—gives rise to an inference of discrimination. But it does not. First, as discussed above, it failed to place Teupen on notice of any disability. Second, Borutta demoted Acevedo when he learned of her reaction to the demotion, before she sent the doctor's note email. (Borutta Decl. ¶¶ 29; *see also* Borutta Dep. 137:12-14.) Thus, these circumstances provide no evidence that disability factored into Borutta's decision to demote and then fire Acevedo.

**B.   Legitimate, nondiscriminatory reason for terminating Acevedo's employment**

As above, Teupen's "legitimate non-discriminatory reason for the adverse employment action" is poor work performance and failure to follow instructions. *Williams*, 725 F. Supp. 2d at

543.

**C.      Acevedo cannot show pretext.**

Teupen incorporates its arguments above pertaining to pretext under Title VII.

## IV.      ADA Retaliation Claim

Acevedo claims that Teupen retaliated against her for making complaints of discrimination on the basis of disability. (D.E. 23 at 2, 11.) This claim fails for the reasons discussed above regarding her other claims. Specifically, Acevedo did not engage in protected conduct until after her employment ended, Teupen had no knowledge of her claimed disability before firing her, Teupen filing counterclaims does not constitute an adverse action, and Acevedo has no evidence of pretext.

## V.      State-Law Claims

The complaint pleads claims for wrongful discharge in violation of public policy under the North Carolina Equal Employment Practices Act. (D.E. 23 at 12.) Acevedo's retaliation claims fail "because retaliation is not a basis for wrongful discharge under state law." *See Adjabeng v. GlaxoSmithKline, LLC*, No. 1:12-CV-568, 2014 WL 10077476, at *9 n.7 (M.D.N.C. Jan. 23, 2014). Her discrimination claims fail for the same reasons as her federal claims, as they are subject to identical analysis. *See Chamberlain v. Securian Fin. Grp., Inc.*, 180 F. Supp. 3d 381, 405 (W.D.N.C. 2016); *Bradley v. CMI Indus., Inc.*, 17 F. Supp. 2d 491, 500 (W.D.N.C. 1998).

## VI.      COBRA Claim

Acevedo claims that Teupen violated its duties under COBRA by failing to provide her with notice of her right to continue coverage under her health plan following the termination of her employment. (D.E. 23 at 13–15.) But the statute provides that this requirement "shall not apply to any group health plan for any calendar year if all employers maintaining such plan normally employed fewer than 20 employees on a typical business day during the preceding calendar year."

19

29 U.S.C. § 1161(b); *see Martinez v. Dodge Printing Ctrs., Inc.*, 123 B.R. 77, 79 (D. Colo. 1991). "An employer is considered as having normally employed fewer that [sic] 20 employees during a particular calendar year if, and only if, it had fewer than 20 employees on at least 50 percent of its working days that year." *Martinez*, 123 B.R. at 80 (citation omitted).

This vitiates Acevedo's claim. Her employment ended in January 2020, so calendar year 2019 is the relevant year to look to. Teupen's 2019 Employee Census identifies twenty-three individuals who were employed by Teupen for at least one day in 2019. (Borutta Decl. ¶5.) Ten were employed for every business day of the year. (*Id.*) Another eight were employed for over half of the working days for 2019. (*Id.*) But the remaining five were employed for less than half the working days for 2019:

| Name | Hire date | Term date[5] | Percentage of working days employed for 2019 |
|------|-----------|----------|---------------------------------------------|
| Robert Blackburn | 7/15/2019 | 12/31/2019 | 46.3% |
| Steven Fore | 10/8/2018 | 2/22/2019 | 14.2% |
| Andreas Liebl | 7/8/2019 | 12/31/2019 | 48.2% |
| Geraldine Molyn | 9/23/2019 | 12/31/2019 | 27.1% |
| Philip Walbridge | 12/2/2019 | 12/31/2019 | 7.9% |

(*See id.*) Thus, Teupen had fewer than 20 employees on at least 50 percent of its working days that year. 29 U.S.C. § 1161(b). Teupen is therefore "entitled to judgment as a matter of law on its small employer defense," and, a result, Acevedo's COBRA claim. *Martinez*, 123 B.R. at 82.

## Conclusion

For the reasons discussed above, the Court should grant Teupen's motion for summary judgment in its entirety and enter judgment in its favor.

---

[5] The date "12/31/2019" in this column does not mean these employees' employment with Teupen ended on that date. (*Id.*) Rather, it shows the date that Teupen ended its relationship with Insperity. (*Id.*)

Filed December 2, 2021.                    Respectfully submitted,

                                           /s/ David I. Klass
                                           David I. Klass (NC Bar No. 53342)
                                           Benjamin S. Morrell (NC Bar No. 56676)
                                           **FISHER & PHILLIPS LLP**
                                           227 West Trade Street, Suite 2020
                                           Charlotte, North Carolina 28202
                                           Telephone: (704) 334-4565
                                           Facsimile: (704) 334-9774
                                           Email: dklass@fisherphillips.com
                                           Email: bmorrell@fisherphillips.com
                                           *Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| MARJORIE ACEVEDO, | |
| Plaintiff, | |
| v. | Civil Action No. 3:20-CV-00518-FDW-DSC |
| TEUPEN NORTH AMERICA, INC., | |
| Defendant. | |

### Certificate of Service

I hereby certify that on the date listed below, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send electronic notice to Plaintiff's counsel.

I also certify that the foregoing memorandum complies with the Case Management Order's word limitation for memoranda in support of dispositive motions. (D.E. 27 at 7.) It contains 5,963 words.

Date: December 2, 2021.

Respectfully submitted,

/s/ David I. Klass
David I. Klass
Attorney for Defendant
**FISHER & PHILLIPS LLP**