## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

MARJORIE ACEVEDO,

        Plaintiff,

    v.

TEUPEN NORTH AMERICA, INC.,

        Defendant.

Civil Action No. 3:20-CV-00518-FDW-DSC

### Declaration of Martin Borutta

I, Martin Borutta, make this declaration pursuant to 28 U.S.C. § 1746 and state truthfully as follows:

1.      I am over the age of 18. I am of sound mind, capable of making this declaration, and personally acquainted with the facts stated herein.

2.      I am the chief executive officer of Teupen North America, Inc., and have been in that position since about July 2019.

3.      Teupen sells and services track-mounted spider-style lifts, a type of aerial work platform, to customers in the United States.

4.      Teupen is a small company; in 2019 and 2020, it had under twenty employees at any one time.

5.      Attached as **Exhibit 1** is a true and accurate copy of Teupen's employee census for 2019.  The information contained in it is accurate to the best of my knowledge and belief. For employees with a term date of 12/31/2019 on the census, that reflects not the employee's termination date with Teupen but the fact that Teupen ended its relationship with Insperity, a

1

professional employer organization. The census is kept and maintained in the ordinary course of Teupen's business, and I am a custodian of that document.

6. Attached as **Exhibit 2** is a true and accurate copy of Marjorie Acevedo's employment agreement with Teupen. The agreement is kept and maintained in the ordinary course of Teupen's business, and I am a custodian of that document.

7. Marjorie Acevedo, Teupen's bookkeeper, was promoted to Accounting Manager in May 2018 and was given a raise from $48,000 per year to $60,000 per year.

8. In June and July 2019, I determined that Teupen needed a significant course correction: sales were lagging, costs were too high, and the company was not operating efficiently.

9. In early July 2019, I separated from employment President Dave Kesser (white male), VP of Sales Ben Taft (white male), and Account Manager Tony Trainer (white male). I fired Taft and Trainer for performance reasons. Sheri Geraghty, the VP of Finance (white female), and Ms. Acevedo's direct supervisor, resigned at the same time.

10. Because the company's senior leadership had been separated, I needed assistance running the company. Ms. Acevedo volunteered to assume Ms. Geraghty's job responsibilities, but demanded a 40% raise, to $84,000. She insisted she could do the job. I agreed to give her an opportunity and gave her a 20% raise to $72,000. Ms. Acevedo was to report directly to me as CEO.

11. In addition to promoting Ms. Acevedo, I sought to fill the rest of the leadership void with people I trusted. I reached out to and hired Andreas Liebl later in July as Operations Manager and I hired Geraldine Molyn in September 2019 as Parts Manager. I had worked with

2

both of them at another company previously in South Carolina. Mr. Liebl reported to me and Ms. Molyn to Mr. Liebl; Ms. Acevedo continued to report directly to me.

12.     In September 2019, I decided to fire Service Manager Ralph Baer (white male) for performance reasons. Mr. Baer had been responsible for new equipment quality control on Teupen lifts going out to customers. Ms. Acevedo improperly deactivated and deleted Mr. Baer's Outlook email account following the termination. All emails in the account, including all communications to and from Mr. Baer with customers regarding items such as repairs, warranties, and other important information, were gone. The key contacts for some of Teupen's contacts were gone. Furthermore, the company would not receive notice when customers subsequently sent emails to Mr. Baer's account.

13.     In October 2019, I directed Ms. Acevedo to find alternatives to Insperity, Teupen's payroll, benefits, and HR administrative provider, because Insperity was cost prohibitive. Ms. Acevedo failed to do so. I had to reassign the project to Ms. Molyn.

14.     In late October 2019, I became aware that Ms. Acevedo had incorrectly processed Taft's separation in July 2019. When Ms. Acevedo assumed Ms. Geraghty's responsibilities, she became Teupen's contact for Insperity. When I fired Mr. Taft, on July 10, I instructed Ms. Acevedo to mail the termination letter to him in Florida, where he resided, by certified mail, to be effective upon receipt. A true and correct copy of the termination letter is attached as **Exhibit 3**; the letter is maintained and kept in the ordinary course of Teupen's business and I am a custodian of the document.

15.     Rather than wait for Mr. Taft to first receive the letter, however, Ms. Acevedo contacted Insperity and informed it that Mr. Taft was separated effective July 10. This caused Insperity to cancel Mr. Taft's medical insurance coverage that day. Mr. Taft did not receive the

3

termination letter until July 15. Sometime between July 12 and July 15, my understanding is that Mr. Taft's daughter had a medical emergency that required her to be hospitalized. The medical expenses related to that incident were not covered by Teupen's medical insurance provider because of Ms. Acevedo's actions, and Insperity could not reinstate Mr. Taft's insurance coverage retroactively. Mr. Taft hired an attorney and threatened to sue Teupen for the expenses stemming from his daughter's medical treatment. As a result of Ms. Acevedo's mistake, Teupen faced significant potential legal liability and incurred thousands of dollars in legal costs.

16.     True and accurate copies of emails sent between Insperity and Teupen related to Mr. Taft's separation from employment and subsequent request for reimbursement from Teupen are attached collectively as **Exhibit 4**. The emails were kept and maintained in the ordinary course of Teupen's business, and I am a custodian of those emails.

17.     In the overnight hours between December 19 and 20, 2019, Ms. Acevedo emailed me the November 2019 financial statement for Teupen. A true and accurate copy of that email is attached as **Exhibit 5**. It is kept and maintained in the ordinary course of Teupen's business, and I am a custodian of that email.

18.     The financial statement was well overdue. More importantly, though, it reported grossly incorrect figures on the Income Statement and Budget Statement. Specifically, it was wrong by more than $100,000 because Ms. Acevedo failed to report a machine in the cost of goods sold calculation. Teupen is seeking to file a true and correct copy of this financial statement, in native .xlsx format, under seal with the Court to protect the confidential business information contained in it. The incorrect financials are reported in the "GmbH_IS" tab on the spreadsheet. Teupen also is seeking to file a true and correct copy of the corrected financial statement, in native .xlsx format, under seal with the Court.

19.     Teupen is a small company, and an error of $100,000 was significant.  I caught the error immediately when I reviewed the document the morning of December 20, 2019.

20.     Although I decided to demote Ms. Acevedo at that time, I decided to wait until after Christmas to communicate the decision.

21.     During the Christmas party on December 20, Acevedo came to me and told me she didn't like working with Mr. Liebl and Ms. Molyn.  She never claimed she was being discriminated or retaliated against during this conversation or during any other conversation I had with her.  I told her they were her colleagues and she needed to find a way to work with them.

22.     In the days following, from December 20 through 30, 2019, while she was out on vacation over Christmas, I came to find out that Ms. Acevedo forwarded a series of emails to her personal email account from her work email account containing Teupen's confidential information. True and accurate copies of some of these emails are attached as **Exhibit 6**.

23.     I reviewed these emails and in none of them does she claim she was being discriminated against on the basis of her national origin, sex, or alleged disability, nor does she claim she ever reported such discrimination to anyone or that she was being retaliated on that basis.

24.     I also discovered that Ms. Acevedo contacted Verizon, with whom Teupen had a company cell phone account, on December 29, 2019 and, without authorization, changed the billing contact for Teupen's iPhone issued to her and Teupen's telephone number for the phone to herself. In her role at Teupen, Ms. Acevedo was the administrator for the Verizon account and was in a position of trust.  Her actions were completely unacceptable and a breach of that trust.

25.     On Monday, December 30, 2019, Acevedo's first day back from vacation, I had Mr. Liebl and Ms. Molyn present Ms. Acevedo with a letter informing her she was being demoted.

A true and accurate copy of that letter is attached as **Exhibit 7**. It is kept and maintained in the ordinary course of Teupen's business, and I am a custodian of that letter.

26. Later that day, Mr. Liebl reported to me what happened when Ms. Acevedo was presented to her. Mr. Liebl told me Ms. Acevedo did not provide Ms. Molyn the passwords and other information necessary to transition job duties to Ms. Molyn. Mr. Liebl also told me Ms. Acevedo was confrontational and that Ms. Acevedo left the office without completing what I asked her to do in the letter.

27. Through discovery in this case, I learned that Ms. Acevedo recorded at least part of her interaction with Mr. Liebl and Ms. Molyn regarding her demotion. Mr. Liebl's account to me on December 30 of the interaction and Ms. Acevedo's conduct is consistent with what I heard on the audio recording.

28. Based on her conduct and her refusal to follow my instructions contained in the demotion letter, I decided after Mr. Liebl reported the events of December 30, 2019 to fire Ms. Acevedo.

29. Later that day, Ms. Acevedo emailed me a doctor's note excusing her absence through January 3, 2020; the note did not identify any medical condition or the reason for the absence. While Ms. Acevedo claims she has a disability in this lawsuit, I had no knowledge of her claimed disability when she was employed at Teupen, and I certainly did not perceive her to be disabled.

30. Teupen officially terminated Ms. Acevedo's employment effective January 3, 2020 by email.

31. Ms. Acevedo never complained to me, and I had no knowledge, about any discrimination regarding her national origin, sex, or claimed disability. She never complained to

6

me, and I no knowledge, about any retaliation she believed she was experiencing. I never understood any of her complaints or other statements to mean that she was complaining about discrimination on the basis of race, national origin, sex, or disability.

32.     After Ms. Acevedo's employment was terminated, Geraldine Molyn assumed Ms. Acevedo's former job duties.

33.     The January 3 termination letter requested Ms. Acevedo return all Teupen property in her possession. Among other things, Ms. Acevedo failed to return Teupen's cellphone and laptop. A true and accurate copy of that letter is attached as **Exhibit 8**. It is kept and maintained in the ordinary course of Teupen's business, and I am a custodian of that letter.

34.     In a series of communications in January 2020, I demanded Teupen's property back from Ms. Acevedo's attorney. Ms. Acevedo, through her attorney, refused. The documents filed at Docket Entry 45-4 at 8–15 in this case are true and accurate copies of emails I sent to or received from Ms. Acevedo's attorney, L. Michelle Gessner, on January 13 and 14, 2020. In those emails, I repeatedly told Ms. Gessner that Ms. Acevedo needed to return Teupen's property still in her possession.

35.     Ms. Acevedo finally returned the laptop to legal counsel for Teupen in early May 2020, depriving Teupen of its use for about four months. Acevedo has not returned the phone. She did not return or destroy the confidential information she took.

36.     Attached as **Exhibit 9** is a true and accurate copy of a bank statement of Teupen's financial account that Teupen received from Ms. Acevedo during discovery in this case. It includes the account number and name, describes specific transactions, and states the account balance at the time. This kind of financial information is sensitive and confidential to Teupen. It would disadvantage Teupen in its business if its competitors or the general public were able to gain

knowledge of the innerworkings of Teupen's finances. Exhibit 9 has been redacted to protect Teupen's confidential financial information.

37.     Because Acevedo did not return Teupen's property, breached her employment agreement, and deprived Teupen of the use of its laptop for several months, Teupen filed counterclaims against Acevedo.

38.     In accordance with Acevedo's employment agreement, Teupen also paid Acevedo one month's salary upon her separation in exchange for entering a separation agreement and release; Acevedo failed to execute the release but kept the money, breaching the agreement.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on December 2, 2021.

_____
Martin Borutta

# EXHIBIT 1

**TEUPEN USA, INC. - 3875000**

Employees Termed: 01/01/2019 - 12/31/2019

Reported by Insperity on: 05/18/2021

| Client Id | Last Name | First Name | Middle Name | Employee ID | Social Security | Client Hire Date | Terms Date | Date of Birth | Job Title | Department Name | Location Name | Gender | Race |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3875000 | ACEVEDO | MARJORIE | | 2826456 | | 05/24/2017 | 12/31/2019 | | ACCOUNTANT | ADMINISTRATION | | Female | Hispanic or Latino |
| 3875000 | BAER | RALPH | HEWETSON | 2768168 | | 07/25/2016 | 08/14/2019 | | SHOP SUPERVISOR | PARTS & SERVICE | | Male | White (not Hispanic or Latino) |
| 3875000 | BENNETT | MEGAN | S | 2975231 | | 03/05/2018 | 12/31/2019 | | PARTS ADMINISTRATOR | PARTS & SERVICE | | Female | White (not Hispanic or Latino) |
| 3875000 | BENNETT | RUSSELL | ALLEN | 2769164 | | 03/08/2018 | 12/31/2019 | | TECH SUPPORT SUPERVISOR | PARTS & SERVICE | | Male | White (not Hispanic or Latino) |
| 3875000 | BLACKBURN | PATRICK | JOHN | 842077 | | 08/01/2016 | 12/31/2019 | | NATIONAL SALES MANAGER | SALES | | Male | White (not Hispanic or Latino) |
| 3875000 | BLACKBURN | ROBERT | | 3276907 | | 07/15/2019 | 12/31/2019 | | NORTHEAST KEY ACCOUNT MANAGER | SALES | | Male | White (not Hispanic or Latino) |
| 3875000 | COLLINS | CHRISTOPHER | D | 3027319 | | 06/04/2018 | 12/31/2019 | | SOUTHEAST SALES REPRESENTATIVE | SALES | | Male | White (not Hispanic or Latino) |
| 3875000 | CRAWFORD | JAMES | | 2977257 | | 09/05/2017 | 12/31/2019 | | SENIOR SERVICE TECHNICIAN | PARTS & SERVICE | | Male | White (not Hispanic or Latino) |
| 3875000 | FORE | STEVEN | RAY | 3088059 | | 10/08/2018 | 02/22/2019 | | SERVICE TECHNICIAN | PARTS & SERVICE | | Male | White (not Hispanic or Latino) |
| 3875000 | GERAGHTY | SHERI | | 2766412 | | 07/05/2016 | 07/08/2019 | | VICE PRESIDENT OF FINANCE | ADMINISTRATION | | Female | White (not Hispanic or Latino) |
| 3875000 | GOINS | MISTY | CHEYENNE | 2768193 | | 07/13/2015 | 09/23/2019 | | PARTS MANAGER | PARTS & SERVICE | | Female | White (not Hispanic or Latino) |
| 3875000 | HICKMAN JR | TIM | M | 2984854 | | 03/16/2018 | 12/31/2019 | | SERVICE TECHNICIAN | PARTS & SERVICE | | Male | White (not Hispanic or Latino) |
| 3875000 | KESSER | DAVID | | 2766429 | | 05/26/2010 | 07/19/2019 | | PRESIDENT | ADMINISTRATION | | Male | White (not Hispanic or Latino) |
| 3875000 | KOONTZ | DEREK | | 2856164 | | 08/21/2017 | 08/26/2019 | | NORTHEAST SALES ASSOCIATE | SALES | | Male | White (not Hispanic or Latino) |
| 3875000 | LEBL | ANDREAS | STEFAN | 3277416 | | 07/08/2019 | 12/31/2019 | | OPERATIONS MANAGER | ADMINISTRATION | | Male | White (not Hispanic or Latino) |
| 3875000 | MOLYN | GERALDINE | | 3317837 | | 09/23/2019 | 12/31/2019 | | SPARE PARTS MANAGER | PARTS & SERVICE | | Female | White (not Hispanic or Latino) |
| 3875000 | ROGERS | JASON | DANIEL | 2768160 | | 07/21/2014 | 12/31/2019 | | TRAINING MANAGER | PARTS & SERVICE | | Male | American Indian or Alaskan Native (not Hispanic or Latino) |
| 3875000 | TAFT | BENJAMIN | LEE | 2768196 | | 02/29/2016 | 07/19/2019 | | VICE PRESIDENT OF SALES | SALES | | Male | White (not Hispanic or Latino) |
| 3875000 | TAYLOR | JAMES | | 3091763 | | 09/10/2018 | 12/31/2019 | | SERVICE TECHNICIAN | PARTS & SERVICE | | Male | White (not Hispanic or Latino) |
| 3875000 | TRAINER | MICHAEL | ANTHONY | 2768195 | | 03/30/2015 | 07/11/2019 | | TREE CARE SALES | SALES | | Male | White (not Hispanic or Latino) |
| 3875000 | TRAVESO | CASSANDRA | ALEXIS | 2917583 | | 11/27/2017 | 09/05/2019 | | MARKETING ASSOCIATE | MARKETING | | Female | Hispanic or Latino |
| 3875000 | WALBRIDGE | PHILIP | | 3364267 | | 12/02/2019 | 12/31/2019 | | SERVICE TECHNICIAN | PARTS & SERVICE | | Male | White (not Hispanic or Latino) |
| 3875000 | WELSH | BRADLEY | | 3015704 | | 05/17/2018 | 12/31/2019 | | SERVICE TECHNICIAN | PARTS & SERVICE | | Male | White (not Hispanic or Latino) |

Total

*Notwithstanding any reference to the contrary, payments processed through Insperity are not considered wages or salary for employment tax purposes for any person classified as a Self-Employed Owner (SEO) in Insperity's records. Accordingly, Insperity will not withhold or remit any employment taxes from such payments or issue a Form W-2 or report such payments or taxes for any SEO to any governmental agency.

IMPORTANT NOTICE REGARDING ANY TAX INFORMATION CONTAINED IN THIS REPORT:

Insperity PEO Services is a professional employer organization ("PEO") which performs certain duties related to human resources, payroll and benefits administration, as outlined more specifically in the Client Services Agreement ("CSA") between Insperity and each of its clients. These duties include payroll processing for employees who work at the client's business during the time in which the CSA is in effect. For employees on Insperity's payroll, Insperity is the employer-of-record for payroll tax purposes and Insperity remits all applicable taxes and returns under the Insperity EIN 76-0562036.

The information contained in this report may include Company Managed Data, which is solely responsible for its content. Insperity does not monitor this information for accuracy, completeness, or any other purpose. Company Managed Data relating to such employee is visible to such employee on their Insperity Premier ™ My Account Page. Therefore, great care should be taken to ensure that the information stored is appropriate and is intended for employees to see. Similar care should be used in creating reports using this information.

IMPORTANT NOTICE AND DISCLAIMER:

The information contained in this report is derived from data provided to Insperity by the client(s) referenced above and is provided at said Client(s) request. Insperity does not make any express or implied warranties about the accuracy or the completeness of the information contained in this report and expressly disclaims any warranty that the information contained in this report is suitable for any particular purpose. Client is solely responsible for determining whether the information contained in this report is suitable for a particular purpose. This report contains confidential information and should be maintained in strict confidence. Do not send this report through any non-secure email format or otherwise make it available in a non-secure fashion.

Do not provide this report or any of the information in this report to any third party without also providing this notice. When the report is no longer needed, the report must be shredded so that the report, and any confidential data contained herein, is undecipherable. Client is responsible for complying with all state and federal security breach and privacy laws with respect to its handling and destruction of this report, including but not limited to, notification requirements that may be triggered in the event of a compromise of the report.

Report ID: 6502806

CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER

2Teupen00004

# EXHIBIT

# EMPLOYMENT AGREEMENT

This Employee Employment Agreement ("Agreement") is made this __24th__ day of __May__, 2017 between **Teupen USA**, Inc, a <u>NC</u> corporation (the "Company"), and __**Marjorie Acevedo**__.  WHEREAS the Company has offered and Employee has accepted employment under certain terms and conditions; and

WHEREAS, the parties now desire that the terms and conditions of Employee's employment with the Company be set forth in this Agreement.

NOW, THEREFORE, the parties, intending to be legally bound and in consideration of the promises and mutual covenants and agreements contained herein, hereby stipulate and agree as follows:

1.  **Term of Employment**.  The Company hereby offers employment with Employee and Employee hereby accepts employment, with employment continuing indefinitely until terminated as provided herein.

2.  **Duties of Employee.**

    (a)  Employee shall be employed by the Company as its **Accounting Administrator**.  Employee shall perform such duties as may be reasonably required by the Company's President from time to time.  In addition to these services, Employee will be responsible for rendering such other services and duties as the Board of Directors may, from time to time, assign to Employee.

    (b)  Employee shall at all times discharge Employee's responsibilities and duties in compliance with the rules and regulations of the Company and in accordance with the policies and directives of the Company adopted from time to time.

    (c)  Employee shall serve the Company faithfully in the performance of Employee's duties and shall devote Employee's time and best efforts to Employee's employment, including the requirements of the Company and the performance of Employee's duties.  Employee shall not during the term of this Agreement be engaged in any other business activity which materially interferes with Employee's obligations under this Agreement, whether or not such business activity is pursued for gain, profit, or other pecuniary advantage, without the prior written approval of the President.

3.  **Compensation.**  For all services rendered by Employee under this Agreement, Employee shall be entitled to compensation in accordance with the following:

    (a)  <u>Base Salary</u>.  From the commencement of employment under this Agreement, Employee shall be paid an annual salary ("Annual Base Salary") of **$43,000**.  Employee shall be paid according to the Company's normal payroll practices, less normal and appropriate withholdings.  Thereafter the base salary may be adjusted based on merit at the Company's discretion.

    (b)  <u>Management by Objective</u>.  Employee shall be entitled to participate in an annual management by objective incentive bonus program with targets and awards to be agreed

PPAB 1544587v1

Case 3:20-cv-00518-FDW-DSC   Document 57-2   Filed 12/02/21   Page 12 of 60
CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER
1Teupen00009

upon at the beginning of each calendar year between the Company and Employee. Your target bonus will be **10%** of your annual base compensation and will only be paid if the company and you reach the bonus goals.

4. **Fringe Benefits.** Employee shall receive with other similarly situated Employees of the Company, all of the fringe benefits to be established by the Company (as illustrated in its Employee Manual), together with the following additional fringe benefits, provided that Employee is otherwise eligible and desires to participate.

    (a)    <u>Expenses</u>. Reimbursement for all business expenses which are ordinary, necessary and reasonable, including, without limitation, travel expenses, incurred by Employee in accordance with the policies, practices and procedures of the Company that may be in effect from time to time and in connection with the performance of Employee's duties pursuant to Paragraph 2 of this Agreement; provided that Employee presents appropriate written vouchers, bills, reports or other substantiation for such expenses in a form acceptable to the Internal Revenue Services and in compliance with the Company's then applicable policy;

    (b)    <u>Other Benefits.</u> Other benefits shall include participation in all Company sponsored group insurance policies and programs, and retirement programs, all of which benefits shall be subject to the terms and conditions of any applicable policies or plans. Currently, these benefits include the Company's group medical, dental and vision insurance plans, 401(k) plan, life insurance benefits, and short and long-term disability insurance plans. Notwithstanding anything to the contrary contained herein, the Company shall not be obligated in any manner to put into effect any plans or benefits not presently in existence, to keep in effect any plans or benefits presently in existence or to provide special benefits to Employee.

    (c)    <u>Personal Time Off (PTO).</u> Employee shall be granted fifteen (15) days personal time off to be used under the terms of the Company's PTO policy.

5. **Termination of Employment.** This Agreement shall terminate as follows:

    (a)    <u>Death or Disability</u>. Employee's employment shall terminate automatically upon Employee's death. For purposes of this Agreement, Employee shall be deemed to be disabled if he meets the definition of a "Qualified individual with a disability" as set forth under the Americans with Disability Act, 42 U.S.C. §12111(8), for a period of one-hundred eighty (180) consecutive days. If Employee is unable to perform, due to illness or disability, the essential functions of Employee's position, with or without reasonable accommodation, for a period of one-hundred eighty (180) consecutive days, then the Company shall give to Employee written notice of its intention to terminate Employee's employment. In such event, Employee's employment with the Company shall terminate effective on the thirtieth (30th) day after receipt of such notice by Employee provided that, within the thirty (30) days after such receipt, Employee shall not have returned to full time performance of Employee's duties.

    (b)    <u>Cause</u>. The Company may terminate Employee's employment at any time, without notice and with immediate effect, for Cause. For purposes of this Agreement, "Cause" shall mean:

<div align="center">2</div>

PPAB 1544587v1

Case 3:20-cv-00518-FDW-DSC   Document 57-2   Filed 12/02/21   Page 13 of 60
CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER   1Teupen00010

(i) a material breach by Employee of Employee's obligations as set forth in this Agreement (other than due to disability), which material breach is not remedied within seven (7) business days after receipt of written notice from the Company specifying such a breach;

(ii) the conviction of Employee of a felony or a crime involving moral turpitude;

(iii) willful failure of Employee to comply with reasonable instructions or directives of the Company;

(iv) chronic absenteeism of Employee for reasons other than disability;

(v) any willful or material misconduct of Employee, including, without limitation, misconduct involving fraud or dishonesty in the performance of Employee's covenants, duties or obligations under this Agreement or conduct which is deemed, materially injurious to the Company; or

(vi) Employee's illegal use of controlled substances.

(c) <u>Resignation</u>. Employee may terminate his employment upon thirty (30) days' notice to the Company of his resignation; provided that at any time following receipt of such notice the Company may by notice to Employee accelerate the termination of his employment and this Agreement to an earlier date. Notwithstanding any such acceleration, (i) if Employee has complied with the notice provisions of this Paragraph 6(c) and complies with Paragraphs 7, 8, and 9, unless otherwise mutually agreed, Employee shall receive his base salary for such 30 day period, payable over such period in accordance with the Company's usual payroll practices and subject to appropriate and normal withholdings.

(d) <u>Termination without Cause</u>. The Company may terminate this Agreement upon thirty (30) days' notice to Employee of termination without Cause; provided that the Company at its option may continue existing salary and benefits, for thirty (30) days in lieu of notice, to the extent permitted under applicable plan documents, payable over such period in accordance with the Company's usual payroll practices and subject to appropriate and normal withholdings.

6. **<u>Obligations of Employee and the Company Upon Termination</u>**. The parties agree as follows:

(a) <u>Death or Disability</u>. If Employee's employment is terminated by reason of Employee's death or disability, Employee or Employee's estate shall be paid Employee's Annual Base Salary described in Paragraph 3 of this Agreement, together with those fringe benefits described in Paragraph 4 above, through the end of the month during which Employee's death occurs or during which the effective date of the disability falls.

(b) <u>Cause</u>. If Employee's employment is terminated for Cause, such termination for Cause shall constitute an immediate termination of the Company's obligations

3

PPAB 1544587v1

Case 3:20-cv-00518-FDW-DSC   Document 57-2   Filed 12/02/21   Page 14 of 60
CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER   1Teupen00011

pursuant to Paragraphs 3 and 4 of this Agreement. Employee shall not be entitled to any compensation or benefits beyond the effective date of such termination for Cause.

(c) <u>Resignation</u>. If Employee resigns from employment, such resignation shall constitute an immediate termination of the Company's obligations pursuant to Paragraphs 3 and 4 of this Agreement and Employee shall not be entitled to any compensation or benefits beyond the effective date of such resignation, unless otherwise provided in Paragraph 9.

(d) <u>Termination Without Cause</u>. If Employee's employment with the Company is terminated without Cause, the Company shall provide Employee upon termination of Employee's employment with a severance payment of one month of Annual Base Salary payable over such period in accordance with the Company's usual payroll practices (the "Severance Payment"). The Severance Payment will be subject to all normal and appropriate withholdings. As a condition precedent to the Company's Severance Payment obligation pursuant to this Paragraph 6(c), the Company will require that Employee execute a release, in the form established by the Company, releasing the Company and its affiliates, and each of their respective officers, managers, directors, employees, shareholders and agents, from any and all claims from any and all causes of action of any kind or character, including, but not limited to, all claims and causes of action arising out of Employee's employment with the Company or the termination of such employment.

7. **Covenant Not to Disclose Confidential Information**. It is stipulated and agreed that the Company is engaged in the business of sales and service of track mounted aerial work platforms (the "Business"). It is further stipulated and agreed that as a result of Employee's employment by the Company, Employee has and will continue to have access to valuable, highly confidential, privileged and proprietary information not generally available in the public domain relating to the Company's Business (the "Confidential Information"). For purposes of this Agreement, "Confidential Information" means customer lists, customer requirements and specifications, financial data, sales figures, costs and pricing figures, marketing and other business plans, product development information, computer programs and listings, marketing concepts, personnel matters, training materials instructions, methods, processes, techniques, or any other information relating to the Company's sales, technology, research data, and all other know-how, trade secrets or proprietary information, or any copies, elaborations, modifications and adaptations thereof, which are in the possession of the Company and which have not been published or disclosed to, and are not otherwise known to, the public, or which were not developed by Employee prior to his employment with the Company. It is further acknowledged that the unauthorized use or disclosure by Employee of any of the Confidential Information would seriously damage the Company in its Business.

(a) As a consequence of the above, with respect to any Confidential Information which is obtained by Employee during or as the result of Employee's performance of services for the Company and/or its clients, vendors, suppliers and distributors and which is not generally available to the public, whatever its nature and form and whether obtained orally, by observation, from written materials or otherwise, Employee agrees as follows:

(i) Employee will hold all such Confidential Information in strict confidence and will not use, publish, divulge or otherwise reveal or allow to be revealed any portion thereof to any third person,

4

PPAB 1544587v1

Case 3:20-cv-00518-FDW-DSC   Document 57-2   Filed 12/02/21   Page 15 of 60
CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER          1Teupen00012

company or other entity, except to or with the prior written consent of the Company;

    (ii)    Employee will use all reasonable precautions to assure that all such Confidential Information is properly protected and kept from unauthorized persons or entities, and will immediately report to the Company any misuse of such Confidential Information that Employee may encounter by another person or entity;

    (iii)    Employee will immediately deliver to the Company all documents, software, hardware, written materials and other items which contain such Confidential Information. Employee will not, without the Company's prior written consent, use, divulge, disclose, furnish or make accessible to any third person, company or other entity, any aspect of the Confidential Information.

    8.    **Ownership and Assignment of Inventions**. The Employee understands and agrees that the Employee is performing work for hire for the Company and that any Inventions developed or conceived by the Employee during the Employee's employment with the Company are the sole property of the Company. "Inventions" shall include any inventions, improvements, developments, discoveries, programs, designs, machinery, training materials, products, publications, processes, information systems and software, as well as any other concepts, works and ideas, whether patentable or not, relating to any present or prospective activities or business of the Company as well as Employee's Duties. The Employee agrees to make the Company aware of all such Inventions. To the maximum extent permitted by applicable law, the Employee further agrees to assign and does hereby assign to the Company all rights, title and interest in and to all such Inventions hereafter made by the Employee. The Employee will, with reasonable reimbursement for expenses but at no other expense to the Company, at any time during or after the Employee's employment with the Company, sign and deliver all lawful papers and cooperate in such other lawful acts reasonably necessary to allow the Company to secure, perfect and enforce such rights and title in the Inventions. This Section does not apply to any Invention for which the Employee affirmatively proves that (a) no equipment, supplies, facility, or confidential or trade secret information of the Company was used; (b) which was developed entirely on the Employee's own time, and (c) did not result, either directly or indirectly, from any work performed by the Employee for the Company.

    9.    **Covenant Not to Compete**. In consideration of his employment with the Company and other valuable consideration provided herein, the Employee covenants and agrees that for a period commencing on the date of separation from employment for any reason, and ending twelve (12) months thereafter, the Company shall have the option of prohibiting Employee from engaging in certain competitive activities against the Company. During this period, Employee will not directly or indirectly:

    (a)    engage or invest in, own, manage, operate, finance, control, or participate in the ownership, management, operation, financing, or control of, be employed by, associated with, or in any manner connected with, lend his or its name or any similar name to, lend his or its credit to, or render services or advice to, any business whose products or activities compete in

5

CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER   1Teupen00013

whole or in part with the products or activities of the Business (as defined above), anywhere within the Territory (as defined below), without the written consent of the Company;

(b)     induce or attempt to induce any employee of the Company to leave the Company's employment, (ii) in any way interfere with the relationship between the Company and any of its employees, (iii) employ, or otherwise engage as an employee, independent contractor or otherwise, any employee of the Company, or (iv) induce or attempt to induce any customer, supplier, licensee or business relation of the Company to cease doing business with the Company, or in any way interference with the relationship between any customer, supplier, licensee or business relation of the Business; or

(c)     solicit the business of any Person known to it or him to be a customer of the Company, whether or not it or he had personal contact with such Person, with respect to products or activities which compete in whole or in part with the products or activities of the Company; provided, however, that nothing set forth in this Section shall prohibit Employee from owning not in excess of 1% in the aggregate of any class of capital stock of any corporation if such stock is publicly traded and listed on any national or regional stock exchange or reported on the NASDAQ Stock Market.

(d)     As used herein, the term "Territory" shall mean the United States of America, its possessions and territories.

(e)     As used herein, the term "Person" shall mean an individual, partnership, company, limited liability company, association, trust, unincorporated organization, or a government or agency or political subdivision thereof.

10.     **Surrender of Books and Records.**  Employee acknowledges that all files, computer disks, records, lists, designs, specifications, books, products, plans and other materials or property owned or used by the Company in connection with the conduct of its business shall at all times remain the property of the Company, and that upon termination or expiration of this Agreement for any reason or upon the request of the Company, Employee will immediately surrender to the Company all such materials.

11.     **Entire Agreement.**  This Agreement contains the entire agreement of the parties hereto and supersedes and replaces all prior agreements, arrangements and understandings, whether written or oral.  Moreover, this Agreement shall not be modified or changed in any respect except by a writing executed by both parties hereto.

12.     **Successors and Assigns.**  The rights and obligations of Employee under this Agreement, including but not limited to the provisions of Paragraphs 7, 8 and 9 herein, shall inure to the benefit of the Company, its successors and assigns, and shall be binding upon Employee and Employee's respective successors, heirs and assigns.  The Company shall have the right to assign, transfer or convey this Agreement to its affiliated companies, successor entities, or assignees or transferees of substantially all of the Company's business activities.  This Agreement, being personal in nature to Employee, may not be assigned by Employee without the Company's prior written consent.

6

PPAB 1544587v1

Case 3:20-cv-00518-FDW-DSC   Document 57-2   Filed 12/02/21   Page 17 of 60
CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER           1Teupen00014

13. **Notice.** All notices required and permitted to be given under this Agreement shall be in writing and shall be deemed to have been given when mailed by certified or registered mail, return receipt requested, addressed to the intended recipient as follows, or at such other address as is provided by either party to the other:

If to the Company: _____

_____

_____

_____

Attn: _____

If to Employee: _____

_____

_____

14. **Governing Law; Forum.** This Agreement shall, in all respects, be governed by and construed according to the laws of the State of North Carolina. The parties agree that the North Carolina state courts or the U.S. Federal District Court in Mecklenburg County, North Carolina shall be the exclusive judicial forum for any dispute arising out of this Agreement, with the exception of any injunctive relief sought by the Company.

15. **Litigation and Regulatory Cooperation.** During and after Employee's employment, Employee shall cooperate fully with the Company in the defense or prosecution of any claims or actions now in existence or which may be brought in the future against or on behalf of the Company which relate to events or occurrences that transpired while Employee was employed by the Company. Employee's full cooperation in connection with such claims or actions shall include, but not be limited to, being available to meet with counsel to prepare for discovery or trial and to act as a witness on behalf of the Company at mutually convenient times. During and after Employee's employment, Employee also shall cooperate fully with the Company in connection with any investigation or review of any federal, state or local regulatory authority if any such investigation or review relates to events or occurrences that transpired while Employee was employed by the Company. The Company shall reimburse Employee for any reasonable out of pocket expenses in connection with Employee's performance of obligations under this Paragraph 15, and if such cooperation is required outside of the period of any payments to Employee under Paragraphs 7(d) or 10, Employee shall receive per diem compensation of $300.00 per day.

16. **General Provisions.**

(a) This Agreement may be executed in any number of counterparts, and each such counterpart hereof shall be deemed to be an original instrument, but all such counterparts together shall constitute but one agreement.

(b) The parties may waive any breach or non-fulfillment by the other party of any provision of this Agreement. Any waiver of a breach of any provision of this Agreement shall not operate or be construed as a waiver of, or estoppel with respect to, any subsequent breach.

7

PPAB 1544587v1

CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER
1Teupen00015

(c)     The paragraph headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

(d)     The provisions of Paragraphs 7, 8, and 9 of this Agreement shall survive the termination of Employee's employment with the Company as set forth herein.

(e)     Employee has carefully read and considered the provisions of this Agreement and agrees that the restrictions set forth herein are fair and reasonably required for the Company's protection.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement to be effective as of the date first above written.

**EMPLOYEE:**

_Marjorie Acevedo_     (SEAL)


**TEUPEN USA Inc**

By:     _____

Its:    _____


8

CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER          1Teupen00016

# EXHIBIT


July 10, 2019

**PERSONAL AND CONFIDENTIAL**

<u>VIA CERTIFIED MAIL</u>

Mr. Ben Taft


, FL

     *RE:*   *Termination of Employment Agreement*

Dear Ben:

     As a follow-up to our conversation, I am writing to notify you of Teupen North America, Inc.'s ("Teupen") decision to terminate the January 29th, 2016 Employment Agreement (the "Employment Agreement") between you and Teupen. Under Paragraph 5(d), this termination is characterized as without "Cause." Under Paragraph 5(d), in lieu of notice, Teupen shall pay to you 14 days' base salary.

     This termination shall take effect immediately. Please note that the provisions of Paragraphs 7-10 of the Employment Agreement remain in effect, including the requirement that you return all Teupen property in your possession.

     Please let me know if you have any questions concerning this notice.

                Sincerely,

                Martin Borugh

PPAB 5011972v1

Case 3:20-cv-00518-FDW-DSC   Document 57-2   Filed 12/02/21   Page 21 of 60
CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER     15Teupen00057

# EXHIBIT

**From:** Angela Smart <Angela.Smart@insperity.com>
**Sent:** Tuesday, November 5, 2019 7:43 AM
**To:** Marjorie Acevedo
**Subject:** RE: Termination date change request
**Attachments:** TAFT COBRA NOTICE.pdf

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

Hi Marjie,

Attached is the COBRA package that was mailed to Ben on July 24th and states his termination date was July 10th and his benefits ended on July 10th.

I'm have a request into our records division to see if a separation notice was also sent to him. I'll let you know either when I receive that or that one was not required and not sent.

**Angela Smart, MA, PHR**
Senior HR Specialist, Business Team 2

1825 Barrett Lakes Blvd. | Suite 400 | Kennesaw, GA 30144
OFFICE: 678-290-6242 | TEAM LINE: 855-291-3282



My goal is your complete satisfaction with our service delivery. If at any time you are not completely satisfied with my service or your experience with Insperity, please let me or my manager know right away. I can be reached at 678-290-6242. Dominique Smith, Manager, HR Services, can be reached at 678-290-6225. Thank you for allowing Insperity to serve your business needs.

---

**From:** Marjorie Acevedo <macevedo@teupen-usa.com>
**Sent:** Monday, November 4, 2019 2:31 PM
**To:** Angela Smart <Angela.Smart@insperity.com>
**Subject:** RE: Termination date change request

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Angela,

I just left you a voice message re: the separation package.

Please give me a call at your earliest.

CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER          15Teupen00058

Thank you.


Regards,

**Marjie Acevedo**
*Accounting Manager*



**Teupen North America**
PO Box 938
Pineville (Charlotte), NC 28134, USA

t:  704-248-9841   f: 704-248-9889
e:  macevedo@teupen-usa.com
w: www.teupen-usa.com


---

**From:** Angela Smart <Angela.Smart@insperity.com>
**Sent:** Monday, November 4, 2019 11:38 AM
**To:** Marjorie Acevedo <macevedo@teupen-usa.com>
**Subject:** RE: Termination date change request

Hi Marjie,

Thanks again for your time one the phone.  As we discussed, there is not anything we can do now to change the termination date and end of coverage date for Ben Taft.  Attached is the Certificate of Coverage for Ben Taft's insurance coverage until 7/10/19.  I'm reaching out internally to get a soft copy of the separation package that Ben received by mail at the time of termination and I'll send that as soon as I have it.


**Angela Smart, MA, PHR**
Senior HR Specialist, Business Team 2

1825 Barrett Lakes Blvd. | Suite 400 | Kennesaw, GA 30144
OFFICE: 678-290-6242 | TEAM LINE: 855-291-3282



My goal is your complete satisfaction with our service delivery.  If at any time you are not completely satisfied with my service or your experience with Insperity, please let me or my manager know right away.  I can be reached at  678-290-6242.  Dominique Smith, Manager, HR Services, can be reached at 678-290-6225.  Thank you for allowing Insperity to serve your business needs.

---

**From:** Marjorie Acevedo <macevedo@teupen-usa.com>
**Sent:** Friday, November 1, 2019 9:42 AM

Case 3:20-cv-00518-FDW-DSC   Document 57-2   Filed 12/02/21   Page 24 of 60
CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER
15Teupen00059

**To:** Angela Smart <Angela.Smart@insperity.com>
**Subject:** RE: Termination date change request

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Angela,

Is there any way to reinstate Ben Taft for insurance coverage during the period: 7/11/19 – 7/15/19? Is there someone I could speak to in the insurance company?

Thank you for your help.


Regards,

**Marjie Acevedo**
*Accounting Manager*



**Teupen North America**
PO Box 938
Pineville (Charlotte), NC 28134, USA

t:  704-248-9841   f: 704-248-9889
e:  macevedo@teupen-usa.com
w: www.teupen-usa.com

---

**From:** Angela Smart <Angela.Smart@insperity.com>
**Sent:** Tuesday, October 29, 2019 1:39 PM
**To:** Marjorie Acevedo <macevedo@teupen-usa.com>
**Cc:** Borutta, Martin <mborutta@teupen.com>; Andi Liebl <aliebl@teupen-usa.com>
**Subject:** RE: Termination date change request

Hi Marjie,

Aha, I see.  The best way to do that is through the wage and deduction report.  Since that contains sensitive data, I'm not able to email it, but I'm providing instructions on how to run it below:

**Wage and Deduction Report**

https://portal.insperity.com/cs/nsp/index

Reporting

Payroll Information

Wage and Deduction

Choose dates

If you would like to run for just one employee click on Advance Filter Options

CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER                    15Teupen00060

Terminated employees have 60 days after their termination date to enroll in COBRA benefits. If they do, their benefits are back dated to the date of termination. The enrollment period for Ben ended on 9/10/19.

I hope this information helps. Please let me know if I can be of further assistance.

**Angela Smart, MA, PHR**
Senior HR Specialist, Business Team 2

1825 Barrett Lakes Blvd. | Suite 400 | Kennesaw, GA 30144
OFFICE: 678-290-6242 | TEAM LINE: 855-291-3282



My goal is your complete satisfaction with our service delivery. If at any time you are not completely satisfied with my service or your experience with Insperity, please let me or my manager know right away. I can be reached at 678-290-6242. Dominique Smith, Manager, HR Services, can be reached at 678-290-6225. Thank you for allowing Insperity to serve your business needs.

---

**From:** Marjorie Acevedo <macevedo@teupen-usa.com>
**Sent:** Tuesday, October 29, 2019 11:47 AM
**To:** Angela Smart <Angela.Smart@insperity.com>
**Cc:** Borutta, Martin <mborutta@teupen.com>; Andi Liebl <aliebl@teupen-usa.com>
**Subject:** RE: Termination date change request

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Angela,

1. If we would have kept Taft on payroll for 30 additional days from 7/10/19, what would have been the payroll deduction to cover Taft's medical insurance?

2. COBRA – could you please explain how COBRA works? Is it too late for Taft to get COBRA?

Thank you for your help.


Regards,


**Marjie Acevedo**
*Accounting Manager*



**Teupen North America**
PO Box 938
Pineville (Charlotte), NC 28134, USA

CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER          15Teupen00061

t:  704-248-9841   f: 704-248-9889
e:  macevedo@teupen-usa.com
w: www.teupen-usa.com

---

**From:** Angela Smart <Angela.Smart@insperity.com>
**Sent:** Tuesday, October 29, 2019 9:12 AM
**To:** Marjorie Acevedo <macevedo@teupen-usa.com>
**Subject:** RE: Termination date change request

Hi Marjie,

1. 30-days of payroll deduction amounts following the termination date of 7/10/19 –Can you give me some more information on what you need? There are no payroll deductions after termination, so I'm not sure what you need.
2. 30-days of COBRA premium following the termination date of 7/10/19 - $1242.05

Let me know if I can assist further.

**Angela Smart, MA, PHR**
Senior HR Specialist, Business Team 2

1825 Barrett Lakes Blvd. | Suite 400 | Kennesaw, GA 30144
OFFICE: 678-290-6242 | TEAM LINE: 855-291-3282



My goal is your complete satisfaction with our service delivery.  If at any time you are not completely satisfied with my service or your experience with Insperity, please let me or my manager know right away.  I can be reached at  678-290-6242.  Dominique Smith, Manager, HR Services, can be reached at 678-290-6225.  Thank you for allowing Insperity to serve your business needs.

---

**From:** Marjorie Acevedo <macevedo@teupen-usa.com>
**Sent:** Monday, October 28, 2019 2:33 PM
**To:** Angela Smart <Angela.Smart@insperity.com>
**Subject:** RE: Termination date change request
**Importance:** High

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Angela,

If you could, please provide the total amounts for the following:

1. 30-days of payroll deduction amounts following the termination date of 7/10/19
2. 30-days of COBRA premium following the termination date of 7/10/19

CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER                    15Teupen00062

Thank you for your help.


Regards,

**Marjie Acevedo**
*Accounting Manager*



**Teupen North America**
PO Box 938
Pineville (Charlotte), NC 28134, USA

t:  704-248-9841   f: 704-248-9889
e:  macevedo@teupen-usa.com
w: www.teupen-usa.com

---

**From:** Angela Smart <Angela.Smart@insperity.com>
**Sent:** Monday, October 21, 2019 5:01 PM
**To:** Marjorie Acevedo <macevedo@teupen-usa.com>
**Subject:** FW: Termination date change request

Hi Marjie,

I wanted to let you know about this correspondence from Ben Taft.  See below….

Please let me know if you have any questions.  I know we've had a few conversations about it since we were given the agreement.

**Angela Smart, MA, PHR**
HR Specialist, Business Team 2

1825 Barrett Lakes Blvd. | Suite 400 | Kennesaw, GA 30144
OFFICE: 678-290-6242 | TEAM LINE: 855-291-3282



My goal is your complete satisfaction with our service delivery.  If at any time you are not completely satisfied with my service or your experience with Insperity, please let me or my manager know right away.  I can be reached at  678-290-6242.  Dominique Smith, Manager, HR Services, can be reached at 678-290-6225.  Thank you for allowing Insperity to serve your business needs.

---

**From:** Angela Smart
**Sent:** Monday, October 21, 2019 4:59 PM
**To:** 'bentaft@ymail.com' <bentaft@ymail.com>
**Subject:** RE: Termination date change request

CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER          15Teupen00063

Hi Ben,

I wanted to step in here as the Client Liaison and HR Specialist for Tuepen. Insperity was not party to the separation agreement, so we are not involved other than we made the payment at the request of Teupen. Per our agreement with Teupen, employee's termination dates are the last date they performed work.

I will share your message with Marjie at Tuepen, but any further concerns should be directed to Teupen about this matter.

I'm sorry we can't be of further assistance.

**Angela Smart, MA, PHR**
HR Specialist, Business Team 2

1825 Barrett Lakes Blvd. | Suite 400 | Kennesaw, GA 30144
OFFICE: 678-290-6242 | TEAM LINE: 855-291-3282



My goal is your complete satisfaction with our service delivery. If at any time you are not completely satisfied with my service or your experience with Insperity, please let me or my manager know right away. I can be reached at 678-290-6242. Dominique Smith, Manager, HR Services, can be reached at 678-290-6225. Thank you for allowing Insperity to serve your business needs.

**From:** Atlanta Team 39 <AtlantaTeam39@insperity.com>
**Sent:** Monday, October 21, 2019 2:43 PM
**To:** Angela Smart <Angela.Smart@insperity.com>
**Subject:** FW: Termination date change request

Hi Angela,

See below...his response...

**Candi Woods**
Payroll Specialists, Atlanta Service Center

Atlanta Team 39

1825 Barrett Lakes Blvd | Suite 400 | Kennesaw, GA 30144
OFFICE: 678-290-6174 | eFAX: 800-438-5520 |



CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER          15Teupen00064

**From:** Ben Taft █████████████
**Sent:** Monday, October 21, 2019 2:36 PM
**To:** Atlanta Team 39 <AtlantaTeam39@insperity.com>
**Subject:** Re: Termination date change request

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Candi,

What that contract shows is Teupen did not follow the correct action and is responsible for this mistake. I think you all should contact Teupen and they are responsible for this. Please let me know as I will be contacting my legal counsel also.


Ben Taft
█████████

On Monday, October 21, 2019, 2:32 PM, Atlanta Team 39 <AtlantaTeam39@insperity.com> wrote:

Hi Ben,


While your separation agreement indicates a termination date of 7/15/19, TEUPEN USA Inc indicated that the last day worked was 7/10/19. Insperity does not allow a termination date after the actual last day worked. Unfortunately, there isn't anything Insperity can do in order to have the service for your daughter covered since our health insurance policies mandate that coverage ends on the date of termination.


I'm not sure if it's possible, but you may want to look into purchasing a policy that will allow you to back date the effective date to 7/10, ask the provider for discounts or see if they have any type of hardship programs that can assist in paying the claim.


I apologize we cannot assist you further concerning this matter.


Thanks,

**Candi Woods**
Payroll Specialists, Atlanta Service Center

Atlanta Team 39

1825 Barrett Lakes Blvd | Suite 400 | Kennesaw, GA 30144
OFFICE: 678-290-6174 | eFAX: 800-438-5520 |

CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER                    15Teupen00065



> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Candy,

Hope you're doing well!  Just wanted to follow up and see if any progress has been made on the below issue.  If you need any thing from me just let me know!

Ben Taft

███████████

On Tuesday, October 8, 2019, 4:08 PM, Ben Taft ████████████████ wrote:

> Thank you Candy,
>
> Let me know if you need any additional info!
>
> Ben Taft
>
> ██████████████

Case 3:20-cv-00518-FDW-DSC   Document 57-2   Filed 12/02/21   Page 31 of 60
CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER
15Teupen00066

# EXHIBIT

CONFIDENTIAL - PRODUCED PURSUANT TO PROTECTIVE ORDER

**From:** Marjorie Acevedo
**To:** Birkenkamp, Ulf; Borutta, Martin
**Subject:** November 2019 Financial Statement - TGER.xlsx
**Date:** Friday, December 20, 2019 1:33:02 AM
**Attachments:** image001.png
November 2019 Financial Statement - TGER.xlsx

Good Morning,

Attached is the **November** Financial Statement.

Please let me know if you have any questions.

Thank you.

Regards,

**Marjie Acevedo**

*Accounting Manager*



**Teupen North America**

PO Box 938

Pineville (Charlotte), NC 28134, USA

t: 704-248-9841 f: 704-248-9889

e: macevedo@teupen-usa.com

W: www.teupen-usa.com

Teupen00001

# EXHIBIT

**From:** Marjorie Acevedo <macevedo@teupen-usa.com>
**Sent:** Sunday, December 29, 2019 8:29 AM
**To:** mpacheco71@gmail.com
**Subject:** FW: Christmas Gathering

This email regarding alcohol consumption was sent per Andy's request. He wanted to make sure that everyone was aware that they are responsible to get a ride home.

Regards,

**Marjie Acevedo**
*Accounting Manager*



**Teupen North America**
PO Box 938
Pineville (Charlotte), NC 28134, USA

t:  704-248-9841   f: 704-248-9889
e:  macevedo@teupen-usa.com
w: www.teupen-usa.com

**From:** Marjorie Acevedo
**Sent:** Friday, December 20, 2019 11:30 AM
**To:** Allen Bennett <Abennett@teupen-usa.com>; Andi Liebl <aliebl@teupen-usa.com>; Brad Welsh <bwelsh@teupen-usa.com>; Chris Collins <ccollins@teupen-usa.com>; Geraldine Molyn <Gmolyn@teupen-usa.com>; James Crawford <jcrawford@teupen-usa.com>; James Taylor <jtaylor@teupen-usa.com>; Jason Rogers <jrogers@teupen-usa.com>; Megan Bennett <mbennett@teupen-usa.com>; Patrick Blackburn <pblackburn@teupen-usa.com>; Robert Blackburn <rblackburn@teupen-usa.com>; Tim Hickman <thickman@teupen-usa.com>
**Cc:** Martin Borutta <mb@teupen-usa.com>
**Subject:** RE: Christmas Gathering

Hello All,

Happy Friday!

The grill is hot and Bob is cooking it up!

Just a reminder that alcohol consumption is up to your own discretion. However, if you are consuming some alcohol please be sure to get a ride home via family and/or friend pick up or an Uber at your own expense.

CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER          1Teupen00063

And, please take a minute to thank Bob for all his efforts in putting this lunch together.

Thank you Bob and Happy Holidays to you all!


Regards,

**Marjie Acevedo**
*Accounting Manager*



**Teupen North America**
PO Box 938
Pineville (Charlotte), NC 28134, USA

t:  704-248-9841   f: 704-248-9889
e:  macevedo@teupen-usa.com
w: www.teupen-usa.com


**From:** Marjorie Acevedo
**Sent:** Friday, November 22, 2019 10:14 AM
**To:** Allen Bennett <Abennett@teupen-usa.com>; Andi Liebl <aliebl@teupen-usa.com>; Brad Welsh <bwelsh@teupen-usa.com>; Chris Collins <ccollins@teupen-usa.com>; Geraldine Molyn <Gmolyn@teupen-usa.com>; James Crawford <jcrawford@teupen-usa.com>; James Taylor <jtaylor@teupen-usa.com>; Jason Rogers <jrogers@teupen-usa.com>; Megan Bennett <mbennett@teupen-usa.com>; Patrick Blackburn <pblackburn@teupen-usa.com>; Robert Blackburn <rblackburn@teupen-usa.com>; Tim Hickman <thickman@teupen-usa.com>
**Cc:** Martin Borutta <mb@teupen-usa.com>
**Subject:** Christmas Gathering

Hello All,

On Friday, December 20, 2019, we will be having our Teupen Christmas Gathering at the office. We will be closing business at 1:00 PM and enjoying a Christmas Lunch. In addition, we will be playing the Bad Santa game. The limit for the exchange gift will be $25.00 at your own expense.

Please let me know if you will participate in the game.

Thank you.

Regards,

CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER                1Teupen00064

**Marjie Acevedo**
*Accounting Manager*



**Teupen North America**
PO Box 938
Pineville (Charlotte), NC 28134, USA

t: 704-248-9841    f: 704-248-9889
e: macevedo@teupen-usa.com
w: www.teupen-usa.com

CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER          1Teupen00065

**From:** Marjorie Acevedo <macevedo@teupen-usa.com>
**Sent:** Sunday, December 29, 2019 8:32 AM
**To:** mpacheco71@gmail.com
**Subject:** FW: Credit Card Charges - November

This is an example of the continuous request for Andy to code his credit charges and provide receipts. He never responds to my emails and this causes a delay in the monthly close and financial reporting to Germany.

Regards,

**Marjie Acevedo**
*Accounting Manager*



**Teupen North America**
PO Box 938
Pineville (Charlotte), NC 28134, USA

t:  704-248-9841   f: 704-248-9889
e:   macevedo@teupen-usa.com
w: www.teupen-usa.com

**From:** Marjorie Acevedo
**Sent:** Thursday, December 19, 2019 10:16 AM
**To:** Andi Liebl <aliebl@teupen-usa.com>
**Subject:** RE: Credit Card Charges - November

Andy,

I still need the receipts for the etrailer and northern tool charges. Can we discuss so I can complete the close today?

Thank you for your help.

Regards,

**Marjie Acevedo**
*Accounting Manager*



**Teupen North America**
PO Box 938
Pineville (Charlotte), NC 28134, USA

t:  704-248-9841   f: 704-248-9889
e:   macevedo@teupen-usa.com
w: www.teupen-usa.com

CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER        1Teupen00066

**From:** Marjorie Acevedo
**Sent:** Friday, December 13, 2019 7:57 PM
**To:** Andi Liebl <aliebl@teupen-usa.com>
**Subject:** Credit Card Charges - November
**Importance:** High

Andy,

Please provide the receipts or the details for the following charges:

| | | | |
|---|---|---|---|
| 11/14/2019 | XXXX-XXXX-XXXX-4114 | Ncdmv Reg 009 Charlotte | Purchase Ncdmv Reg 009 Charlotte |
| 11/15/2019 | XXXX-XXXX-XXXX-4114 | Etrailer Corporation | Purchase Etrailer Corporation |
| 11/16/2019 | XXXX-XXXX-XXXX-4114 | Applebees 867100186718 | Purchase Applebees 867100186718 |
| 11/16/2019 | XXXX-XXXX-XXXX-4114 | Nor*northern Tool | Purchase Nor*northern Tool |
| 11/17/2019 | XXXX-XXXX-XXXX-4114 | Ihop #0477 | Purchase Ihop #0477 |
| 11/20/2019 | XXXX-XXXX-XXXX-4114 | Thai House | Purchase Thai House |



Thank you.


Regards,

**Marjie Acevedo**
*Accounting Manager*



**Teupen North America**
PO Box 938
Pineville (Charlotte), NC 28134, USA

t:  704-248-9841   f: 704-248-9889
e:  macevedo@teupen-usa.com
w: www.teupen-usa.com

CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER          1Teupen00067

**From:** Marjorie Acevedo
**Sent:** Friday, December 20, 2019 7:14 PM
**To:** Marjorie Acevedo <macevedo@teupen-usa.com>
**Subject:** Memo To File

On December 12th, 2019, Andy came to my office and said that we did not have to talk to the lawyer and that we just have to pay B. Taft bill because "we fucked up". At this point, I felt offended as if he was blaming me for not extending B. Taft insurance to avoid this bill.

I said, that we will not pay the amount on the bill because we should only be responsible to pay what the health insurance would have paid. I told Andy that we need to get B. Taft approval to call the insurance carrier, United Healthcare to obtain the denial and the insurance's explanation of benefits to show what they would have paid.

Then he said OK. However, I believe that both Andy & Martin think that it's my fault that the health insurance was not extended.


Regards,

**Marjie Acevedo**
*Accounting Manager*



**Teupen North America**
PO Box 938
Pineville (Charlotte), NC 28134, USA

t:  704-248-9841   f: 704-248-9889
e:  macevedo@teupen-usa.com
w: www.teupen-usa.com

---

 **From:** Marjorie Acevedo
**Sent:** Thursday, December 12, 2019 12:19 PM
**To:** Borutta, Martin <mborutta@teupen.com>
**Cc:** Andi Liebl <aliebl@teupen-usa.com>

CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER

**Subject:** FW: Any update?

Martin,

Jonathan wants to talk to me about Taft's claim.

Let me know if it's ok or if you will call him to discuss.

Thank you.


Regards,

**Marjie Acevedo**
*Accounting Manager*



**Teupen North America**
PO Box 938
Pineville (Charlotte), NC 28134, USA

t:  704-248-9841   f: 704-248-9889
e:  macevedo@teupen-usa.com
w: www.teupen-usa.com



**From:** Crotty, Jonathan M. <jonathancrotty@parkerpoe.com>
**Sent:** Thursday, December 12, 2019 10:06 AM
**To:** Marjorie Acevedo <macevedo@teupen-usa.com>
**Subject:** FW: Any update?

Marjorie, can you call me about this?

**From:** Chuck Eiss <chuck@icelawfirm.com>
**Sent:** Wednesday, December 11, 2019 4:34 PM
**To:** Crotty, Jonathan M. <jonathancrotty@parkerpoe.com>
**Subject:** Re: Any update?

**\*\*\*Caution: External email\*\*\***

ok

CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER
1Teupen00075

*Representing Employers and Employees*

Chuck Eiss
Law Offices of Charles Eiss, P.L.
7951 SW 6th Street
Suite 112
Plantation, Florida 33324
954.914.7890 (office)
954.812.9513 (cell)
855-icelaw-8 (423-5298) (fax)
chuck@icelawfirm.com

<u>Please note the change in Suite Number Effective July 1, 2019.</u>



This transmission may contain information that is privileged, confidential, legally privileged, and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or use of the information contained herein (including any reliance thereon) is STRICTLY PROHIBITED. Although this transmission and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the Law Offices of Charles Eiss, P.L. for any loss or damage arising in any way from its use. If you received this transmission in error, please immediately contact the sender and destroy the material in its entirety, whether in electronic or hard copy format. Thank you.

On Wed, Dec 11, 2019 at 4:33 PM Crotty, Jonathan M. <jonathancrotty@parkerpoe.com> wrote:

> I am not sure that the carrier will speak with us without advance consent, but we will try.
>
> **From:** Chuck Eiss <chuck@icelawfirm.com>
> **Sent:** Wednesday, December 11, 2019 4:33 PM
> **To:** Crotty, Jonathan M. <jonathancrotty@parkerpoe.com>
> **Subject:** Re: Any update?
>
> ***Caution: External email***
>
> I don't think you read that right...please have Teupen go ahead and make contact.

CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER
1Teupen00076

*Representing Employers and Employees*

Chuck Eiss
Law Offices of Charles Eiss, P.L.
7951 SW 6th Street
Suite 112
Plantation, Florida 33324
954.914.7890 (office)
954.812.9513 (cell)
855-icelaw-8 (423-5298) (fax)
chuck@icelawfirm.com

Please note the change in Suite Number Effective July 1, 2019.



This transmission may contain information that is privileged, confidential, legally privileged, and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or use of the information contained herein (including any reliance thereon) is STRICTLY PROHIBITED. Although this transmission and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the Law Offices of Charles Eiss, P.L. for any loss or damage arising in any way from its use. If you received this transmission in error, please immediately contact the sender and destroy the material in its entirety, whether in electronic or hard copy format. Thank you.

On Wed, Dec 11, 2019 at 4:29 PM Crotty, Jonathan M. <jonathancrotty@parkerpoe.com> wrote:

OK, let me know and we will make contact. It would be Marjorie Acevedo at Teupen who would contact them.

**From:** Chuck Eiss <chuck@icelawfirm.com>
**Sent:** Wednesday, December 11, 2019 2:44 PM
**To:** Crotty, Jonathan M. <jonathancrotty@parkerpoe.com>
**Subject:** Re: Any update?

***Caution: External email***

The client agrees to have Teupen ask the insurance company directly.

CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER
1Teupen00077

*Representing Employers and Employees*

Chuck Eiss
Law Offices of Charles Eiss, P.L.
7951 SW 6th Street
Suite 112
Plantation, Florida 33324
954.914.7890 (office)
954.812.9513 (cell)
855-icelaw-8 (423-5298) (fax)
chuck@icelawfirm.com

<u>Please note the change in Suite Number Effective July 1, 2019.</u>



This transmission may contain information that is privileged, confidential, legally privileged, and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or use of the information contained herein (including any reliance thereon) is STRICTLY PROHIBITED. Although this transmission and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the Law Offices of Charles Eiss, P.L. for any loss or damage arising in any way from its use. If you received this transmission in error, please immediately contact the sender and destroy the material in its entirety, whether in electronic or hard copy format. Thank you.

On Wed, Dec 11, 2019 at 2:25 PM Crotty, Jonathan M. <jonathancrotty@parkerpoe.com> wrote:

Chuck, here is an email I sent before the holiday.  Teupen is looking for proof of the actual out-of-pocket cost to Mr. Taft.

*****
Chuck, I spoke with Teupen earlier today.  While the information you forwarded fills in some of the gaps, we still do not have written confirmation of the amount actually reimbursable to Mr. Taft had the insurance remained in place as of the date that these costs were incurred.

Specifically, I cannot tell from the documents whether the procedure was in-network or out-of-network.  Either way, what was the patient's responsibility for payment of a portion of these

costs under the policy? This may depend on any remaining deductible as of the time of the procedure as well as their specific coverage elections.

We would also need confirmation that there was no other coverage (primary or secondary) that would pay all or a portion of these costs.

I think that these answers can only come from the insurance carrier. To expedite this matter, we can contact the carrier to directly obtain this information, but would need the Taft's consent.

Let me know how you want to proceed.

**From:** Chuck Eiss <chuck@icelawfirm.com>
**Sent:** Tuesday, November 19, 2019 11:24 AM
**To:** Crotty, Jonathan M. <jonathancrotty@parkerpoe.com>
**Subject:** Any update?

***Caution: External email***

*Representing Employers and Employees*

Chuck Eiss
Law Offices of Charles Eiss, P.L.
7951 SW 6th Street
Suite 112
Plantation, Florida 33324
954.914.7890 (office)
954.812.9513 (cell)
855-icelaw-8 (423-5298) (fax)
chuck@icelawfirm.com

Please note the change in Suite Number Effective July 1, 2019.



This transmission may contain information that is privileged, confidential, legally privileged, and/or

CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER
1Teupen00079

exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or use of the information contained herein (including any reliance thereon) is STRICTLY PROHIBITED. Although this transmission and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the Law Offices of Charles Eiss, P.L. for any loss or damage arising in any way from its use. If you received this transmission in error, please immediately contact the sender and destroy the material in its entirety, whether in electronic or hard copy format. Thank you.

---

**Jonathan Crotty**
Partner



Three Wells Fargo Center | 401 South Tryon Street | Suite 3000 | Charlotte, NC 28202
Office: 704.335.9041 | Fax: 704.335.9558 | vcard | map

Visit our website at
www.parkerpoe.com

**PRIVILEGED AND CONFIDENTIAL:** This electronic message and any attachments are confidential property of the sender. The information is intended only for the use of the person to whom it was addressed. Any other interception, copying, accessing, or disclosure of this message is prohibited. The sender takes no responsibility for any unauthorized reliance on this message. If you have received this message in error, please immediately notify the sender and purge the message you received. Do not forward this message without permission.

---

**Jonathan Crotty**
Partner



Three Wells Fargo Center | 401 South Tryon Street | Suite 3000 | Charlotte, NC 28202
Office: 704.335.9041 | Fax: 704.335.9558 | vcard | map

Visit our website at
www.parkerpoe.com

---

**Jonathan Crotty**
Partner



Three Wells Fargo Center | 401 South Tryon Street | Suite 3000 | Charlotte, NC 28202
Office: 704.335.9041 | Fax: 704.335.9558 | vcard | map

Visit our website at
www.parkerpoe.com

---

**Jonathan Crotty**
Partner



Three Wells Fargo Center | 401 South Tryon Street | Suite 3000 | Charlotte, NC 28202
Office: 704.335.9041 | Fax: 704.335.9558 | vcard | map

CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER
1Teupen00080

Visit our website at
www.parkerpoe.com

CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER
1Teupen00081

**From:** Marjorie Acevedo <macevedo@teupen-usa.com>
**Sent:** Sunday, December 29, 2019 9:21 AM
**To:** Marjorie Acevedo <macevedo@teupen-usa.com>; mpacheco71@gmail.com
**Subject:** FW: New Customer - Teupen USA-Service Van#1 - Memo to File

I did not receive a response from Geraldine regarding the below transaction. As usual, Geraldine creates transactions without discussing with me; the only accountant in Teupen North America, Inc. I tend to discover new and erroneous transactions during the month-end close. This proves that there is no communication at this workplace.

Per Andy, Geraldine was hired to assist in multiple departments; Parts, Inside Sales/Marketing (Cassandra's old position) and accounting. This is the reason why Geraldine's salary is $73K annually. To this date, Geraldine picks and chooses what she wants to do. In her position as a Parts Manager, she does not do much for parts other than run reports. When Megan Bennett (parts specialist) is out of the office, the parts department is shut down. Any calls for the parts department is either placed on hold until Megan gets back, and customers are told that the parts department is closed for the day. Geraldine does not answer the parts calls and does not process parts orders. For the inside sales department, Geraldine only updates the Overview Machines list received from Germany. She has eliminated the projection sheet that everyone in the office followed because she stated that she does not need to work on another spread sheet. On many occasions, she has entered the wrong serial numbers on invoices billed to customers or had forgotten to add the serial number causing the customer confusion. I have repeatedly asked Geraldine to copy me on the emails she sends to customers, but she refuses because she says it is a lot of work for her. Even Andy had asked her why she cannot include me on emails and she simply refuses. This is another act of favoritism towards Geraldine. If she refuses to do something, she makes sure Andy supports her decision.

On many occasions I must question her work and I feel she has retaliated against me for the questioning. As an accountant, I have an obligation make sure we process Accounts Payables and Accounts Receivables correctly for auditing purposes. However, I have concluded that she believes what she does is correct, and I should not have to question her. These differences and her retaliation have caused me distress and long working hours to correct her errors.

Regards,

**Marjie Acevedo**
*Accounting Manager*



**Teupen North America**
PO Box 938
Pineville (Charlotte), NC 28134, USA

t:  704-248-9841   f: 704-248-9889
e:  macevedo@teupen-usa.com
w: www.teupen-usa.com

**From:** Marjorie Acevedo
**Sent:** Thursday, December 12, 2019 10:34 AM
**To:** Geraldine Molyn <Gmolyn@teupen-usa.com>; Jason Rogers <jrogers@teupen-usa.com>; Andi Liebl <aliebl@teupen-usa.com>
**Subject:** RE: New Customer - Teupen USA-Service Van#1

Gerri,
Can we reconcile this on a monthly basis? Anything not used at the end of each month should not be invoiced.

What do you think?

Regards,

CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER                1Teupen00082

**Marjie Acevedo**
*Accounting Manager*



**Teupen North America**
PO Box 938
Pineville (Charlotte), NC 28134, USA

t:  704-248-9841   f: 704-248-9889
e:  macevedo@teupen-usa.com
w: www.teupen-usa.com

**From:** Geraldine Molyn <Gmolyn@teupen-usa.com>
**Sent:** Thursday, December 12, 2019 10:16 AM
**To:** Marjorie Acevedo <macevedo@teupen-usa.com>; Jason Rogers <jrogers@teupen-usa.com>; Andi Liebl <aliebl@teupen-usa.com>
**Subject:** RE: New Customer - Teupen USA-Service Van#1

Marjie,

This customer was created so that items could be taken out of inventory for use in the service van.  When items from the van are used, a credit is issued to the van and the customer is billed.  There is not a way in inventory to create a separate warehouse or other method to track any parts that are on the van.  This is the best solution in order to keep inventory accurate and track what has been taken for use by Service on the road.

Gerri

**From:** Marjorie Acevedo <macevedo@teupen-usa.com>
**Sent:** Wednesday, December 11, 2019 7:31 PM
**To:** Geraldine Molyn <Gmolyn@teupen-usa.com>; Jason Rogers <jrogers@teupen-usa.com>; Andi Liebl <aliebl@teupen-usa.com>
**Subject:** New Customer - Teupen USA-Service Van#1
**Importance:** High

Hello All,

I am not aware of this new customer created for Teupen USA-Service Van#1…. Could someone please let me know what this is for?

CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER
1Teupen00083



Thank you.

Regards,

**Marjie Acevedo**
*Accounting Manager*



**Teupen North America**
PO Box 938
Pineville (Charlotte), NC 28134, USA

t:  704-248-9841   f: 704-248-9889
e:  macevedo@teupen-usa.com
w: www.teupen-usa.com

CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER          1Teupen00084

**From:** Marjorie Acevedo <macevedo@teupen-usa.com>
**Sent:** Monday, December 30, 2019 12:46 AM
**To:** Marjorie Acevedo <macevedo@teupen-usa.com>; mpacheco71@gmail.com
**Subject:** RE: Deposit Today - MEMO to File

Andy's retaliation started since I informed Martin Borutta, CEO of Teupen North America, Inc his request to cash a personal check ($40,000) for the sale of his personal truck. Geraldine and Andy were discussing how to cash his check when I walked in to Andy's office. Geraldine suggested I cash the check and cut Andy a check. I said that we do not mix personal and business transactions and she insisted that it can be done. I had to continuously state this was not Andy's personal business and we should not engage in personal transactions but would consider the possibility of helping him and will get back to him. This is when I realized that Geraldine Molyn cannot be trusted as she will always find a way to engage in mixing personal and business matters. I also realized that Geraldine will do whatever Andy tells her to do without repercussion. I on the contrary will always make sure we are doing the right thing. Since Andy insisted on cashing his personal check, I said I would deposit the check and once it clears, I will cut him a check. At this point, I emailed Martin to let him know what Andy had requested.

Evidently the email was shared with Andy and/or a discussion made between Andy and Martin because soon after Andy insisted that I deposit his personal check since Martin already approved it by email. At this point I realized Martin spoke to Andy and Andy realized that I will always consult with Martin with any matters that required approval from the CEO, Martin. Since the deposit, Andy asked if the check was cleared from PNC bank daily. The check finally cleared, and I was able to cut 2 checks made out to Andy Liebl for $20,000 each.

As an accountant, I am responsible to report any financial transaction that is not business related to either a Controller, President and/or CEO. Currently, there is no Controller in the office since Sheri Geraghty left the company in July 2019. I am the only accountant/administrator working in the accounting department; therefore, I obtain all approvals from Martin the CEO of Teupen North America, Inc.


Regards,


**Marjie Acevedo**
*Accounting Manager*

**TEUPEN**®

**Teupen North America**
PO Box 938
Pineville (Charlotte), NC 28134, USA

t:  704-248-9841   f: 704-248-9889
e:  macevedo@teupen-usa.com
w: www.teupen-usa.com

CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER

**From:** Borutta, Martin <mborutta@teupen.com>
**Sent:** Wednesday, October 16, 2019 4:05 AM
**To:** Marjorie Acevedo <macevedo@teupen-usa.com>
**Subject:** Re: Deposit Today

Marjie,

that's ok

thanks for the information

Martin


**Martin Borutta**
Geschäftsführrender Gesellschafter / CEO

T +49 2562 8161 521 | M +49 171 357 5767 | F +49 2562 8161 888
www.teupen.com | mborutta@teupen.com

**TEUPEN Maschinenbau GmbH**
Marie-Curie-Straße 13
48599 Gronau, Germany





Rechtsform: GmbH | Sitz der GmbH: 48599 Gronau | Registergericht: Amtsgericht Coesfeld HR B 11112 |
USt.-ID-Nr.: DE 266431863 | Steuer-Nr.: 301/5848/0931 | Geschäftsführender Gesellschafter: Martin Borutta (CEO) |
Bankverbindung: Unicredit Bank AG Düsseldorf BIC: HYVEDEMM414 IBAN: DE93302201900021672637

On Oct 16, 2019, at 1:43 AM, Marjorie Acevedo <macevedo@teupen-usa.com> wrote:

Martin,

A deposit was made today for $45K that included a check from Carmax (Andy's payment from Carmax).
Andy endorsed the check over to Teupen and in turn had me cut two (2) checks from Teupen. Just
wanted to let you know for auditing purposes, this was a personal transaction.

Regards,

**Marjie Acevedo**
*Accounting Manager*

*<image003.png>*
**Teupen North America**
PO Box 938
Pineville (Charlotte), NC 28134, USA

t:  704-248-9841   f: 704-248-9889
e:  macevedo@teupen-usa.com
w: www.teupen-usa.com

CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER                    1Teupen00091

# EXHIBIT



December 30, 2019

Marjorie Acevedo

RE: Letter regarding change of duties

Dear Mrs. Acevedo,

This letter is to serve as a change of duties note. Effective from today you are no longer responsible for the TEUPEN accounting. Mrs. Geraldine Molyn takes over the responsibility of accounting – you will report directly to her. This is the result of the ongoing mistakes in your monthly reporting and different errors in the Companies accounting.

Pls. hand over all information and passwords that are required for Mrs. Molyn to take over the accounting position (including lock box information, etc.). Mrs. Molyn will also take over the accounting office – your new office is the former Marketing office.

Effective January 1st we will reduce your salary back to the amount you had before you took over the accounting responsibility in July 2019.

You are requested to sign this notice indicating you have received and read the information contained in this letter. Your signature does not indicate your agreement or disagreement with the statements made in this notice.

Martin Borutta

CEO

_____          _____

Martin Borutta                                    Marjorie Acevedo

Signature

CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER          1Teupen00027

# EXHIBIT

January 3, 2020

**VIA EMAIL DELIVERY**
Ms. Marjorie Acevedo
7714 Cedar Creek Lane, Apt# 204
Charlotte, NC 28210

**Re:      Termination of Employment**

Dear Ms. Acevedo:

Pursuant to our last meeting, I am writing to confirm that in accordance with Section 5(d) of your Employment Agreement, TEUPEN is terminating your employment, effective January 3, 2020. You will receive remaining wages owed to you through February 3, 2020 on the following payday after February 3, 2020.

I am also writing to remind you that the non-solicitation and confidential information provisions (Sections 7 and 9) of the Employment Agreement survive termination of employment, and that TEUPEN expects you to abide by these contractual obligations.

Final payment will be done after we received the companie's assets you have still in your possession.

We thank you for your service to the Company and wish you the best with your future pursuits. Please contact me if you have any questions concerning this letter.

Sincerely,

Andy Liebl
Operations Manager

_____
Received and Acknowledged by
Marjorie Acevedo

CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER      1Teupen00024

## **Attachment to Termination Letter**

As part of the termination of your employment, you are required to return all company materials, documents and equipment in your possession. This includes any invoices, correspondence, computers, cell phones and accessories, and any other property which is related to the business of Teupen North America, Inc.

CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER   1Teupen00025

# EXHIBIT


As of Date: **December 16, 2019**

12/19/2019 09:34:42 AM

TEUPEN NORTH AMERICA INC

**My Accounts**

| Account Number/Name | Closing Ledger | Opening Available | 1Day Float | 2+Day Float |
|---|---|---|---|---|
| ███ - TEUPEN NORTH AMERICA INC | ███ | ███ | ███ | ███ |
| USD | ███ | ███ | ███ | ███ |

Account: ███ - **TEUPEN NORTH AMERICA INC - USD**

**Credits**

| Type | Amount | 0 Day Float | 1 Day Float | 2 + Day Float | Reference Number |
|---|---|---|---|---|---|
| ACH Credits | ███ | ███ | ███ | ███ | ███ |

ACH CREDIT RECEIVED - Cust ID: ███ Desc: PAYMENT Comp Name: ███ Comp ID: ███ SEC: CTX Cust Name: 0012TEUPEN NORTH AME Date: 12-16-19 Time: 05:37 AM Addenda: See EDI Report

| Lockbox Deposits | | | | | |
| WHLS LBX DEP ███ | ███ | ███ | ███ | | ███ |
| **Totals** | ███ | ███ | ███ | ███ | |

**2 Item(s)**

**Debits**

| Type | Amount | | Reference Number |
|---|---|---|---|
| ACH Debits | ███ | Paid 12/16/19 | ███ |

ACH DEBIT RECEIVED - Cust ID: ███ Desc: AUTOPAY Comp Name: CARD SERVICES Comp ID: ███ SEC: CCD Cust Name: TEUPEN NORTH AM Date: 12-16-19 Time: 05:37 AM Addenda: No Addenda

| Checks Paid | | |
| CHECK ███ | ███ | ███ |
| Checks Paid | | |
| CHECK ███ | ███ | ███ |
| Checks Paid | | |
| CHECK ███ | ███ | ███ |
| Checks Paid | | |
| CHECK ███ | ███ | ███ |
| **Totals** | ███ | |

**5 Item(s)**